UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| LI HONG CHENG, Individually and On Behalf of All Others Similarly Situated,<br><br>　　　　　　　　　　　　Plaintiff,<br><br>　　　v.<br><br>CANADA GOOSE HOLDINGS INC., DANI REISS, JONATHAN SINCLAIR, and JOHN BLACK,<br><br>　　　　　　　　　　　　Defendants. | Case No.<br><br><u>CLASS ACTION COMPLAINT</u><br><br><u>JURY TRIAL DEMANDED</u> |

Plaintiff Li Hong Cheng ("Plaintiff"), individually and on behalf of all other persons similarly situated, by Plaintiff's undersigned attorneys, for Plaintiff's complaint against Defendants, alleges the following based upon personal knowledge as to Plaintiff and Plaintiff's own acts, and information and belief as to all other matters, based upon, *inter alia*, the investigation conducted by and through Plaintiff's attorneys, which included, among other things, a review of the Defendants' public documents, conference calls and announcements made by Defendants, United States Securities and Exchange Commission ("SEC") filings, wire and press releases published by and regarding Canada Goose Holdings Inc. ("Canada Goose" or the "Company"), analysts' reports and advisories about the Company, and information readily obtainable on the Internet.  Plaintiff believes that substantial evidentiary support will exist for the allegations set forth herein after a reasonable opportunity for discovery.

**NATURE OF THE ACTION**

1.      This is a federal securities class action on behalf of a class consisting of all persons other than Defendants who purchased or otherwise acquired Canada Goose securities between March 16, 2017 and August 1, 2019, both dates inclusive (the "Class Period"), seeking to recover damages caused by Defendants' violations of the federal securities laws and to pursue remedies under Sections 10(b) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act") and Rule 10b-5 promulgated thereunder, against the Company and certain of its top officials.

2.      Canada Goose was founded in 1957 and is headquartered in Toronto, Canada. The Company designs, manufactures, and sells premium outdoor apparel for men, women, youth, children, and babies.  The Company began trading on the New York Stock Exchange ("NYSE") on March 16, 2017, following its initial public offering (the "IPO").

3.      Canada Goose operates in two segments—Wholesale and Direct to Consumer. The Company offers parkas, jackets, shells, vests, knitwear, footwear, and accessories for fall, winter, and spring seasons.  Canada Goose uses, among other materials, animal down and furs for its winter jackets and other apparel.

4.      Throughout the Class Period, Defendants made materially false and misleading statements regarding the Company's business, operational and compliance policies.  Specifically, Defendants made false and/or misleading statements and/or failed to disclose that: (i) Canada Goose sourced the down and fur used in its clothing products in a way that treated animals in an unethical and inhumane manner; (ii) Canada Goose was thus non-compliant with relevant FTC regulations pertaining to false advertising with respect to its sourcing practices; (iii) accordingly, Canada Goose was the subject of an ongoing FTC investigation regarding false advertising; and

(iv) as a result, the Company's public statements were materially false and misleading at all relevant times.

5.     On November 2, 2017, the non-profit organization People for the Ethical Treatment of Animals ("PETA") issued a press release alleging that Canada Goose suppliers used unethical measures to obtain the down and fur used in creating the Company's clothing merchandise (the "PETA Press Release"). The PETA Press Release also stated that PETA had issued a complaint to the FTC regarding these practices because the Company represented in communications and promotional materials that its clothing was produced with down and fur from sources that treated the animals used in sourcing those materials ethically and humanely.

6.     On this news, Canada Goose's stock price fell $0.70 per share, or roughly 3.27%, to close at $20.72 per share on November 2, 2017.

7.     Nevertheless, even after the PETA Press Release, Canada Goose continued to represent that the down and fur used in producing its clothing products were collected using humane and ethical practices.

8.     Then, on June 17, 2019, the United States Federal Trade Commission ("FTC") issued a closing letter to Canada Goose's legal counsel. The FTC Closing Letter stated that the FTC had investigated Canada Goose's advertising practices for possible violations of the Federal Trade Commission Act ("FTC Act"), citing "concern[s] that Canada Goose may have made false or misleading representations about the treatment of geese whose down is used in Canada Goose's apparel." The FTC further stated that it had not recommended enforcement action against Canada Goose because the Company had "remov[ed] the advertising claims at issue from the marketplace and clarify[ied] its business practices in marketing materials." However, the FTC expressly stated that "[t]his action is *not* to be construed as a determination that a violation

of law did not occur" and "reserve[d] the right to take further action as the public interest may warrant." (Emphasis added.)

9.      On this news, Canada Goose's stock price fell $0.50 per share, or 1.36%, to close at $36.17 per share on June 17, 2019.

10.     According to an article published on July 12, 2019 by *Truth In Advertising* ("*TINA*")—a well-known watchdog for deceptive marketing practices—Canada Goose continued to deny that it had changed the substance of its prior statements, telling *TINA*: "We continuously update language in our marketing materials and in our communications, and in this instance the substance of our prior statements has remained the same." At least in part as a result of Canada Goose's refusal to admit it had changed the substance of its prior marketing materials and communications, the Company's securities continued to trade at artificially inflated prices throughout the Class Period.

11.     Finally, on August 1, 2019, the *New York Post* published an article entitled "Canada Goose pulls claims about its 'ethical' treatment of animals" (the "*New York Post* Article"). According to the *New York Post* Article, Canada Goose had abandoned its claims of ethical treatment of animals used in making its winter jackets and clothing in response to the FTC's regulatory review. The *New York Post* Article also reported that Canada Goose had removed from its website previous claims that the Company sourced coyote fur from animals in overpopulated areas, as well as videos purporting to show where Canada Goose obtained down for its parkas. The *New York Post* article also reported PETA's assertion that its complaint to the FTC in 2017 had precipitated the FTC's investigation into Canada Goose for potential violations of the FTC Act.

12.     On this news, Canada Goose's stock price fell $2.21 per share, or over 4.7%, to close at $44.58 per share on August 1, 2019.

13.     As a result of Defendants' wrongful acts and omissions, and the precipitous decline in the market value of the Company's securities, Plaintiff and other Class members have suffered significant losses and damages.

## JURISDICTION AND VENUE

14.     The claims asserted herein arise under and pursuant to Sections 10(b) and 20(a) of the Exchange Act (15 U.S.C. §§ 78j(b) and 78t(a)) and Rule 10b-5 promulgated thereunder by the SEC (17 C.F.R. § 240.10b-5).

15.     This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1331 and Section 27 of the Exchange Act.

16.     Venue is proper in this Judicial District pursuant to Section 27 of the Exchange Act (15 U.S.C. § 78aa) and 28 U.S.C. § 1391(b).  Canada Goose securities trade on the NYSE located within this Judicial District.

17.     In connection with the acts alleged in this complaint, Defendants, directly or indirectly, used the means and instrumentalities of interstate commerce, including, but not limited to, the mails, interstate telephone communications, and the facilities of the national securities markets.

## PARTIES

18.     Plaintiff, as set forth in the attached Certification, acquired Canada Goose securities at artificially inflated prices during the Class Period and was damaged upon the revelation of the alleged corrective disclosures.

19.     Canada Goose is incorporated under the laws of British Columbia with its principal executive offices located at 250 Bowie Ave, Toronto, Ontario, Canada M6E 4Y2. Canada Goose securities trade in an efficient market on the NYSE under the ticker symbol "GOOS."

20.     Defendant Dani Reiss ("Reiss") has served as Canada Goose's President and Chief Executive Officer at all relevant times.

21.     Defendant Jonathan Sinclair ("Sinclair") has served as Canada Goose's Chief Financial Officer ("CFO") since June 2018.

22.     Defendant John Black ("Black") served as Canada Goose's CFO since before the start of the Class Period until June 2018.

23.     Defendants Reiss, Sinclair, and Black are sometimes referred to herein collectively as the "Individual Defendants."

24.     The Individual Defendants possessed the power and authority to control the contents of Canada Goose's SEC filings, press releases, and other market communications.  The Individual Defendants were provided with copies of Canada Goose's SEC filings and press releases alleged herein to be misleading prior to or shortly after their issuance and had the ability and opportunity to prevent their issuance or to cause them to be corrected.  Because of their positions with Canada Goose, and their access to material information available to them but not to the public, the Individual Defendants knew that the adverse facts specified herein had not been disclosed to and were being concealed from the public, and that the positive representations being made were then materially false and misleading.  The Individual Defendants are liable for the false statements and omissions pleaded herein.

## SUBSTANTIVE ALLEGATIONS

### Background

25.     Canada Goose was founded in 1957 and is headquartered in Toronto, Canada. The Company designs, manufactures, and sells premium outdoor apparel for men, women, youth, children, and babies.  The Company began trading on the NYSE on March 16, 2017, following its IPO.

26.     Canada Goose operates in two segments—Wholesale and Direct to Consumer. The Company offers parkas, jackets, shells, vests, knitwear, footwear, and accessories for fall, winter, and spring seasons.  Canada Goose uses, among other materials, animal down and furs in its winter jackets and other apparel.

### Materially False and Misleading Statements Issued During the Class Period

27.     The Class Period begins on March 16, 2017, when, in connection with the IPO, Canada Goose filed a final prospectus on Form 424B4 with the SEC (the "Prospectus") prior to the market opening on the Company's first day trading on the NYSE.  The Prospectus touted the Company's purported core values and high ethical standards as a defining feature of Canada Goose's reputation and brand.  The Prospectus simultaneously touted that, because these standards were so high, they actually put the Company at increased risk of any "real or perceived" lapses in its ethical business practices.  Specifically, the Prospectus stated, in relevant part: "Our core values, which include developing the highest quality products while operating with integrity, are an important component of our brand image, which makes our reputation sensitive to allegations of unethical or improper business practices, whether real or perceived."

28.     To this end, the Prospectus also contained merely generic, boilerplate representations that Canada Goose could experience significant disruptions and delays as a result

7

of the Company's monitoring practices, which ensured their suppliers complied with the Company's high ethical standards. Specifically, the Prospectus stated, in relevant part:

> ***We could experience significant disruptions in supply from our current sources.***
>
> We generally do not enter into long-term formal written agreements with our suppliers, and typically transact business with our suppliers on an order-by-order basis . . . . Identifying a suitable supplier is an involved process that requires us to become satisfied with their quality control, responsiveness and service, financial stability and labour and other ethical practices. Any delays, interruption or increased costs in the supply of fabric or manufacture of our products could have an adverse effect on our ability to meet customer demand for our products and result in lower revenue and operating income both in the short and long-term.

(Emphasis in original.) This risk warning was plainly a generic "catch-all" provision that was not tailored to Canada Goose's actual known legal risks.

29. Despite the purported height of Canada Goose's ethical commitments, the Prospectus shunted responsibility for any lapses in ethical business practices onto its manufacturers and suppliers. The Prospectus also disclaimed Canada Goose's control over its suppliers, despite the fact that Canada Goose displayed such control following negative publicity over its ethical business practices.[1] To this end, the Prospectus stated, in relevant part:

> ***If our independent manufacturers or our suppliers fail to use ethical business practices and fail to comply with changing laws and regulations or our applicable guidelines, our brand image could be harmed due to negative publicity.***
>
> . . . . We do not control our suppliers and manufacturers or their business practices. Accordingly, we cannot guarantee their compliance with our guidelines or the law. A lack of compliance could lead to reduced sales or recalls or damage to our brand or cause us to seek alternative suppliers, which could increase our costs and result in delayed delivery of our products, product shortages or other disruptions of our operations.

---

[1] See Zachary Toliver, *PETA's FTC Complaint Prompts Canada Goose to Change False, Misleading Marketing*, PETA (Aug. 1, 2019), https://www.peta.org/blog/canada-goose-false-misleading-marketing/ (last updated August 5, 2019) (noting that Canada Goose stopped using down sourced from James Valley Colony Farms Ltd. ("James Valley"), which was documented treating its geese inhumanely and unethically).

> In addition, many of our products include materials that are heavily regulated in many jurisdictions. Certain jurisdictions in which we sell have various regulations related to manufacturing processes and the chemical content of our products, including their component parts. Monitoring compliance by our manufacturers and suppliers is complicated, and we are reliant on their compliance reporting in order to comply with regulations applicable to our products. This is further complicated by the fact that expectations of ethical business practices continually evolve and may be substantially more demanding than applicable legal requirements. Ethical business practices are also driven in part by legal developments and by diverse groups active in publicizing and organizing public responses to perceived ethical shortcomings. Accordingly, we cannot predict how such regulations or expectations might develop in the future and cannot be certain that our guidelines or current practices would satisfy all parties who are active in monitoring our products or other business practices worldwide.

This risk warning, too, was plainly a generic "catch-all" provision that was not tailored to Canada Goose's actual known legal risks.

30.     Despite Canada Goose's purported lack of control over its manufacturers' and suppliers' compliance with ethical business practices, the Company nonetheless touted so-called "comprehensive traceability programs" designed to ensure ethical sourcing of down and fur for its clothing products, which the Company expected to be in full effect in spring of 2017. Specifically, the Prospectus stated, in relevant part:

> We are committed to the sustainable and ethical sourcing of our raw materials. We have introduced comprehensive traceability programs for fur and down throughout our supply chain which we expect will be fully in effect during the spring of 2017. We only use down that is a byproduct of the poultry industry and we only purchase down and fur from suppliers who adhere to our stringent standards regarding fair practices and humane treatment of animals.

31.     Additionally, despite the Company's purported "commit[ment] to the sustainable and ethical sourcing" of down and fur, the Prospectus nonetheless contained merely generic, boilerplate representations regarding the potential impact animal welfare activists could have on Canada Goose's business, operations, and reputation, stating, in relevant part:

> ***Our business could be adversely affected by protestors or activists.***

> We have been the target of activists in the past, and may continue to be in the future. Our products include certain animal products, including goose and duck feathers in all of our down-filled parkas and coyote fur on the hoods of some of our parkas, which has drawn the attention of animal welfare activists. In addition, protestors can disrupt sales at our stores, or use social media or other campaigns to sway public opinion against our products. If any such activists are successful at either of these our sales and results of operations may be adversely affected.

(Emphasis in original.) This was yet another risk warning that was plainly a generic "catch-all" provision, untailored to Canada Goose's actual known legal risks.

32. Despite the Prospectus' assertions that Canada Goose regularly monitored its compliance with regulations governing advertising and the promotion of sale and merchandise, the Prospectus nonetheless contained merely generic, boilerplate representations regarding the risk that the Company could become subject to regulatory proceedings and audits related to, among other things, "the importation, promotion and sale of merchandise." Specifically, the Prospectus stated, in relevant part:

> ***We may become involved in legal or regulatory proceedings and audits.***
>
> Our business requires compliance with many laws and regulations, including labour and employment, sales and other taxes, customs, and consumer protection laws and ordinances that regulate retailers generally and/or govern the importation, promotion and sale of merchandise, and the operation of stores and warehouse facilities. Failure to comply with these laws and regulations could subject us to lawsuits and other proceedings, and could also lead to damage awards, fines and penalties. We may become involved in a number of legal proceedings and audits, including government and agency investigations, and consumer, employment, tort and other litigation. The outcome of some of these legal proceedings, audits, and other contingencies could require us to take, or refrain from taking, actions that could harm our operations or require us to pay substantial amounts of money, harming our financial condition. Additionally, defending against these lawsuits and proceedings may be necessary, which could result in substantial costs and diversion of management's attention and resources, harming our financial condition. There can be no assurance that any pending or future legal or regulatory proceedings and audits will not harm our business, financial condition and results of operations.

(Emphasis in original.)   This was yet another example of a risk warning that was plainly a generic "catch-all" provision, untailored to Canada Goose's actual known legal risks.

33.    On June 6, 2017, Canada Goose issued its Annual Report on Form 20-F with the SEC, reporting the Company's financial and operating results for the fiscal year ended March 31, 2017 (the "2017 20-F").  The 2017 20-F contained statements identical to those quoted above in ¶¶ 27-29 and 31-32.

34.    Additionally, the 2017 20-F reaffirmed Canada Goose's purported "commit[ment] to the sustainable and ethical sourcing of" down and fur and stated that the Company "ha[d] introduced comprehensive traceability programs for fur and down throughout [the Company's] supply chain which came into effect during the spring of 2017."   The 2017 20-F assured investors that the Company "only use[d] down that is a byproduct of the poultry industry and . . . only purchase[d] down and fur from suppliers who adhere to [the Company's] stringent standards regarding fair practices and humane treatment of animals."

35.    Appended as exhibits to the 2017 20-F were signed certifications pursuant to the Sarbanes-Oxley Act of 2002 ("SOX"), wherein Defendants Reiss and Black certified that "[t]he [2017 20-F] fully complies with the requirements of Section 13(a) or Section 15(d) of the Securities Exchange Act of 1934, as amended[,]" and that "[t]he information contained in the [2017 20-F] fairly presents, in all material respects, the financial condition and results of operations of the Company."

36.    The statements referenced in ¶¶ 27-35 were materially false and misleading because Defendants made false and/or misleading statements, as well as failed to disclose material adverse facts about the Company's business, operational and compliance policies. Specifically, Defendants made false and/or misleading statements and/or failed to disclose that:

(i) Canada Goose sourced the down and fur used in its clothing products in a way that treated animals in an unethical and inhumane manner; (ii) Canada Goose was thus non-compliant with relevant FTC regulations pertaining to false advertising with respect to its sourcing practices; (iii) accordingly, Canada Goose was the subject of an ongoing FTC investigation regarding false advertising; and (iv) as a result, the Company's public statements were materially false and misleading at all relevant times.

### The Truth Begins To Emerge

37.     On November 2, 2017, the non-profit organization PETA issued a press release alleging that Canada Goose suppliers used unethical measures to obtain the down and fur used in creating the Company's clothing merchandise.  The PETA Press Release also stated that PETA had issued a complaint to the FTC regarding these practices because the Company represented in communications and promotional materials that its clothing was produced with down and fur from sources that treated the animals used in sourcing those materials ethically and humanely. Specifically, the PETA Press Release stated:

> A new PETA video exposé of a Canada Goose down supplier reveals that workers rounded up terrified geese, who piled on top of one another in an attempt to escape. At least one bird was apparently crushed to death, and others suffocated. Workers then grabbed and carried birds by the neck and shoved them into cramped cages for a journey to the slaughterhouse that lasted more than five hours. There, workers shackled them, hung them upside down, and slit their throats as other birds watched.

> PETA has now filed a complaint with the U.S. Federal Trade Commission and the Canadian Competition Bureau challenging Canada Goose's claims that its products are "[e]thically sourced" and "humane."

> "This is false advertising because there's nothing 'humane' about a process in which geese are trampled and suffocated, grabbed by the neck, and crammed into tiny cages for hours of terror and misery," says PETA Executive Vice President Tracy Reiman. "PETA is calling on consumers to refuse to buy Canada Goose's cruelly produced coats and anything else stuffed with tormented birds' down."

PETA—whose motto reads, in part, that "animals are not ours to wear"—notes that the geese were sometimes left in transport cages overnight with no food or water and that after the long journey, the cages were filthy with feces and feathers. After slaughter, many birds' bodies had visibly bruised and broken wings, apparently caused by the long confinement to cramped metal crates.

PETA's exposé includes footage from Manitoba's James Valley Colony Farms, which breeds 130,000 geese per year, and South Dakota's Schiltz Foods, the largest goose slaughterhouse in North America. James Valley Colony Farms, which appears in a Canada Goose promotional video, sends geese to Schiltz for slaughter and sells their down to Canada Goose's only down supplier, Toronto's Feather Industries, which claims that it buys only from farms that practice "ethical and humane treatment" of animals.

Canada Goose's coats are also trimmed with fur from coyotes, who can suffer in traps for days before they're shot or bludgeoned to death.

38.   Following this news, Canada Goose's stock price fell $0.70 per share, or roughly 3.27%, to close at $20.72 per share on November 2, 2017.

39.   Nevertheless, even after the publication of the PETA Press Release and video exposé, Canada Goose continued to represent that it obtained the fur and down used its in products in ethical and humane ways.  On November 2, 2019, the online news source *Daily Hive* reported Canada Goose's response to PETA's allegations:

The animals and the treatment of them shown in this contrived video are not a part of the Canada Goose supply chain, as confirmed by our sole supplier, Feather Industries . . . . We regularly audit our full supply chain to ensure global standards as well as our own standards are being met at all times. We have strict supplier protocols in place should any part of our supply chain be found in breach of our stringent requirements.

At least in part as a result of these and similar statements, Canada Goose securities continued to trade at artificially inflated prices throughout the Class Period.

40.   On November 11, 2017, the *Evening Standard* published an article entitled "Canada Goose protest: Crowds of animal rights activists chant 'shame on you' outside high-end

Regent Street shop in rally over coyote fur" (the "*Evening Standard* Article"), which covered animal rights activists who staged a protest outside of Canada Goose's flagship London store.

41.     On this news, Canada Goose's stock price fell $1.02 per share, or 3.92%, to close at $24.98 per share on the following trading day, November 13, 2017.

42.     Again, Canada Goose continued to assert that its sourcing practices were ethical and humane.   The *Evening Standard* Article also contained statements by Canada Goose representatives, who refuted claims that the Company's products were created using unethically and inhumanely-sourced fur and down.   Specifically, Canada Goose stated:

> Surge, PETA and other activist groups misrepresent the facts and use sensational tactics to try to illicit a reaction and mislead consumers.
>
> They ignore the strict government regulation and standards that are in place, as well as our commitment to ethical sourcing practices and responsible use of fur and down.
>
> * * *
>
> Canada Goose remains deeply committed to the responsible use and ethical sourcing of all animal materials in our products.
>
> While we respect their opinion and right to protest, we are appalled by their extreme, inexcusable behavior and unsurprised by their attempt to capitalize on media attention tied to the opening of our store in London.

At least in part as a result of these statements, Canada Goose securities continued to trade at artificially inflated prices throughout the Class Period.

43.     On June 15, 2018, Canada Goose filed its Annual Report on Form 20-F with the SEC, reporting the Company's financial and operating results for the fiscal year ended March 31, 2018 (the "2018 20-F").  The 2018 20-F contained statements identical to those quoted above in ¶¶ 27-29, 31-32, and 34.

14

44.     Appended as exhibits to the 2018 20-F were signed SOX certifications, wherein Defendants Reiss and Black certified that "[t]he [2018 20-F] fully complies with the requirements of Section 13(a) or Section 15(d) of the Securities Exchange Act of 1934, as amended[,]" and that "[t]he information contained in the [2018 20-F] fairly presents, in all material respects, the financial condition and results of operations of the Company."

45.     On May 29, 2019, Canada Goose filed its Annual Report on Form 20-F with the SEC, reporting the Company's financial and operating results for the fiscal year ended March 31, 2019 (the "2019 20-F").  The 2019 20-F contained statements identical to those quoted above in ¶¶ 27-29 and 32.  The 2019 20-F also contained substantively the same statements as those quoted above in ¶¶ 31 and 34, apart from a few telling modifiers.  For example, the 2019 20-F stated that Canada Goose was now committed to both "the ethical sourcing and responsible use of animal products."  Additionally, the 2019 20-F no longer touted comprehensive traceability programs for fur and down throughout the Company's supply chain.  Instead, the 2019 20-F assured investors, more generally:

> We have comprehensive transparency standards for fur and down which reflect our commitment to the responsible use of these materials. Our suppliers are required to verify that our down comes as a by-product of poultry industry and has not come from force-fed or live-plucked birds and mandates that all fur is sourced in accordance with the Agreement on International Humane Trapping Standards or Best Management Practices.

46.     Finally, in the 2019 20-F's section devoted to describing Canada Goose's ongoing legal proceedings, the 2019 20-F stated:  "We currently have no material legal or regulatory proceedings pending."

47.     Appended as exhibits to the 2019 20-F were signed SOX certifications, wherein Defendants Reiss and Sinclair certified that "[t]he [2019 20-F] fully complies with the requirements of Section 13(a) or Section 15(d) of the Securities Exchange Act of 1934, as

amended[,]" and that "[t]he information contained in the [2019 20-F] fairly presents, in all material respects, the financial condition and results of operations of the Company."

48.     The statements referenced in ¶¶ 39 and 42-47 were materially false and misleading because Defendants made false and/or misleading statements, as well as failed to disclose material adverse facts about the Company's business, operational and compliance policies.   Specifically, Defendants made false and/or misleading statements and/or failed to disclose that:  (i) Canada Goose sourced the down and fur used in its clothing products in a way that treated animals in an unethical and inhumane manner; (ii) Canada Goose was thus non-compliant with relevant FTC regulations pertaining to false advertising with respect to its sourcing practices; (iii) accordingly, Canada Goose was the subject of an ongoing FTC investigation regarding false advertising; and (iv) as a result, the Company's public statements were materially false and misleading at all relevant times.

49.     On June 17, 2019, the FTC issued a closing letter to Canada Goose's legal counsel.  The FTC Closing Letter stated, in relevant part:

> As you know, the staff of the Federal Trade Commission's Division of Advertising Practices has conducted an investigation into the advertising practices of your client, Canada Goose Inc. ("Canada Goose"), for possible violations of Section 5 of the Federal Trade Commission Act, 15 U.S.C. § 45. Section 5 of the FTC Act requires that advertising claims be truthful and non-misleading. We were concerned that Canada Goose may have made false or misleading representations about the treatment of geese whose down is used in Canada Goose's apparel.
>
> Upon careful review of this matter, including non-public information Canada Goose provided during our investigation, we have determined not to recommend enforcement action at this time. In coming to this conclusion, we considered a number of factors, ***including the prompt corrective action taken by Canada Goose, such as removing the advertising claims at issue from the marketplace and clarifying its business practices in marketing materials***, among other things. ***Thus, it appears that no further action is warranted at this time and the investigation is closed.***

This action is ***not*** to be construed as a determination that a violation of law did not occur, just as the pendency of an investigation should not be construed as a determination that a violation has occurred. ***The Commission reserves the right to take further action as the public interest may warrant.***

(Emphases added.)

50.     On this news, Canada Goose's stock price fell $0.50 per share, or 1.36%, to close at $36.17 per share on June 17, 2019.

51.     Finally, on August 1, 2019, the *New York Post* published an article entitled "Canada Goose pulls claims about its 'ethical' treatment of animals".  According to the *New York Post* Article, Canada Goose had abandoned its claims of ethical treatment of animals used in making its winter jackets and clothing in response to the FTC's regulatory review.  The *New York Post* Article also reported that Canada Goose had removed from its website previous claims that the Company sourced coyote fur from animals in overpopulated areas, as well as videos purporting to show where Canada Goose obtained down for its parkas.  The *New York Post* article also reported PETA's assertion that its complaint to the FTC in 2017 had precipitated the FTC's investigation into Canada Goose for potential violations of the FTC Act.

52.     On this news, Canada Goose's stock price fell $2.21 per share, or over 4.7%, to close at $44.58 per share on August 1, 2019.

53.     As a result of Defendants' wrongful acts and omissions, and the precipitous decline in the market value of the Company's securities, Plaintiff and other Class members have suffered significant losses and damages.

**PLAINTIFF'S CLASS ACTION ALLEGATIONS**

54.     Plaintiff brings this action as a class action pursuant to Federal Rule of Civil Procedure 23(a) and (b)(3) on behalf of a Class, consisting of all those who purchased or otherwise acquired Canada Goose securities during the Class Period (the "Class"); and were

damaged upon the revelation of the alleged corrective disclosures. Excluded from the Class are Defendants herein, the officers and directors of the Company, at all relevant times, members of their immediate families and their legal representatives, heirs, successors or assigns and any entity in which Defendants have or had a controlling interest.

55.     The members of the Class are so numerous that joinder of all members is impracticable. Throughout the Class Period, Canada Goose securities were actively traded on the NYSE. While the exact number of Class members is unknown to Plaintiff at this time and can be ascertained only through appropriate discovery, Plaintiff believes that there are hundreds or thousands of members in the proposed Class. Record owners and other members of the Class may be identified from records maintained by Canada Goose or its transfer agent and may be notified of the pendency of this action by mail, using the form of notice similar to that customarily used in securities class actions.

56.     Plaintiff's claims are typical of the claims of the members of the Class as all members of the Class are similarly affected by Defendants' wrongful conduct in violation of federal law that is complained of herein.

57.     Plaintiff will fairly and adequately protect the interests of the members of the Class and has retained counsel competent and experienced in class and securities litigation. Plaintiff has no interests antagonistic to or in conflict with those of the Class.

58.     Common questions of law and fact exist as to all members of the Class and predominate over any questions solely affecting individual members of the Class. Among the questions of law and fact common to the Class are:

- whether the federal securities laws were violated by Defendants' acts as alleged herein;

- whether statements made by Defendants to the investing public during the Class Period misrepresented material facts about the business, operations and management of Canada Goose;

- whether the Individual Defendants caused Canada Goose to issue false and misleading financial statements during the Class Period;

- whether Defendants acted knowingly or recklessly in issuing false and misleading financial statements;

- whether the prices of Canada Goose securities during the Class Period were artificially inflated because of the Defendants' conduct complained of herein; and

- whether the members of the Class have sustained damages and, if so, what is the proper measure of damages.

59.    A class action is superior to all other available methods for the fair and efficient adjudication of this controversy since joinder of all members is impracticable.  Furthermore, as the damages suffered by individual Class members may be relatively small, the expense and burden of individual litigation make it impossible for members of the Class to individually redress the wrongs done to them.  There will be no difficulty in the management of this action as a class action.

60.    Plaintiff will rely, in part, upon the presumption of reliance established by the fraud-on-the-market doctrine in that:

- Defendants made public misrepresentations or failed to disclose material facts during the Class Period;

- the omissions and misrepresentations were material;

- Canada Goose securities are traded in an efficient market;

- the Company's shares were liquid and traded with moderate to heavy volume during the Class Period;

- the Company traded on the NYSE and was covered by multiple analysts;

- the misrepresentations and omissions alleged would tend to induce a reasonable investor to misjudge the value of the Company's securities; and

- Plaintiff and members of the Class purchased, acquired and/or sold Canada Goose securities between the time the Defendants failed to disclose or misrepresented material facts and the time the true facts were disclosed, without knowledge of the omitted or misrepresented facts.

61.     Based upon the foregoing, Plaintiff and the members of the Class are entitled to a presumption of reliance upon the integrity of the market.

62.     Alternatively, Plaintiff and the members of the Class are entitled to the presumption of reliance established by the Supreme Court in *Affiliated Ute Citizens of the State of Utah v. United States*, 406 U.S. 128, 92 S. Ct. 2430 (1972), as Defendants omitted material information in their Class Period statements in violation of a duty to disclose such information, as detailed above.

## <u>COUNT I</u>

### (Violations of Section 10(b) of the Exchange Act and Rule 10b-5 Promulgated Thereunder Against All Defendants)

63.     Plaintiff repeats and re-alleges each and every allegation contained above as if fully set forth herein.

64.     This Count is asserted against Defendants and is based upon Section 10(b) of the Exchange Act, 15 U.S.C. § 78j(b), and Rule 10b-5 promulgated thereunder by the SEC.

65.     During the Class Period, Defendants engaged in a plan, scheme, conspiracy and course of conduct, pursuant to which they knowingly or recklessly engaged in acts, transactions, practices and courses of business which operated as a fraud and deceit upon Plaintiff and the other members of the Class; made various untrue statements of material facts and omitted to state material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading; and employed devices, schemes and artifices to

defraud in connection with the purchase and sale of securities.  Such scheme was intended to, and, throughout the Class Period, did:  (i) deceive the investing public, including Plaintiff and other Class members, as alleged herein; (ii) artificially inflate and maintain the market price of Canada Goose securities; and (iii) cause Plaintiff and other members of the Class to purchase or otherwise acquire Canada Goose securities and options at artificially inflated prices.  In furtherance of this unlawful scheme, plan and course of conduct, Defendants, and each of them, took the actions set forth herein.

66.     Pursuant to the above plan, scheme, conspiracy and course of conduct, each of the Defendants participated directly or indirectly in the preparation and/or issuance of the quarterly and annual reports, SEC filings, press releases and other statements and documents described above, including statements made to securities analysts and the media that were designed to influence the market for Canada Goose securities.  Such reports, filings, releases and statements were materially false and misleading in that they failed to disclose material adverse information and misrepresented the truth about Canada Goose's finances and business prospects.

67.     By virtue of their positions at Canada Goose, Defendants had actual knowledge of the materially false and misleading statements and material omissions alleged herein and intended thereby to deceive Plaintiff and the other members of the Class, or, in the alternative, Defendants acted with reckless disregard for the truth in that they failed or refused to ascertain and disclose such facts as would reveal the materially false and misleading nature of the statements made, although such facts were readily available to Defendants.  Said acts and omissions of Defendants were committed willfully or with reckless disregard for the truth.  In addition, each Defendant knew or recklessly disregarded that material facts were being misrepresented or omitted as described above.

68.     Information showing that Defendants acted knowingly or with reckless disregard for the truth is peculiarly within Defendants' knowledge and control.  As the senior managers and/or directors of Canada Goose, the Individual Defendants had knowledge of the details of Canada Goose's internal affairs.

69.     The Individual Defendants are liable both directly and indirectly for the wrongs complained of herein.  Because of their positions of control and authority, the Individual Defendants were able to and did, directly or indirectly, control the content of the statements of Canada Goose.   As officers and/or directors of a publicly-held company, the Individual Defendants had a duty to disseminate timely, accurate, and truthful information with respect to Canada Goose's businesses, operations, future financial condition and future prospects.  As a result of the dissemination of the aforementioned false and misleading reports, releases and public statements, the market price of Canada Goose securities was artificially inflated throughout the Class Period.  In ignorance of the adverse facts concerning Canada Goose's business and financial condition which were concealed by Defendants, Plaintiff and the other members of the Class purchased or otherwise acquired Canada Goose securities at artificially inflated prices and relied upon the price of the securities, the integrity of the market for the securities and/or upon statements disseminated by Defendants, and were damaged thereby.

70.     During the Class Period, Canada Goose securities were traded on an active and efficient market.  Plaintiff and the other members of the Class, relying on the materially false and misleading statements described herein, which the Defendants made, issued or caused to be disseminated, or relying upon the integrity of the market, purchased or otherwise acquired shares of Canada Goose securities at prices artificially inflated by Defendants' wrongful conduct.  Had Plaintiff and the other members of the Class known the truth, they would not have purchased or

otherwise acquired said securities, or would not have purchased or otherwise acquired them at the inflated prices that were paid.  At the time of the purchases and/or acquisitions by Plaintiff and the Class, the true value of Canada Goose securities was substantially lower than the prices paid by Plaintiff and the other members of the Class.  The market price of Canada Goose securities declined sharply upon public disclosure of the facts alleged herein to the injury of Plaintiff and Class members.

71.     By reason of the conduct alleged herein, Defendants knowingly or recklessly, directly or indirectly, have violated Section 10(b) of the Exchange Act and Rule 10b-5 promulgated thereunder.

72.     As a direct and proximate result of Defendants' wrongful conduct, Plaintiff and the other members of the Class suffered damages in connection with their respective purchases, acquisitions and sales of the Company's securities during the Class Period, upon the disclosure that the Company had been disseminating misrepresented financial statements to the investing public.

## COUNT II

**(Violations of Section 20(a) of the Exchange Act Against The Individual Defendants)**

73.     Plaintiff repeats and re-alleges each and every allegation contained in the foregoing paragraphs as if fully set forth herein.

74.     During the Class Period, the Individual Defendants participated in the operation and management of Canada Goose, and conducted and participated, directly and indirectly, in the conduct of Canada Goose's business affairs.  Because of their senior positions, they knew the adverse non-public information about Canada Goose's misstatement of income and expenses and false financial statements.

75.     As officers and/or directors of a publicly owned company, the Individual Defendants had a duty to disseminate accurate and truthful information with respect to Canada Goose's financial condition and results of operations, and to correct promptly any public statements issued by Canada Goose which had become materially false or misleading.

76.     Because of their positions of control and authority as senior officers, the Individual Defendants were able to, and did, control the contents of the various reports, press releases and public filings which Canada Goose disseminated in the marketplace during the Class Period concerning Canada Goose's results of operations.  Throughout the Class Period, the Individual Defendants exercised their power and authority to cause Canada Goose to engage in the wrongful acts complained of herein. The Individual Defendants therefore, were "controlling persons" of Canada Goose within the meaning of Section 20(a) of the Exchange Act.  In this capacity, they participated in the unlawful conduct alleged which artificially inflated the market price of Canada Goose securities.

77.     Each of the Individual Defendants, therefore, acted as a controlling person of Canada Goose.  By reason of their senior management positions and/or being directors of Canada Goose, each of the Individual Defendants had the power to direct the actions of, and exercised the same to cause, Canada Goose to engage in the unlawful acts and conduct complained of herein.  Each of the Individual Defendants exercised control over the general operations of Canada Goose and possessed the power to control the specific activities which comprise the primary violations about which Plaintiff and the other members of the Class complain.

78.     By reason of the above conduct, the Individual Defendants are liable pursuant to Section 20(a) of the Exchange Act for the violations committed by Canada Goose.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff demands judgment against Defendants as follows:

A.      Determining that the instant action may be maintained as a class action under Rule 23 of the Federal Rules of Civil Procedure, and certifying Plaintiff as the Class representative;

B.      Requiring Defendants to pay damages sustained by Plaintiff and the Class by reason of the acts and transactions alleged herein;

C.      Awarding Plaintiff and the other members of the Class prejudgment and post-judgment interest, as well as their reasonable attorneys' fees, expert fees and other costs; and

D.      Awarding such other and further relief as this Court may deem just and proper.

## DEMAND FOR TRIAL BY JURY

Plaintiff hereby demands a trial by jury.

Dated:  September 3, 2019

Respectfully submitted,

**POMERANTZ LLP**

*/s/ Jeremy A. Lieberman*
Jeremy A. Lieberman
J. Alexander Hood II
Jonathan Lindenfeld
600 Third Avenue, 20th Floor
New York, New York 10016
Telephone: (212) 661-1100
Facsimile: (212) 661-8665
Email: jalieberman@pomlaw.com
Email: ahood@pomlaw.com
Email: jlindenfeld@pomlaw.com

**POMERANTZ LLP**
Patrick V. Dahlstrom
10 South La Salle Street, Suite 3505

Chicago, Illinois 60603
Telephone: (312) 377-1181
Facsimile: (312) 377-1184
Email: pdahlstrom@pomlaw.com

**THE SCHALL LAW FIRM**
Brian Schall
Rina Restaino
Kate Kearney
1880 Century Park East, Suite 404
Los Angeles, CA 90067
Telephone: (424) 303-1964
Email: brian@schallfirm.com
Email: rina@schallfirm.com
Email: kate@schallfirm.com

*Attorneys for Plaintiff*

## CERTIFICATION PURSUANT
## <u>TO FEDERAL SECURITIES LAWS</u>

1.     I, Li Hong Cheng, make this declaration pursuant to Section 27(a)(2) of the Securities Act of 1933 ("Securities Act") and/or Section 21D(a)(2) of the Securities Exchange Act of 1934 ("Exchange Act") as amended by the Private Securities Litigation Reform Act of 1995.

2.  I have reviewed a Complaint against Canada Goose Holdings, Inc.  ("Canada Goose" or the "Company") and authorize the filing of a comparable complaint on my behalf.

3.  I did not purchase or acquire Canada Goose securities at the direction of plaintiffs' counsel or in order to participate in any private action arising under the Securities Act or Exchange Act.

4.   I am willing to serve as a representative party on behalf of a Class of investors who purchased or acquired Canada Goose securities during the class period, including providing testimony at deposition and trial, if necessary.  I understand that the Court has the authority to select the most adequate lead plaintiff in this action.

5.  To the best of my current knowledge, the attached sheet lists all of my transactions in Canada Goose securities during the Class Period as specified in the Complaint.

6.  During the three-year period preceding the date on which this Certification is signed, I have not served or sought to serve as a representative party on behalf of a class under the federal securities laws.

7.   I agree not to accept any payment for serving as a representative party on behalf of the class as set forth in the Complaint, beyond my pro rata share of any recovery, except such reasonable costs and expenses directly relating to the representation of the class as ordered or approved by the Court.

8. I declare under penalty of perjury that the foregoing is true and correct.

**Executed** ___8/29/2019_____
                                   **(Date)**

DocuSigned by:

_____
                                **(Signature)**

_____Li Hong Cheng_____
                      **(Type or Print Name)**

**Canada Goose Holdings Inc.**                                                      **Cheng, Li Hong**

**List of Purchases and Sales**

| Date | Purchase or Sale | Number of Shares/Unit | Price Per Share/Unit |
|------|------------------|-----------------------|----------------------|
| 5/10/2019 | Purchase | 100 | $51.0000 |
| 5/14/2019 | Purchase | 100 | $50.2500 |
| 6/7/2019 | Purchase | 100 | $33.0000 |
| 6/24/2019 | Purchase | 100 | $37.1500 |
| 6/11/2019 | Sale | (100) | $33.9000 |
| 6/17/2019 | Sale | (100) | $35.8800 |
| 6/20/2019 | Sale | (100) | $37.3500 |
| 7/2/2019 | Sale | (100) | $38.3900 |