UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

———————————————————— x

LI HONG CHENG, Individually and on Behalf :    Civil Action No. 1:19-cv-08204-VSB
of All Others Similarly Situated,                :

                              :    <u>CLASS ACTION</u>
                Plaintiff,       :

                              :    MEMORANDUM OF LAW IN SUPPORT
     vs.                            :    OF MOTION FOR APPOINTMENT AS
                              :    LEAD PLAINTIFF AND APPROVAL OF
CANADA GOOSE HOLDINGS INC., DANI   :    SELECTION OF LEAD COUNSEL
REISS, JONATHAN SINCLAIR and JOHN    :
BLACK,                                 :

               Defendants.      :
                              :

———————————————————— x

**TABLE OF CONTENTS**

**Page**

I.     INTRODUCTION ...............................................................................................1

II.    SUMMARY OF THE ACTION ........................................................................1

III.   ARGUMENT .....................................................................................................4

      A.     The Pension Fund Should Be Appointed Lead Plaintiff..........................4

            1.     The Pension Fund's Motion Is Timely .......................................5

            2.     The Pension Fund Possesses the Largest Financial Interest .......5

            3.     The Pension Fund Otherwise Satisfies Rule 23 .........................6

      B.     The Pension Fund's Selection of Counsel Should Be Approved ............7

IV.    CONCLUSION...................................................................................................10

## I.    INTRODUCTION

Presently pending before this Court is a securities class action brought on behalf of purchasers of Canada Goose Holdings Inc. ("Canada Goose" or the "Company") securities between March 16, 2017 and August 1, 2019 (the "Class Period"), against the Company and three of its current and former senior executive officers for alleged violations of the Securities Exchange Act of 1934 (the "1934 Act"). The Private Securities Litigation Reform Act of 1995 ("PSLRA") directs courts to appoint as lead plaintiff the class member it "determines to be most capable of adequately representing the interests of class members." 15 U.S.C. §78u-4(a)(3)(B)(i). Here, the National Elevator Industry Pension Fund (the "Pension Fund") is the "most adequate plaintiff" to represent the putative class. *See* 15 U.S.C. §78u-4(a)(3)(B)(iii).

The Pension Fund respectfully submits that it should be appointed as lead plaintiff as it is an experienced and sophisticated institutional investor with ample resources and the capability to oversee complex litigation. In addition to timely filing its motion, the Pension Fund has a significant financial interest. And, the Pension Fund meets the typicality and adequacy requirements set out in Rule 23 of the Federal Rules of Civil Procedure because its claims are typical of those of absent class members and the Pension Fund will fairly and adequately represent the putative class's interests. The Pension Fund has also selected Robbins Geller Rudman & Dowd LLP, a firm with extensive experience prosecuting securities class actions like this, to serve as lead counsel for the putative class. *See* 15 U.S.C. §78u-4(a)(3)(B)(v). *See, e.g.*, §III.B, *infra*.

Accordingly, the Pension Fund's motion should be granted.

## II.    SUMMARY OF THE ACTION

Canada Goose designs, manufactures, and sells outdoor apparel including jackets, shells, vests, knitwear, footwear, and accessories. Canada Goose uses, among other materials, animal down

- 1 -

and furs for its winter jackets and other apparel.  The Company's common stock trades on the New York Stock Exchange under the ticker symbol GOOS.

The complaint alleges that during the Class Period, defendants made materially false and misleading statements regarding the Company's business, operational and compliance policies. Specifically, defendants made false and/or misleading statements and/or failed to disclose that: (i) Canada Goose sourced the down and fur used in its clothing products in a way that treated animals in an unethical and inhumane manner; (ii) Canada Goose was thus non-compliant with relevant United  States Federal Trade Commission regulations pertaining to false advertising with respect to its sourcing practices; (iii) accordingly, Canada Goose was the subject of an ongoing FTC investigation regarding false advertising; and (iv) as a result, the Company's public statements were materially false and misleading at all relevant times.  ECF No. 1 at ¶4.  Although unalleged in the current complaint, defendants made positive but false statements during the Class Period about the demand for Canada Goose products as the Company suffered adverse demand trends concurrently with the growing scandal related to its mistreatment of animals.

On November 2, 2017, the People for the Ethical Treatment of Animals issued a news release entitled "Exposed: Geese Crushed, Suffocated at Canada Goose's Down Supplier," alleging that Canada Goose suppliers used unethical measures to obtain the down and fur used in creating the Company's clothing merchandise.  ECF No. 1 at ¶5, 37.[1]  The release also stated that PETA filed a complaint with the FTC and the Canadian Competition Bureau regarding Canada Goose's practices because it contradicted claims in its communications and promotional materials.  *Id.*  The complaint

---

[1]     PEOPLE FOR THE ETHICAL TREATMENT OF ANIMALS, *Exposed: Geese Crushed, Suffocated at Canada Goose's Down Supplier*, News Releases (Nov. 2, 2017), https://www.peta.org/media/news-releases/exposed-geese-crushed-suffocated-canada-gooses-supplier/.

alleges that following this news, Canada Goose's stock price declined over 3%, causing substantial harm to investors.  *Id.* at ¶38.

The complaint alleges that despite PETA's November 2, 2017 news release, Canada Goose continued to represent that the down and fur used in producing its clothing products were collected using humane and ethical practices.

On February 14, 2019, Canada Goose reported earnings for the third quarter of 2019, revealing that the Company had suffered weakening demand trends and a 75% year-over-year inventory increase.  *See* Canada Goose Holdings Inc., Report of Foreign Private Issuer (Form 6-K).

On May 29, 2019, in connection with its fourth quarter 2019 results, Canada Goose reported that its revenue growth for the fourth quarter had fallen by half.  *See* Canada Goose Holdings Inc., Annual Report (Form 20-F).

On June 17, 2019, the FTC issued a closing letter to Canada Goose's legal  counsel which stated, in relevant part:

> As you know, the staff of the Federal Trade Commission's Division of Advertising Practices has conducted an investigation into the advertising practices of your client, Canada Goose Inc. ("Canada Goose"), for possible violations of Section 5 of the Federal Trade  Commission Act, 15 U.S.C. § 45. Section 5 of the FTC Act requires that advertising claims be truthful and non-misleading.  We were concerned that Canada Goose may have made false or misleading representations about the treatment of geese whose down is used in Canada Goose's apparel.

> Upon careful review of this matter, including non-public information Canada Goose provided during our investigation, we have determined not to recommend enforcement action at this time. In coming to this conclusion, we considered a number of factors, including the prompt corrective action taken by Canada Goose, such as removing the advertising claims at issue from the marketplace and  clarifying its business practices in marketing materials, among other things. Thus, it appears that no further action is warranted at this time and the investigation is closed.

> This action is not to be construed as a determination that a violation of law did ***not*** occur, just as the pendency of an investigation should not be construed as a determination that a  violation has occurred. ***The Commission reserves the right to take further action as the public interest may warrant***.

ECF No. 1 at ¶49.  The complaint alleges that on this news, Canada Goose's stock price declined over 1.3%, causing substantial harm to investors.  *Id.* at ¶50.

On August 1, 2019, the *New York Post* published an article entitled "Canada Goose pulls claims about its 'ethical' treatment of animals."  ECF No. 1 at ¶51.  According to the *Post* article, Canada Goose had abandoned its claims of ethical treatment of animals used in making its winter jackets and clothing in response to the FTC's regulatory review.  *Id.*  The *Post* article also reported that Canada Goose had removed from its website previous claims that the Company sourced coyote fur from animals in overpopulated areas, as well as videos purporting to show where Canada Goose obtained down for its parkas.  *Id.*  The *Post* article also reported PETA's assertion that its complaint to the FTC in 2017 had precipitated the FTC's investigation into Canada Goose for potential violations of the FTC Act.  *Id.*  The complaint alleges that on this news, Canada Goose's stock price declined over 4.5%, causing substantial harm to investors.  *Id.* at ¶52.

Finally, on August 14, 2019, Canada Goose revealed that it had suffered a net loss of almost $30 million in the first quarter of 2020 and a sharp decline in the Company's profit margins.  *See* Canada Goose Holdings Inc., Report of Foreign Private Issuer (Form 6-K) .

As a result of defendants' wrongful acts and omissions, and the precipitous decline in the market value of the Company's securities, the Pension Fund and other class members have suffered significant losses and damages.

## III.   ARGUMENT

### A.   The Pension Fund Should Be Appointed Lead Plaintiff

The PSLRA establishes a procedure for the appointment of a lead plaintiff in "each private action arising under [the 1934 Act] that is brought as a plaintiff class action pursuant to the Federal Rules of Civil Procedure."  15 U.S.C. §78u-4(a)(1).  First, the pendency of the action must be

- 4 -

publicized in a widely circulated national business-oriented publication or wire service not later than 20 days after filing of the first complaint.  15 U.S.C. §78u-4(a)(3)(A)(i).  Next, the PSLRA provides that the Court shall adopt a presumption that the most adequate plaintiff is the person that –

> (aa) has either filed the complaint or made a motion in response to a notice . . .;
>
> (bb) in the determination of the court, has the largest financial interest in the relief sought by the class; and
>
> (cc) otherwise satisfies the requirements of Rule 23 of the Federal Rules of Civil Procedure.

15 U.S.C. §78u-4(a)(3)(B)(iii).  The Pension Fund meets each of these requirements and should therefore be appointed Lead Plaintiff.

### 1.    The Pension Fund's Motion Is Timely

On September 3, 2019, notice of the complaint was published on *Globe Newswire* and advised class members of the pendency of action, the alleged claims, the class definition, and the option of moving the Court to be appointed as lead plaintiff by no later than November 4, 2019.  *See* Declaration of David A. Rosenfeld in Support of Motion for Appointment as Lead Plaintiff and Approval of Selection of Lead Counsel ("Rosenfeld Decl."), Ex. A.  Therefore, the Pension Fund filed within the applicable deadline and its motion should be considered for lead plaintiff appointment.

### 2.    The Pension Fund Possesses the Largest Financial Interest

During the Class Period, the Pension Fund purchased 100,004 shares of Canada Goose common stock and suffered over $1.17 million in losses due to defendants' alleged misconduct.  *See* Rosenfeld Decl., Exs. B, C.[2]  To the best of its counsel's knowledge, no other plaintiff claims a

---

[2]    The Pension Fund's losses are the same under both the first in, first out and the last-in, first-out accounting methodologies.

larger financial interest than the Pension Fund.  Therefore, the Pension Fund satisfies the PSLRA's "largest financial interest" requirement.

### 3.   The Pension Fund Otherwise Satisfies Rule 23

In addition to having the largest financial interest, a lead plaintiff must also "otherwise satisf[y] the requirements of Rule 23 of the Federal Rules of Civil Procedure."  15 U.S.C. §78u-4(a)(3)(B)(iii)(I)(cc); *see also Micholle v. Ophthotech Corp.*, 2018 WL 1307285, at *6 (S.D.N.Y. Mar. 13, 2018) (courts need only consider the typicality and adequacy requirements for the Rule 23 analysis in the context of appointment of lead plaintiff).

"With respect to typicality, courts consider whether the claims of the proposed lead plaintiff 'arise from the same conduct from which the other class members' claims and injuries arise.' . . . While the claim need not be identical, it must be substantially similar to the other members' claims." *Ophthotech*, 2018 WL 1307285, at *6 (citation omitted).  "The adequacy requirement is satisfied where the proposed lead plaintiff 'fairly and adequately protect[s] the interests of the class.'"  *Id.* (quoting Fed. R. Civ. P. 23(a)(4)).  "The presumptive lead plaintiff meets this requirement when this plaintiff: (1) has no conflict of interest with the other members of the class; (2) has sufficient interest in the outcome of the case; and (3) has selected counsel that is qualified, experienced, and generally able to conduct the litigation in question."  *Id.*

The Pension Fund satisfies the typicality requirement because, just like all other class members, it: (1) purchased Canada Goose securities during the Class Period; (2) was adversely affected by defendants' false and misleading statements; and (3) suffered damages thereby.  In addition, the Pension Fund is an adequate representative of the class because its interests are aligned with the putative class and there is no evidence of any antagonism between the Pension Fund's interests and the class's interests.  The Pension Fund's substantial loss provides the requisite interest

- 6 -

to ensure vigorous advocacy.  In addition, as shown below, the Pension Fund has retained competent and experienced counsel to prosecute these claims.

Founded in 1962, the Pension Fund is a multiemployer employee benefit plan with more than $7 billion in assets under management overseen for the benefit of over 47,000 members.[3]  The Pension Fund is a sophisticated and experienced institutional investor that is ready, willing, and able to fulfill its lead plaintiff duties.  *See, e.g., City of Lakeland Emps. Pension Plan v. Baxter Int'l Inc.*, No. 1:10-cv-06016, ECF No. 312 (N.D. Ill. Jan. 22, 2016) (Pension Fund obtaining final approval of $42.5 million settlement as lead plaintiff in PSLRA case).  The Pension Fund is precisely the type of institutional investor whose participation in securities class actions Congress sought to encourage through the enactment of the PSLRA:  "Both the Conference Committee Report and the Senate Report state that the purpose of the legislation was to encourage institutional investors to serve as lead plaintiff, predicting that their involvement would significantly benefit absent class members."  *In re Cendant Corp. Litig.*, 264 F.3d 201, 273 (3d Cir. 2001); *see City of Monroe Emps' Ret. Sys. v. Hartford Fin. Servs. Grp., Inc.*, 269 F.R.D. 291, 294 (S.D.N.Y. 2010) ("The drafters of the PSLRA sought to reduce the influence of lawyers on class action securities suits by weighting the determination of lead plaintiff in favor of large institutional investors.").

Accordingly, the Pension Fund has made a *prima facie* showing that it satisfies the typicality and adequacy requirements for the purposes of this motion.

### B.    The Pension Fund's Selection of Counsel Should Be Approved

"The PSLRA provides that the 'most adequate plaintiff shall, subject to the approval of the court, select and retain counsel to represent the class.'"  *Ophthotech*, 2018 WL 1307285, at *10

---

[3]    The Pension Fund's Benefit Plan website, https://www.neibenefits.org/members/pension-plan/, contains additional information about its management, history, and policies.

(quoting 15 U.S.C. §78u-4(a)(3)(B)(v)).   "There is a 'strong presumption in favor of approving a properly-selected lead plaintiff's decisions as to counsel selection.'" *Id.* (citation omitted).  Here, the Pension Fund has selected Robbins Geller to serve as lead counsel for the proposed class.

Robbins Geller possesses the experience and resources necessary to successfully prosecute this large and complex action for the benefit of the class.  Robbins Geller, a 200-attorney firm with offices nationwide, regularly represents clients in complex class action litigation.  The Firm's securities department includes numerous trial attorneys and many former federal and state prosecutors, and utilizes an extensive group of in-house experts to aid in the prosecution of complex securities issues.[4]  District courts throughout the nation, including this Court, have noted Robbins Geller's reputation for excellence, resulting in the appointment of Robbins Geller to lead roles in hundreds of complex securities class action cases.  *See, e.g.*, *Ophthotech*, 2018 WL 1307285, at *10 (appointing Robbins Geller as lead counsel, finding that "[t]he attorneys at [Robbins Geller] have substantial experience with securities litigation and securities class actions"); *see also Jones v. Pfizer, Inc.*, No. 1:10-cv-03864-AKH, ECF No. 502 at 42-43 (S.D.N.Y. Aug. 10, 2015) (commending Robbins Geller for its work in achieving $400 million settlement on the eve of trial: "Without the quality and the toughness that you have exhibited, our society would not be as good as it is with all its problems.  So from me to you is a vote of thanks for devoting yourself to this work and doing it well. . . .  You did a really good job.  Congratulations.").

---

[4]      For a detailed description of Robbins Geller's track record, resources, and attorneys, please *see* https://www.rgrdlaw.com/.  A hard copy of the Firm's resume is available upon the Court's request, if preferred.

Additionally, Robbins Geller has obtained the largest securities fraud class action recovery in the Fifth, Sixth, Seventh, Eighth, Tenth, and Eleventh Circuits.[5] And, while trials in shareholder class actions are rare, Robbins Geller has tried several cases to verdict, most recently a February 2019 trial in *HsingChing Hsu v. Puma Biotechnology, Inc.*, No. 8:15-cv-00865-AG-JCG (C.D. Cal.), where the jury returned a verdict for plaintiff, finding that defendants Puma Biotechnology, Inc. and its CEO committed securities fraud.

Thus, the Court can be assured that by approving the Pension Fund's choice of Robbins Geller as lead counsel the putative class will receive the highest caliber of representation.

---

[5]     *See In re Enron Corp. Sec.*, No. 4:01-cv-03624 (S.D. Tex.) ($7.3 billion recovery is largest securities class action recovery in U.S. history and in the Fifth Circuit); *In re Cardinal Health, Inc. Sec. Litig.*, No. 2:04-cv-00575-ALM (S.D. Ohio) ($600 million recovery is the largest securities class action recovery in the Sixth Circuit); *Lawrence E. Jaffe Pension Plan v. Household Int'l Inc.*, No. 1:02-cv-05893 (N.D. Ill.) ($1.575 billion recovery is the largest securities class action recovery following a trial as well as the largest securities class action recovery in the Seventh Circuit); *In re UnitedHealth Group Inc. Sec. Litig.*, No. 0:06-cv-01691-JMR-FLN (D. Minn.) ($925 million recovery is the largest securities class action recovery in the Eighth Circuit); *In re Qwest Commc'ns Int'l, Inc. Sec. Litig.*, No. 1:01-cv-01451-REB-KLM (D. Colo.) ($445 million recovery is the largest securities class action recovery in the Tenth Circuit); *In re HealthSouth Corp. Sec. Litig.*, No. 2:03-cv-01500-KOB-TMP (N.D. Ala.) ($671 million recovery is the largest securities class action recovery in the Eleventh Circuit).

- 9 -

## IV.    CONCLUSION

The Pension Fund has satisfied each of the PSLRA's requirements for appointment as lead plaintiff.  Accordingly, the Pension Fund respectfully requests that the Court grant its motion.

DATED:  November 4, 2019

Respectfully submitted,

ROBBINS GELLER RUDMAN
  & DOWD LLP
SAMUEL H. RUDMAN
DAVID A. ROSENFELD
VINCENT M. SERRA

s/ *David A. Rosenfeld*
DAVID A. ROSENFELD

58 South Service Road, Suite 200
Melville, NY  11747
Telephone:  631/367-7100
631/367-1173 (fax)
srudman@rgrdlaw.com
drosenfeld@rgrdlaw.com
vserra@rgrdlaw.com

ROBBINS GELLER RUDMAN
  & DOWD LLP
DANIELLE S. MYERS
MICHAEL ALBERT
655 West Broadway, Suite 1900
San Diego, CA  92101
Telephone:  619/231-1058
619/231-7423 (fax)
dmyers@rgrdlaw.com
malbert@rgrdlaw.com

[Proposed] Lead Counsel for [Proposed] Lead
Plaintiff

O'DONOGHUE & O'DONOGHUE LLP
LOUIS P. MALONE III
JOHN M. McINTIRE
5301 Wisconsin Avenue, N.W., Suite 800
Washington, DC  20015
Telephone:  202/362-0041
202/362-2640 (fax)
lmalone@odonoghuelaw.com
jmcintire@odonoghuelaw.com

Additional Counsel for [Proposed] Lead Plaintiff

4826-6353-3996.v1

## CERTIFICATE OF SERVICE

I hereby certify that on November 4, 2019, I caused to be served the foregoing document upon all counsel of record through filing of these materials with the Court's Case Management and Electronic Case Filing System.

s/ DAVID A. ROSENFELD
DAVID A. ROSENFELD

ROBBINS GELLER RUDMAN
& DOWD LLP
58 South Service Road, Suite 200
Melville, NY  11747
Telephone:  631/367-7100
631/367-1173 (fax)

E-mail:  drosenfeld@rgrdlaw.com

4826-6353-3996.v1

# Mailing Information for a Case 1:19-cv-08204-VSB Cheng v. Canada Goose Holdings Inc. et al

## Electronic Mail Notice List

The following are those who are currently on the list to receive e-mail notices for this case.

- **Joseph Alexander Hood , II**
  ahood@pomlaw.com,abarbosa@pomlaw.com

- **Jeremy Alan Lieberman**
  jalieberman@pomlaw.com,ahood@pomlaw.com,disaacson@pomlaw.com,abarbosa@pomlaw.com

## Manual Notice List

The following is the list of attorneys who are **not** on the list to receive e-mail notices for this case (who therefore require manual noticing). You may wish to use your mouse to select and copy this list into your word processing program in order to create notices or labels for these recipients.

- `(No manual recipients)`