UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| LI HONG CHENG, Individually and on Behalf of All Others Similarly Situated, <br><br> Plaintiff, <br><br> vs. <br><br> CANADA GOOSE HOLDINGS INC., DANI REISS, JONATHAN SINCLAIR, and JOHN BLACK, <br><br> Defendants. | Case No.  1:19-cv-08204-VSB |

MEMORANDUM OF LAW: (1) IN FURTHER SUPPORT OF MOTION OF
STEVEN HULAJ FOR APPOINTMENT AS LEAD PLAINTIFF AND APPROVAL
OF LEAD COUNSEL; AND (2) IN OPPOSITION TO COMPETING MOTIONS

Movant Hulaj[1] respectfully submits this memorandum of law in further support of his motion for appointment as Lead Plaintiff and approval of his selection of Pomerantz as Lead Counsel (Dkt. No. 8); and in opposition to the competing motions of (i) National Elevator Industry Pension Fund ("NEIPF") (Dkt. No. 14); and (ii) Ricardo Cardoso ("Cardoso") (Dkt. No. 12).

## PRELIMINARY STATEMENT

This is a class action securities fraud lawsuit on behalf of investors in Canada Goose securities.  As with all federal class action securities fraud lawsuits, a lead plaintiff must be appointed.  The PSLRA governs that process and, pursuant to the PSLRA, the Court should appoint as Lead Plaintiff the movant or group of movants with the greatest financial interest in the outcome of the action; and who satisfies the requirements of Rule 23 of the Federal Rules of Civil Procedure.  15 U.S.C. § 78u-4(a)(3)(B)(iii)(I).  Based on these two statutory criteria, Hulaj respectfully submits that he should be appointed to serve as Lead Plaintiff.

First, Hulaj has the largest financial interest in this litigation, as assessed under the *Lax* factors, first articulated in *Lax v. First Merchants Acceptance Corp.*, No. 97 C 2715, 1997 U.S. Dist. LEXIS 11866, at \*7-\*8 (N.D. Ill. Aug. 6, 1997).  The four *Lax* factors guiding the lead plaintiff selection process are: (1) the number of shares purchased during the class period; (2) the number of shares retained at the end of the Class Period (*i.e.*, net shares purchased during the Class Period); (3) the total net funds expended during the class period; and (4) the approximate losses suffered.  *Lax*, 1997 U.S. Dist. LEXIS 11866, at \*7-\*8.

---

[1] All capitalized terms herein are defined in Hulaj's moving brief, unless otherwise indicated. *See* Dkt. No. 10.

As set forth in the table below, Hulaj leads the field in two of the four *Lax* factors, retained shares and shares purchased.   Another movant, NEIPF, leads the field in the two remaining *Lax* factors, net funds expended and loss.

| Movant | Retained Shares (Net Shares Purchased) | Shares Purchased | Net Funds Expended | Loss |
|---|---|---|---|---|
| Steven Hulaj | 98,160 | 115,710 | $4,349,857 | $369,836 |
| National Elevator Industry Pension Fund | 93,149 | 100,004 | $4,936,941 | $1,165,493 |
| Ricardo Cardoso | 4,000 | 4,000 | $209,680 | $47,684 |

With no single movant leading in a majority of the *Lax* factors, the Court must exercise its discretion in determining the movant with the greatest financial interest in this litigation within the meaning of the PSLRA.  Hulaj respectfully submits that he, not NEIPF, possesses the greatest financial interest in this litigation because he retained more shares at the end of the Class Period than any other movant.  Many courts have found retained shares (*i.e.*, the number of net shares purchased during the class period) to be the best metric of financial interest.  *See*, *e.g.*, *Pio v. GM Co.*, No. 14-11191, 2014 U.S. Dist. LEXIS 151205, at *11 (E.D. Mich. Oct. 24, 2014) ("courts have found the second [*Lax*] factor—retained shares—to be the most determinative factor in approximating an investor's potential recovery."); *Westchester Putnam Cntys. Heavy & Highway Laborers Local 60 Benefit Funds v. Brixmor Prop. Grp., Inc.*, 16-CV-02400 (AT)(SN), 2016 U.S. Dist. LEXIS 164682, at *4 (S.D.N.Y. Nov. 29, 2016) (finding retained shares to "provide a more objective assessment of a movant's financial interest than the losses suffered"); *In re Network Assocs.*, 76 F. Supp. 2d 1017, 1027 (N.D. Cal. 1999) (retained shares should be used to determine financial interest as "the candidate with the most net shares purchased will normally have the largest potential damage recovery"); *In re Critical Path, Inc. Sec. Litig.*, 156 F. Supp. 2d 1102, 1108 (N.D. Cal. 2001) (retained shares is "determinative" of financial

2

interest).  Here, ***Hulaj retained 98,160 shares*** of Canada Goose stock at the end of the Class Period—***more than both competing movants combined***.  On this basis, coupled with the fact that Hulaj also purchased more shares of Canada Goose stock during the Class Period than both competing movants combined, Hulaj submits that he possesses the greatest financial interest in this litigation within the meaning of the PSLRA.

Hulaj also satisfies the typicality and adequacy requirements of Rule 23.  Hulaj, like all members of the Class, purchased Canada Goose securities at prices artificially inflated by Defendants' misrepresentations or omissions, and was damaged upon the disclosure of those misrepresentations or omissions.  These shared claims, which are based on the same legal theory, and arise from the same events and course of conduct as the Class claims, satisfy the requirements of Rule 23.  *Aude v. Kobe Steel, Ltd.*, 17-CV-10085, 2018 U.S. Dist. LEXIS 57591, at *8 (S.D.N.Y. Apr. 4, 2018).  Hulaj's significant exposure to the alleged fraud at issue gives him "a sufficient interest in the outcome of the case to ensure vigorous advocacy," Hulaj is aware of no conflict between his interests and those of the putative Class, and in Pomerantz, Hulaj has retained qualified and experienced class counsel.  *Foley v. Transocean Ltd.*, 272 F.R.D. 126, 131 (S.D.N.Y. 2011).

For the reasons set forth herein, Hulaj respectfully submits that his motion should be granted in its entirety, and that the competing motions should be denied.

## ARGUMENT

### I.   Hulaj Should Be Appointed Lead Plaintiff

The PSLRA creates a strong presumption that the Lead Plaintiff is the "person or group of persons" that "has the largest financial interest in the relief sought by the class" and "otherwise satisfies the requirements of Rule 23."  15 U.S.C. § 78u-4(a)(3)(B)(iii)(I).  The movant that has the largest financial interest must "make a *prima facie* showing that they meet

[the requirements of] Rule 23". *Aude*, 2018 U.S. Dist. LEXIS 57591, at *8; *see also Kaplan v. Gelfond*, 240 F.R.D. 88, 94 (S.D.N.Y. 2007).  Once this presumption is triggered, it may be rebutted upon proof that the presumptive Lead Plaintiff will not fairly represent the interests of the Class.  15 U.S.C. § 78u–4(a)(3)(B)(iii)(II).  Here, the most adequate class representative is Hulaj.

### A.     Hulaj Has The Largest Financial Interest In The Relief Sought By The Class

The PSLRA requires a court to adopt a rebuttable presumption that "the most adequate plaintiff . . . is the person or group of persons that . . . has the largest financial interest in the relief sought by the class.  15 U.S.C. § 78u-4(a)(3)(B)(iii).  While the PSLRA itself does not provide any guidance concerning the method of calculating which plaintiff has the "largest financial interest," courts routinely assess financial interest with reference to the four *Lax* factors: (1) the number of shares purchased during the class period; (2) the number of shares retained at the end of the Class Period (*i.e.*, net shares purchased during the Class Period); (3) the total net funds expended during the class period; and (4) the approximate losses suffered.  *Lax*, 1997 U.S. Dist. LEXIS 11866, at *7-*8.  The following chart expresses each movant's financial interest in this litigation in terms of the *Lax* factors:

| Movant | Retained Shares (Net Shares Purchased) | Shares Purchased | Net Funds Expended | Loss |
|---|---|---|---|---|
| Steven Hulaj | 98,160 | 115,710 | $4,349,857 | $369,836 |
| National Elevator Industry Pension Fund | 93,149 | 100,004 | $4,936,941 | $1,165,493 |
| Ricardo Cardoso | 4,000 | 4,000 | $209,680 | $47,684 |

As the chart illustrates, no single movant leads in all four *Lax* factors or even in a majority of the *Lax* factors.  While Hulaj purchased and retained more shares than the other movants, NEIPF expended more funds and has alleged a larger loss.  The Court must thus

consider all four *Lax* factors together and, in its discretion, determine which movant possesses the largest financial interest within the meaning of the statute. Because Hulaj leads with respect to the essential second factor, retained shares, he respectfully urges the Court to "decline[] the invitation to ignore all but the fourth *Lax* factor [economic loss] in deciding which movant has the largest financial interest in this litigation," *Pio*, 2014 U.S. Dist. LEXIS 151205, at *11, to consider all four *Lax* factors holistically, and to find that Hulaj has the greatest financial interest in this litigation within the meaning of the PSLRA.

Courts routinely recognize that the number of shares retained at the end of the Class Period (*i.e.*, net shares purchased during the Class Period) is the most significant factor to be considered. Considering retained shares as the most reliable metric of financial interest for the purposes of securities class actions makes intuitive sense, as an investor with more retained shares at the end of the class period "will, presumably, have a greater interest in the litigation, because he or she was induced by the fraud to purchase shares, and has been left 'holding the bag' when the fraudulent inflation is revealed." *In re McKesson HBOC Sec. Litig.*, 996-97 (N.D. Cal. 1999). The only shares on which a movant can recover losses in a securities fraud action are those retained by a movant at the end of the relevant class period, upon the revelation of the alleged fraud at issue. Of the four *Lax* factors, then, the second—net shares purchased (retained shares)—thus provides the most appropriate measure of financial interest for purposes of appointing a lead plaintiff.

Courts in this Judicial District and nationwide have recognized the wisdom of this approach and looked to retained shares in assessing a lead plaintiff movant's financial interest. *See*, *e.g.*, *Brixmor Prop. Grp.*, 2016 U.S. Dist. LEXIS 164682, at *4 (finding retained shares to "provide a more objective assessment of a movant's financial interest than the losses suffered");

*Pio*, 2014 U.S. Dist. LEXIS 151205, at \*11 ("courts have found the second [*Lax*] factor—retained shares—to be the most determinative factor in approximating an investor's potential recovery."); *In re Comverse Tech., Inc. Sec. Litig.*, 06-CV-1825 (NGG) (RER), 2007 U.S. Dist. LEXIS 14878 (E.D.N.Y. Mar. 2, 2007) (emphasizing that movant can only recover losses incurred on shares held at the time alleged fraud was revealed); *Eichenholtz v. Verifone Holdings, Inc.*, No. C 07-06140 MHP, 2008 U.S. Dist. LEXIS 64633, at \*10-\*11 (N.D. Cal. Aug. 22, 2008) ("When calculating the greatest financial interest, the court adopts the retained share methodology, which primarily looks to shares bought during the class period that are retained at the end of the class period."); *Network Assocs.*, 76 F. Supp. 2d at 1027 (retained shares should be used to determine financial interest as "the candidate with the most net shares purchased will normally have the largest potential damage recovery"); *Critical Path*, 156 F. Supp. 2d at 1108 (retained shares is "determinative" of financial interest); *Ruland v. InfoSonics Corp.*, Nos. 06cv1231 BTM(WMc) *et al.*, 2006 U.S. Dist. LEXIS 79144, at \*16-\*17 (S.D. Cal. Oct. 23, 2006) (equating "the greatest number of net shares purchased [*i.e.*, shares retained]" with "the largest potential recovery").

Under the foregoing analysis, no movant seeking appointment as lead plaintiff in the Action has alleged a larger financial interest in the litigation than Hulaj. As shown above, Hulaj retained 98,160 shares at the end of the Class Period, more than both competing movants ***combined***. NEIPF, the movant with the next-largest financial interest, retained only 93,149 shares—more than 5,000 fewer than Hulaj. In addition, Hulaj purchased more shares of Canada Goose stock during the Class Period—115,710—than both competing movants combined. As such, Hulaj submits that he, not NEIPF, possesses the greatest financial interest in this litigation.

6

### B.    Hulaj Satisfies The Requirements Of Rule 23

In addition to possessing the largest financial interest in the relief sought by the Class, Hulaj has also made the requisite *prima facie* showing that he satisfies the typicality and adequacy requirements of Rule 23.  *See Aude*, 2018 U.S. Dist. LEXIS 57591, at *8; *Kaplan*, 240 F.R.D. at 94.  First, Hulaj's claims satisfy the typicality requirement of Rule 23(a)(3) because his claims in the Related Actions are based on the same legal theory and arise from the same events and course of conduct as the Class's claims.  *See*, *e.g.*, *In re Orion Secs. Litig.*, 08 Civ. 1328 (RJS), 2008 U.S. Dist. LEXIS 55368, at *12 (S.D.N.Y. July 7, 2008); *Janbay v. Canadian Solar, Inc.*, 272 F.R.D. 113, 120 (S.D.N.Y. 2010).  Second, Hulaj satisfies the adequacy requirement of Rule 23(a)(4) because "(1) class counsel is qualified, experienced, and generally able to conduct the litigation; (2) there is no conflict between the proposed lead plaintiff and the members of the class; and (3) the proposed lead plaintiff has a sufficient interest in the outcome of the case to ensure vigorous advocacy."  *Foley*, 272 F.R.D. at 131; *see also Dookeran v. Xunlei Ltd.*, 18-cv-467 (RJS) *et al.*, 2018 U.S. Dist. LEXIS 62575, at *6 (S.D.N.Y. Apr. 12, 2018) (same).

To overcome the strong presumption entitling Hulaj to appointment as Lead Plaintiff, the PSLRA requires **"*proof*"** that the presumptive Lead Plaintiff is inadequate.  15 U.S.C. § 78u-4(a)(3)(B)(iii)(II) (emphasis added).  No such proof exists in this case and any arguments to the contrary should be flatly rejected.

Finally, as discussed in greater detail below, Hulaj has further demonstrated his adequacy by selecting Pomerantz—counsel highly capable and experienced in prosecuting securities cases and managing complex litigation efficiently—to serve as Lead Counsel for the Class.

* * * *

7

Because Hulaj has the largest financial interest in the relief sought by the Class and otherwise satisfies Rule 23, he is the presumptive "most adequate plaintiff" of the Class within the meaning of the PSLRA.

## II.    Hulaj's Selection Of Counsel Should Be Approved

The PSLRA vests authority in the Lead Plaintiff to select and retain lead counsel, subject to the approval of the Court. *See* 15 U.S.C. § 78u-4(a)(3)(B)(v). The Court should interfere with Lead Plaintiff's selection only when necessary "to protect the interests of the class." 15 U.S.C. § 78u-4(a)(3)(B)(iii)(II)(aa); *see also Kaplan v. S.A.C. Capital Advisors, L.P.*, 311 F.R.D. 373, 383 (S.D.N.Y. 2015) ("The PSLRA evidences a strong presumption in favor of approving a properly-selected lead plaintiff's decisions as to counsel selection and counsel retention.") (quoting *Varghese*, 589 F. Supp. 2d at 398); *In re Molson Coors Brewing Co. Sec. Litig.*, 233 F.R.D. 147, 150 (D. Del. 2005) (the Lead Plaintiff "is primarily responsible for selecting lead counsel.").

Here, Hulaj has selected Pomerantz as Lead Counsel for the Class. As its resume reflects, Pomerantz is highly experienced in the area of securities litigation and class actions, and has successfully prosecuted numerous securities litigations and securities fraud class actions on behalf of investors. In 2018 alone, Pomerantz secured a settlement of nearly $3 billion on behalf of investors in the securities of Petróleo Brasileiro S.A.–Petrobras—the largest securities class action settlement in a decade—and an $80 million settlement on behalf of Yahoo Inc. investors. *See* Dkt. No. 11-4. Thus, the Court may be assured that by approving the selection of counsel by Hulaj, the members of the class will receive the best legal representation available.

### CONCLUSION

For the foregoing reasons, Hulaj respectfully requests that the Court grant his motion in its entirety and deny the competing motions.

Dated: November 18, 2019                    Respectfully submitted,

POMERANTZ LLP

*/s/ Jeremy A. Lieberman*
Jeremy A. Lieberman
J. Alexander Hood II
Jonathan D. Lindenfeld
600 Third Avenue, 20th Floor
New York, New York 10016
Telephone: (212) 661-1100
Facsimile: (212) 661-8665
Email: jalieberman@pomlaw.com
Email: ahood@pomlaw.com
Email: jlindenfeld@pomlaw.com

POMERANTZ LLP
Patrick V. Dahlstrom
Ten South LaSalle Street, Suite 3505
Chicago, Illinois 60603
Telephone: (312) 377-1181
Facsimile: (312) 377-1184
Email: pdahlstrom@pomlaw.com

*Counsel for Lead Plaintiff Movant Steven
Hulaj and Proposed Lead Counsel for the
Class*