# EXHIBIT 1

Jennifer Pafiti (SBN 282790)
**POMERANTZ LLP**
468 North Camden Drive
Beverly Hills, CA 90210
Telephone: (818) 532-6499
E-mail: jpafiti@pomlaw.com

*- additional counsel on signature page –*

## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CITY OF MIAMI GENERAL EMPLOYEES' & SANITATION EMPLOYEES' RETIREMENT TRUST, Individually and on Behalf of All Others Similarly Situated,<br><br>Plaintiff,<br><br>v.<br><br>RH, INC., GARY FRIEDMAN and KAREN BOONE,<br><br>Defendants. | No. 3:17-cv-00554<br><br>**NOTICE OF MOTION AND MOTION OF THE HULAJ FAMILY FOR CONSOLIDATION, APPOINTMENT AS LEAD PLAINTIFF AND APPROVAL OF COUNSEL; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION**<br><br>DATE: May 10, 2017<br>TIME: 2:00 pm<br>JUDGE: William H. Orrick<br>CTRM: 2 – 17th Floor |
| PETER J. ERRICHIELLO, JR., Individually and on Behalf of All Others Similarly Situated,<br><br>Plaintiff,<br><br>v.<br><br>RH, GARY FRIEDMAN and KAREN BOONE,<br><br>Defendants. | No. 3:17-cv-01425 |

NOTICE OF MOTION AND MOTION; MEMORANDUM OF POINTS AND AUTHORITIES

**TABLE OF CONTENTS**

I.     PRELIMINARY STATEMENT ........................................................................ 1

II.    STATEMENT OF FACTS .............................................................................. 2

III.   ARGUMENT.................................................................................................. 4

   A.    THE RELATED ACTIONS SHOULD BE CONSOLIDATED FOR ALL PURPOSES.................................................................................................. 4

   B.    THE HULAJ FAMILY SHOULD BE APPOINTED LEAD PLAINTIFF................. 5

       1.    The Hulaj Family is Willing to Serve as Class Representative............................. 6

       2.    The Hulaj Family Has the "Largest Financial Interest"......................................... 7

       3.    The Hulaj Family Otherwise Satisfies the Requirements of Rule 23 of the Federal Rules of Civil Procedure ....................................................................... 7

       4.    The Hulaj Family Will Fairly and Adequately Represent the Interests of the Class and is Not Subject to Unique Defenses........................................................... 9

   C.    LEAD PLAINTIFF'S SELECTION OF COUNSEL SHOULD BE APPROVED .... 9

IV.   CONCLUSION.............................................................................................. 10

# **TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*A.F.I.K. Holding SPRL v. Fass*,
216 F.R.D. 567 (D.N.J. 2003) ................................................................................................ 7

*Amchem Prods., Inc. v. Windsor*,
521 U.S. 591 (1997) ............................................................................................................... 9

*Baby Neal v. Casey*,
43 F.3d 48 (3d Cir. 1994) ...................................................................................................... 8

*Bassin v. Decode Genetics, Inc.*,
230 F.R.D. 313 (S.D.N.Y. 2005) ........................................................................................... 5

*Beck v. Maximus, Inc.*,
457 F.3d 291 (3d Cir. 2006) ............................................................................................... 8, 9

*Blackmoss Invs., Inc. v. ACA Capital Holdings, Inc.*,
252 F.R.D. 188 (S.D.N.Y. 2008) ........................................................................................... 5

*Danis v. USN Communs., Inc.*,
189 F.R.D. 391 (N.D. Ill. 1999) ............................................................................................ 8

*Fischler v. Amsouth Bancorporation*,
176 F.R.D. 583 (M.D. Fla. 1997) .......................................................................................... 8

*Gluck v. Cellstar Corp.*,
976 F. Supp. 542 (N.D. Tex. 1997) ....................................................................................... 8

*Greebel v. FTP Software*,
939 F. Supp. 57 (D. Mass. 1996) ........................................................................................... 8

*In re Am. Bus. Fin. Servs., Inc. Sec. Litig.*,
2004 U.S. Dist. LEXIS 10200 (E.D. Pa. Jun. 3, 2004) ......................................................... 7

*In re Comverse Tech., Inc., Sec. Litig.*,
2007 U.S. Dist. LEXIS 14878 (E.D.N.Y. Mar. 2, 2007) ....................................................... 7

*In re GE Sec. Litig.*, No. 09 Civ. 1951 (DC),
2009 U.S. Dist. LEXIS 69133 (S.D.N.Y. July 29, 2009) ...................................................... 5

*In re Olsten Corp. Sec. Litig.*,
3 F. Supp.2d 286 (E.D.N.Y. 1998) .................................................................................... 7, 8

*In re Oxford Health Plans, Inc. Sec. Litig.*,
    182 F.R.D. 42 (S.D.N.Y. 1998) ...................................................................................................... 8

*In re Tronox, Inc. Sec. Litig.*,
    262 F.R.D. 338 (S.D.N.Y. 2009) .................................................................................................... 5

*In re Vicuron Pharms., Inc. Sec. Litig.*,
    225 F.R.D. 508 (E.D. Pa. 2004) ..................................................................................................... 7

*Janovici v. DVI, Inc.*, No. 03-4795,
    2003 U.S. Dist. LEXIS 22315 (E.D.Pa. Nov. 25, 2003) ................................................................ 7

*Johnson v. Celotex Corp.*,
    899 F.2d 1281 (2d Cir. 1990) ......................................................................................................... 5

*Lax v. First Merch. Acceptance Corp.*,
    1997 U.S. Dist. LEXIS 11866 (N.D. Ill. Aug. 6, 1997) ................................................................. 7

*Malcolm v. Nat'l Gypsum Co.*,
    995 F.2d 346 (2d Cir. 1993) ........................................................................................................... 5

*Osher v. Guess ?, Inc.*,
    2001 U.S. Dist. LEXIS 6057 (C.D. Cal. Apr. 26, 2001) ................................................................ 9

*Riordan v. Smith Barney*,
    113 F.R.D. 60 (N.D. Ill. 1986) ....................................................................................................... 9

**Statutes**

15 U.S.C. § 78u-4(a)(3)(B)(i) &(ii) ......................................................................................... *passim*

**Rules**

Federal Rules of Civil Procedure Rule 23 ............................................................................... *passim*

Federal Rules of Civil Procedure Rule 42 ................................................................................ 1, 4, 5

NOTICE OF MOTION AND MOTION; MEMORANDUM OF POINTS AND AUTHORITIES

iv

**NOTICE OF MOTION AND MOTION**

**TO:    ALL PARTIES AND THEIR COUNSEL OF RECORD**

**PLEASE TAKE NOTICE** that Steven Hulaj, Henrietta Hulaj, Blair Hulaj, and Kristen Hulaj (collectively, the "Hulaj Family"), by and through their counsel, will and do hereby move this Court, pursuant to Section 21D(a)(3)(B) of the Securities Exchange Act of 1934, 15 U.S.C. § 78u-4(a)(3)(B) (the "Exchange Act"), as amended by the Private Securities Litigation Reform Act of 1995 (the "PSLRA"), and Rule 42 of the Federal Rules of Civil Procedure, for an Order filed contemporaneously with this motion: (1) consolidating the above-captioned related actions; (2) appointing the Hulaj Family as Lead Plaintiff on behalf of all persons who purchased or otherwise acquired securities of RH ("RH" or the "Company") between March 26, 2015 and June 8, 2016, both dates inclusive (the "Class Period"); (3) approving Lead Plaintiff's selection of Pomerantz LLP ("Pomerantz") as Lead Counsel for the Class; and (4) granting such other and further relief as the Court may deem just and proper.

In support of this motion, the Hulaj Family submits a Memorandum of Points and Authorities, the pleadings and other filings herein, and such other written and oral arguments as may be presented to the Court.

This motion is made on the grounds that the Hulaj Family is the most adequate lead plaintiff, as defined by the PSLRA, based on their losses of approximately $104,940, which were suffered as a result of defendants' wrongful conduct as alleged in the above-referenced related actions.  Further, the Hulaj Family satisfies the requirements of Rule 23(a) of the Federal Rules of Civil Procedure, as its claims are typical of other Class members' claims, and that it will fairly and adequately represent the Class.

**MEMORANDUM OF POINTS AND AUTHORITIES**

**I.    PRELIMINARY STATEMENT**

The Related Actions are on behalf of all persons and entities that purchased or otherwise acquired RH securities during the Class Period.  Each of the Related Actions raises substantially similar allegations: defendants violated federal securities laws by issuing false and misleading statements. Accordingly, consolidation of the Related Actions is appropriate.

Pursuant to the PSLRA, the Court is to appoint as Lead Plaintiff the movant who possesses the largest financial interest in the outcome of the action and who satisfies the requirements of Rule 23 of the Federal Rules of Civil Procedure. 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I). The Hulaj Family, with losses of approximately $104,940 in connection with its purchases of RH common stock, has the largest financial interest in the relief sought in this action. The Hulaj Family further satisfies the requirements of Rule 23 of the Federal Rules of Civil Procedure as it is an adequate representative with claims typical of the other Class members. Accordingly, the Hulaj Family respectfully submits that it should be appointed Lead Plaintiff.

## II.  STATEMENT OF FACTS

RH is a leading luxury retailer in the home furnishing marketplace. The Company operates an integrated business with multiple channels of distribution including over 70 retail stores in the United States, source book magazines and websites.

Founded in January 1979, the Company was formerly known as "Restoration Hardware Holdings, Inc." and changed its name to RH in January 2017. RH is headquartered in Corte Madera, California. The Company's common stock trades on the New York Stock Exchange ("NYSE") under the ticker symbol "RH."

Throughout the Class Period, Defendants made materially false and misleading statements regarding the Company's business, operational and compliance policies. Specifically, Defendants made false and/or misleading statements and/or failed to disclose that: (i) contrary to Defendants' representations that the Company was prepared for the launch of RH Modern, that inventory was adequate, and that customers would not face shipping delays, in reality, the Company had severely inadequate inventory and was woefully unprepared to launch RH Modern; and (ii) as a result, RH's public statements were materially false and misleading at all relevant times.

The Company and its executives publicly touted RH Modern as its "finest work ever," a "game-changer" that was poised to double the Company's revenue, and "the most important and significant new home furnishings business to be launched in the last 15 or 20 years." Bolstering these statements, the Company repeatedly issued revenue guidance that led investors to expect substantial increases in revenue due in significant part to the supposed new revenue to be generated by RH Modern.

In early 2015, the Company's core product line was facing headwinds as same store sales were decreasing. Specifically, in the RH's earnings report for the first quarter of 2015, the Company announced its comparable store sales were down 9% from the previous quarter. To reinvigorate RH's earnings, the Company began implementing its critical new product line, RH Modern. On June 11, 2015, the Company officially announced it would be releasing RH Modern later that fall. From the start of the Class Period, the Company touted its preparedness for the launch of RH Modern and increased its fiscal 2015 revenue guidance to $2.146 billion to $2.176 billion, representing growth in the range of 15% to 17% from the prior year. After raising its earnings-per-share ("EPS") guidance to $2.95 to $3.10 for fiscal 2015 the previous quarter, the Company again raised its earnings guidance to a range of $3.02 to $3.15, representing growth in the range of 28% to 33% year-over-year. RH attributed the growth in revenue and earnings, in large part, to the release of RH Modern. In the months leading up to the release of RH Modern, the Company continued to tout the new product line, including the Company's ability to have the new RH Modern products in-stock so that customers would receive furniture they ordered in a timely manner. In truth, the Company was woefully unprepared to launch RH Modern and to capitalize on the new product line. In December 2015, when RH Modern inventory problems began to emerge, the Company repeatedly downplayed the significance of the problems related to RH Modern, preventing investors from learning the full truth.

Contrary to Defendants' representations that the Company was prepared for the launch of RH Modern, in reality, the launch of RH Modern was an abject catastrophe. The Company knew that it was not prepared to introduce RH Modern on a timetable and at the quality level that its clients expected, but Defendants nonetheless assured investors of near-term profits to be driven by the new product line. As Defendants knew during the Class Period, the introduction of RH Modern was beset with a host of problems, including a near-complete lack of inventory, countless shipping delays, customer cancelations and returned products.

On December 10, 2015, the Company announced it had missed its earnings projections due, in part, to the fact that RH Modern furniture was not fully in-stock. On this news, RH's share price fell $8.94 or 10.20% over two trading days, to close at $78.65 on December 14, 2015. To stem the decline, the Company made a number of reassuring statements, including touting the launch of RH Modern as

"phenomenal" and falsely attributing the low inventory of RH Modern products to a purported strategy of conservatively managing purchases for the new product line.

On February 9, 2016, the Company announced the surprise resignation of its Chief Operating Officer ("COO"), Kenneth Dunaj ("Dunaj"), who just one year prior had been put in charge of inventory management.

On February 24, 2016, the Company announced disappointing earnings for the fourth quarter of 2015 due to shipping delays of the RH Modern furniture. On this news, RH's share fell $13.43, or 25.86%, to close at $38.49 on February 25, 2016. In an effort to mitigate the market reaction, the Company continued to tout RH Modern as a success and assured investors that the RH Modern inventory problems were behind them.

On June 8, 2016, RH announced the Company's financial and operating results for the first quarter of 2016 and significantly reduced its earnings guidance for fiscal year 2016, citing "accommodations largely due to . . . production delays" in RH's new product line, RH Modern, which the Company had previously touted as "the most important and significant new home furnishings business to be launched in the last 15 or 20 years." On this news, RH's share price fell $7.66, or 21.24%, to close at $28.41 on June 9, 2016.

As a result of Defendants' wrongful acts and omissions, and the precipitous decline in the market value of the Company's common shares, Plaintiff and other Class members have suffered significant losses and damages.

## III.    ARGUMENT

### A.    THE RELATED ACTIONS SHOULD BE CONSOLIDATED FOR ALL PURPOSES

Consolidation of related cases is appropriate, where, as here, the actions involve common questions of law and fact, and therefore consolidation would avoid unnecessary cost, delay and overlap in adjudication:

> Where actions involving a common question of law or fact are pending before the court, it may order a joint hearing or trial of any or all of the matters at issue in the actions; it may order all the actions consolidated; and it may make such order concerning proceedings therein as may tend to avoid unnecessary costs or delay.

Fed. R. Civ. P. 42(a).  See also Manual for Complex Litigation (Third), § 20.123 (1995).

Consolidation is appropriate when the actions before the court involve common questions of law *or* fact. *See* Fed. R. Civ. P. 42 (a); *Malcolm v. Nat'l Gypsum Co.*, 995 F.2d 346, 350 (2d Cir. 1993) (citing *Johnson v. Celotex Corp.*, 899 F.2d 1281, 1284 (2d Cir. 1990)); *In re Tronox, Inc. Sec. Litig.*, 262 F.R.D. 338, 344 (S.D.N.Y. 2009) (consolidating securities class actions); *Blackmoss Invs., Inc. v. ACA Capital Holdings, Inc.*, 252 F.R.D. 188, 190 (S.D.N.Y. 2008) (same). Differences in causes of action, defendants, or the class period do not render consolidation inappropriate if the cases present sufficiently common questions of fact and law, and the differences do not outweigh the interest of judicial economy served by consolidation. *See In re GE Sec. Litig.*, No. 09 Civ. 1951 (DC), 2009 U.S. Dist. LEXIS 69133, at *4–8 (S.D.N.Y. July 29, 2009) (consolidating actions asserting different claims against different defendants over different class periods).

The Related Actions at issue here clearly involve common questions of law *and* fact. Each action was brought against the Company, as well as certain officers and directors of the Company, in connection with violations of the federal securities laws. Accordingly, the Related Actions allege substantially the same wrongdoing, namely that Defendants issued materially false and misleading statements and omissions that artificially inflated the price of RH's securities and subsequently damaged the Class when the Company's stock price crashed as the truth emerged. Consolidation of the Related Actions is therefore appropriate. *See Bassin v. Decode Genetics, Inc.*, 230 F.R.D. 313, 315 (S.D.N.Y. 2005) (consolidation of securities class actions is particularly appropriate in the context of securities class actions where the complaints are based on the same statements and the defendants will not be prejudiced); *In re GE*, 2009 U.S. Dist. LEXIS 69133), at *5 ("Consolidation promotes judicial convenience and avoids unnecessary costs to the parties.").

## B. THE HULAJ FAMILY SHOULD BE APPOINTED LEAD PLAINTIFF

The Hulaj Family should be appointed Lead Plaintiff because it has the largest financial interest in the Action and otherwise meets the requirements of Rule 23. Section 21D(a)(3)(B) of the PSLRA sets forth procedures for the selection of lead plaintiff in class actions brought under the Exchange Act. The PSLRA directs courts to consider any motion to serve as lead plaintiff filed by class members in response to a published notice of the class action by the later of (i) 90 days after the date of publication, or (ii) as

soon as practicable after the Court decides any pending motion to consolidate. *See* 15 U.S.C. § 78u-4(a)(3)(B)(i) &(ii).

Further, under 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I), the Court is directed to consider all motions by plaintiffs or purported class members to appoint lead plaintiff filed in response to any such notice. Under this section, the Court "shall" appoint "the presumptively most adequate plaintiff" to serve as lead plaintiff and shall presume that plaintiff is the person or group of persons, that:

> (aa) has either filed the complaint or made a motion in response to a notice . . .;
>
> (bb) in the determination of the Court, has the largest financial interest in the relief sought by the class; and
>
> (cc) otherwise satisfies the requirements of Rule 23 of the Federal Rules of Civil Procedure.

15 U.S.C. § 78u-4(a)(3)(B)(iii)(I).

As set forth below, the Hulaj Family satisfies all three of these criteria and thus is entitled to the presumption that it is the most adequate plaintiff of the Class and, therefore, should be appointed Lead Plaintiff for the Class.

### 1.     The Hulaj Family is Willing to Serve as Class Representative

On February 2, 2017, counsel for plaintiff in the first of the related actions to be filed caused a notice to be published over *PR Newswire* pursuant to Section 21D(a)(3)(A)(i) of the PSLRA, which announced that a securities class action had been filed against the defendants herein, and advised investors of RH securities that they had until April 3, 2017 to file a motion to be appointed as Lead Plaintiff. *See* Declaration of Jennifer Pafiti in Support of Motion of the Hulaj Family for Consolidation, Appointment as Lead Plaintiff, and Approval of Selection of Counsel ("Pafiti Decl."), Ex. A.

The Hulaj Family has filed the instant motion pursuant to the Notice, and its members have attached Certifications attesting that they are willing to serve as representatives for the Class, and provide testimony at deposition and trial, if necessary. *See* Pafiti Decl., Ex. B. Accordingly, the Hulaj Family satisfies the first requirement to serve as Lead Plaintiff of the Class.

### 2. The Hulaj Family Has the "Largest Financial Interest"

The PSLRA requires a court to adopt a rebuttable presumption that "the most adequate plaintiff . . . is the person or group of persons that . . . has the largest financial interest in the relief sought by the class." 15 U.S.C. § 78u-4(a)(3)(B)(iii).

As of the time of the filing of this motion, the Hulaj Family believes that it has the largest financial interest of any of the Lead Plaintiff movants based on the four factors articulated in the seminal case *Lax v. First Merch. Acceptance Corp.*, 1997 U.S. Dist. LEXIS 11866, at *7-*8 (N.D. Ill. Aug. 6, 1997) (financial interest may be determined by (1) the number of shares purchased during the class period; (2) the number of net shares purchased during the class period; (3) the total net funds expended during the class period; and (4) the approximate losses suffered).[1] The most critical among the Lax Factors is the approximate loss suffered. *See*, *e.g.*, *In re Vicuron Pharms., Inc. Sec. Litig.*, 225 F.R.D. 508, 511 (E.D. Pa. 2004); *Janovici v. DVI, Inc.*, No. 03-4795, 2003 U.S. Dist. LEXIS 22315, at *39 (E.D.Pa. Nov. 25, 2003); *In re Am. Bus. Fin. Servs., Inc. Sec. Litig.*, 2004 U.S. Dist. LEXIS 10200, at *2–3 (E.D. Pa. Jun. 3, 2004); *A.F.I.K. Holding SPRL v. Fass*, 216 F.R.D. 567, 572 (D.N.J. 2003).

During the Class Period, the Hulaj Family (1) purchased 4,500 shares of RH securities; (2) expended $407,095 on its purchases of RH securities; (3) retained all of its RH shares; and (4) as a result of the disclosures of the fraud, suffered a loss of $104,940 in connection with its Class Period purchases. *See* Pafiti Decl., Ex. C. Because the Hulaj Family possesses the largest financial interest in the outcome of this litigation, it may be presumed to be the "most adequate" plaintiff. 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I)(bb).

### 3. The Hulaj Family Otherwise Satisfies the Requirements of Rule 23 of the Federal Rules of Civil Procedure

Section 21D(a)(3)(B)(iii)(I)(cc) of the PSLRA further provides that, in addition to possessing the largest financial interest in the outcome of the litigation, Lead Plaintiff must "otherwise satisfy the requirements of Rule 23 of the Federal Rules of Civil Procedure." Rule 23(a) generally provides that a class action may proceed if the following four requirements are satisfied:

---

[1] *See also In re Olsten Corp. Sec. Litig.*, 3 F. Supp.2d 286, 296 (E.D.N.Y. 1998). *Accord In re Comverse Tech., Inc., Sec. Litig.*, 2007 U.S. Dist. LEXIS 14878, at *22-*25 (E.D.N.Y. Mar. 2, 2007) (collectively, the "Lax-Olsten" factors).

(1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and (4) the representative parties will fairly and adequately protect the interests of the class.

In making its determination that Lead Plaintiff satisfies the requirements of Rule 23, the Court need not raise its inquiry to the level required in ruling on a motion for class certification; instead a *prima facie* showing that the movant satisfies the requirements of Rule 23 is sufficient. *Greebel v. FTP Software*, 939 F. Supp. 57, 60 (D. Mass. 1996). Moreover, "typicality and adequacy of representation are the only provisions relevant to a determination of lead plaintiff under the PSLRA." *In re Oxford Health Plans, Inc. Sec. Litig.*, 182 F.R.D. 42, 49 (S.D.N.Y. 1998) (citing *Gluck v. Cellstar Corp.*, 976 F. Supp. 542, 546 (N.D. Tex. 1997) and *Fischler v. Amsouth Bancorporation*, 176 F.R.D. 583 (M.D. Fla. 1997)); *In re Olsten Corp. Sec. Litig.*, 3 F. Supp. 2d at 296.

The typicality requirement of Fed. R. Civ. P. 23(a)(3) is satisfied where the named representative's claims have the "same essential characteristics as the claims of the class at large." *Danis v. USN Communs., Inc.*, 189 F.R.D. 391, 395 (N.D. Ill. 1999). In other words, "the named plaintiffs' claims [must be] typical, in common-sense terms, of the class, thus suggesting that the incentives of the plaintiffs are aligned with those of the class." *Beck v. Maximus, Inc.*, 457 F.3d 291, 295-96 (3d Cir. 2006) (quoting *Baby Neal v. Casey*, 43 F.3d 48, 55 (3d Cir. 1994) (noting that "factual differences will not render a claim atypical if the claim arises from the same event or practice or course of conduct that gives rise to the claims of the class members, and if it is based on the same legal theory.")).

The claims of the Hulaj Family are typical of those of the Class. The Hulaj Family alleges, as do all class members, that defendants violated the Exchange Act by making what they knew or should have known were false or misleading statements of material facts concerning RH, or omitted to state material facts necessary to make the statements they did make not misleading. The Hulaj Family, as did all members of the Class, purchased RH securities during the Class Period at prices artificially inflated by defendants' misrepresentations or omissions and was damaged upon the disclosure of those misrepresentations and/or omissions. These shared claims, which are based on the same legal theory and arise from the same events and course of conduct as the Class claims, satisfy the typicality requirement of Rule 23(a)(3).

The adequacy of representation requirement of Rule 23(a)(4) is satisfied where it is established that a representative party "will fairly and adequately protect the interests of the class." The class representative must also have "sufficient interest in the outcome of the case to ensure vigorous advocacy." *Riordan v. Smith Barney*, 113 F.R.D. 60, 64 (N.D. Ill. 1986); *Beck*, 457 F.3d at 296 (emphasizing that the adequacy inquiry "'serves to uncover conflicts of interest between named parties and the class they seek to represent.'") (quoting *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 625 (1997)).

The Hulaj Family is an adequate representative for the Class. There is no antagonism between the interests of the Hulaj Family and those of the Class, and its losses demonstrate that it has a sufficient interest in the outcome of this litigation. Moreover, the Hulaj Family has retained counsel highly experienced in vigorously and efficiently prosecuting securities class actions such as this action, and submits its choice to the Court for approval pursuant to 15 U.S.C. § 78u-4(a)(3)(B)(v).

### 4. The Hulaj Family Will Fairly and Adequately Represent the Interests of the Class and is Not Subject to Unique Defenses

The presumption in favor of appointing The Hulaj Family as Lead Plaintiff may be rebutted only upon proof "by a purported member of the plaintiffs' class" that the presumptively most adequate plaintiff:

(aa)    will not fairly and adequately protect the interest of the class; or

(bb)    is subject to unique defenses that render such plaintiff incapable of adequately representing the class.

15 U.S.C. § 78u-4(a)(3)(b)(iii)(I).

The ability and desire of the Hulaj Family to fairly and adequately represent the Class has been discussed above. The Hulaj Family is not aware of any unique defenses defendants could raise that would render it inadequate to represent the Class. Accordingly, the Hulaj Family should be appointed Lead Plaintiff for the Class.

### C.    LEAD PLAINTIFF'S SELECTION OF COUNSEL SHOULD BE APPROVED

The PSLRA vests authority in the Lead Plaintiff to select and retain lead counsel, subject to the approval of the Court. *See* 15 U.S.C. § 78u-4(a)(3)(B)(v); *Osher v. Guess?, Inc.*, 2001 U.S. Dist. LEXIS

6057, at *15 (C.D. Cal. Apr. 26, 2001). The Court should interfere with Lead Plaintiff's selection only when necessary "to protect the interests of the class." 15 U.S.C. § 78u-4(a)(3)(B)(iii)(II)(aa).

Here, the Hulaj Family has selected the Pomerantz law firm as Lead Counsel for the Class. Pomerantz is highly experienced in the area of securities litigation and class actions, and has successfully prosecuted numerous securities litigations and securities fraud class actions on behalf of investors, as detailed in the firm's resume. *See* Pafiti Decl., Ex. D. As a result of Pomerantz's extensive experience in litigation involving issues similar to those raised in the Related Actions, the Hulaj Family's counsel have the skill and knowledge which will enable them to prosecute a consolidated action effectively and expeditiously. Thus, the Court may be assured that by approving the selection of Lead Counsel by the Hulaj Family, the members of the class will receive the best legal representation available.

## IV.    CONCLUSION

For the foregoing reasons, the Hulaj Family respectfully requests that the Court issue an Order: (1) consolidating the Related Actions; (2) appointing the Hulaj Family as Lead Plaintiff for the Class; (3) approving Pomerantz as Lead Counsel for the Class; and (4) granting such other relief as the Court may deem to be just and proper.

Dated: April 3, 2017

**POMERANTZ  LLP**

*/s/ Jennifer Pafiti*
Jennifer Pafiti (SBN 282790)
468 North Camden Drive
Beverly Hills, CA 90210
Telephone: (818) 532-6499
E-mail: jpafiti@pomlaw.com

**POMERANTZ LLP**
Jeremy A. Lieberman
J. Alexander Hood II
Hui M. Chang
600 Third Avenue, 20th Floor
New York, New York 10016
Telephone: 212-661-1100
Facsimile:  212-661-8665

NOTICE OF MOTION AND MOTION; MEMORANDUM OF POINTS AND AUTHORITIES

**POMERANTZ LLP**
Patrick V. Dahlstrom
10 South LaSalle Street, Suite 3505
Chicago, IL 60603
Telephone: 312-377-1181
Facsimile:  312-377-1184

*Counsel for Movant and*
*Proposed Lead Counsel for the Class*

**BRONSTEIN, GEWIRTZ**
**& GROSSMAN, LLC**
Peretz Bronstein
60 East 42nd Street, Suite 4600
New York, NY 10165
Telephone: (212) 697-6484
Facsimile (212) 697-7296
Email:  peretz@bgandg.com

*Additional Counsel for Movants*

CERTIFICATE OF SERVICE

I hereby certify that on April 3, 2017, a copy of the foregoing was filed electronically and served by mail on anyone unable to accept electronic filing.  Notice of this filing will be sent by e-mail to all parties by operation of the Court's electronic filing system or by mail to anyone unable to accept electronic filing as indicated on the Notice of Electronic Filing. Parties may access this filing through the Court's CM/ECF System.

/s/      *Jennifer Pafiti*
Jennifer Pafiti

NOTICE OF MOTION AND MOTION; MEMORANDUM OF POINTS AND AUTHORITIES

12

Jennifer Pafiti (SBN # 282790)
**POMERANTZ LLP**
468 North Camden Drive
Beverly Hills, CA 90210
Telephone:     (818) 532-6499
E-mail:    jpafiti@pomlaw.com

## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CITY OF MIAMI GENERAL EMPLOYEES' & SANITATION EMPLOYEES' RETIREMENT TRUST, Individually and on Behalf of All Others Similarly Situated,<br><br>                                        Plaintiff,<br><br>                    v.<br><br>RH, INC., GARY FRIEDMAN and KAREN BOONE,<br><br>                                        Defendants. | No.  3:17-cv-00554<br><br>**[PROPOSED] ORDER CONSOLIDATING RELATED ACTIONS, APPOINTING LEAD PLAINTIFF, AND APPROVING SELECTION OF COUNSEL**<br><br>DATE:  May 10, 2017<br>TIME:  2:00 pm<br>JUDGE:  William H. Orrick<br>CTRM:  2 – 17th Floor |
| PETER J. ERRICHIELLO, JR., Individually and on Behalf of All Others Similarly Situated,<br><br>                                        Plaintiff,<br><br>                    v.<br><br>RH, GARY FRIEDMAN and KAREN BOONE,<br><br>                                        Defendants. | No.  3:17-cv-01425 |

[PROPOSED] ORDER

**WHEREAS**, the Court has considered the competing motions for Consolidation, Appointment of Lead Plaintiff and Approval of Lead Counsel,

**IT IS HEREBY ORDERED THAT**:

**I.      CONSOLIDATION OF RELATED ACTIONS**

1.      Pursuant to Federal Rule of Civil Procedure 42, the above-captioned actions are hereby consolidated for all purposes into one action.

2.      These actions shall be referred to herein as the "Consolidated Action."  This Order shall apply to the Consolidated Action and to each case that is subsequently filed in this Court that relates to the same subject matter as in the Consolidated Action.

**II.     CAPTIONING OF THIS ACTION**

3.  Every pleading in this Consolidated Action shall bear the following Caption:

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA

| IN RE RH SECURITIES LITIGATION | No. 3:17-cv-00554 |
| | CLASS ACTION |
| | [TITLE OF DOCUMENT] |

4.      When the document being filed pertains to all actions, the phrase "All Actions" shall appear immediately after the phrase "This Document Relates To:".  When the document applies to some, but not all, of the actions, the document shall list, immediately after the phrase "This Document Relates To:", the docket number for each individual action to which the document applies, along with the name of the first-listed plaintiff in said action.

5.      This Court requests assistance of counsel in calling to the attention of the Clerk of this Court the filing or transfer of any case which might not properly be consolidated as part of this Consolidated Action.

[PROPOSED] ORDER

### III.    MASTER DOCKET AND MASTER FILE

6.    A Master Docket and Master File shall be established for this Action.  The Master File shall be No. 3:17-cv-00554**.**  All orders, pleadings, motions and other documents shall, when filed and docketed in the Master File, be deemed filed and docketed in each individual case to the extent applicable. When an order, pleading, motion or document is filed with a caption indicating that it is applicable to fewer than all individual actions in the Consolidated Action, the clerk shall file such pleadings in the Master File and note such filing in the Master Docket and in the docket of each action referenced.

### IV.    APPOINTMENT OF LEAD PLAINTIFF AND LEAD COUNSEL

7.    Having reviewed all pending Motions and accompanying Memoranda of Law, the Court hereby appoints Steven Hulaj, Henrietta Hulaj, Blair Hulaj, and Kristen Hulaj (collectively, the "Hulaj Family") as Lead Plaintiff in the Consolidated Action.  The Hulaj Family satisfies the requirements for Lead Plaintiff pursuant to Section 21D(a)(3)(B)(iii) of the Private Securities Litigation Reform Act of 1995 ("PSLRA").

8.    Lead Plaintiff, pursuant to Section 21D(a)(3)(B)(v) of the PSLRA, has selected and retained Pomerantz LLP as Lead Counsel.

9.    Lead Counsel shall have the following responsibilities and duties, to be carried out either personally or through counsel whom Lead Counsel shall designate:

(a)    to coordinate the briefing and argument of motions;

(b)    to coordinate the conduct of discovery proceedings;

(c)    to coordinate the examination of witnesses in depositions;

(d)    to coordinate the selection of counsel to act as a spokesperson at pretrial conferences;

(e)    to call meetings of the plaintiffs' counsel as they deem necessary and appropriate from time to time;

(f)    to coordinate all settlement negotiations with counsel for defendants;

    (g)     to coordinate and direct the pretrial discovery proceedings and the preparation for trial and the trial of this matter and to delegate work responsibilities to selected counsel as may be required; and

    (h)     to supervise any other matters concerning the prosecution, resolution or settlement of the Action.

10.     No motion, request for discovery, or other pretrial proceedings shall be initiated or filed by any plaintiffs without the approval of Lead Counsel, so as to prevent duplicative pleadings or discovery by plaintiffs. No settlement negotiations shall be conducted without the approval of Lead Counsel.

11.     Counsel in any related action that is consolidated with this Action shall be bound by this organization of plaintiffs' counsel.

12.     Lead Counsel shall have the responsibility of receiving and disseminating Court orders and notices.

13.     Lead Counsel shall be the contact between plaintiffs' counsel, and shall direct and coordinate the activities of plaintiffs' counsel.

14.     Defendants shall effect service of papers on plaintiffs by serving a copy of same on Lead Counsel by overnight mail service, electronic or hand delivery. Plaintiffs shall effect service of papers on defendants by serving a copy of same on defendants' counsel by overnight mail service, electronic or hand delivery.

15.     During the pendency of this litigation, or until further order of this Court, the parties shall take reasonable steps to preserve all documents within their possession, custody, or control, including computer-generated and stored information, and materials such as computerized data and electronic mail, containing information which is relevant or which may lead to the discovery of information relevant to the subject matter of the pending litigation.

**SO ORDERED.**

Dated: _____

                               _____
HONORABLE WILLIAM H. ORRICK
UNITED STATES DISTRICT JUDGE
NORTHERN DISTRICT OF CALIFORNIA

[PROPOSED] ORDER