UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

——————————————————————— x

LI HONG CHENG, Individually and on Behalf :    Civil Action No. 1:19-cv-08204-VSB
of All Others Similarly Situated,    :

        :    CLASS ACTION

               Plaintiff,    :

        :    NATIONAL ELEVATOR INDUSTRY

        :    PENSION FUND'S REPLY

      vs.    :    MEMORANDUM IN FURTHER SUPPORT

        :    OF ITS MOTION FOR APPOINTMENT AS

CANADA GOOSE HOLDINGS INC., DANI   :    LEAD PLAINTIFF
REISS, JONATHAN SINCLAIR and JOHN   :
BLACK,    :

        :

               Defendants.    :

——————————————————————— x

4839-5707-1021.v1

## I.    INTRODUCTION

Of the two remaining movants, only National Elevator Industry Pension Fund (the "Pension Fund") satisfies the requirements of the Private Securities Litigation Reform Act of 1995 ("PSLRA").[1]  Mr. Hulaj agrees that the Pension Fund *suffered more than three times* the losses ($1.165 million) that he suffered ($370,000), which, as this Court has held no less than three times, is the most significant factor in determining financial interest under the PSLRA.  *See McKenna v. Dick's Sporting Goods, Inc.*, 2018 WL 1083971, at *4 (S.D.N.Y. Feb. 27, 2018) (Broderick, J.) ("'Most courts agree that the largest loss is the critical ingredient in determining the largest financial interest *and outweighs net shares purchased* and net expenditures.'"); *Micholle v. Ophthotech Corp.*, 2018 WL 1307285, at *5 (S.D.N.Y. Mar. 13, 2018) (Broderick, J.) ("Of the four factors, financial loss is considered the most significant factor."); *Plaut v. Goldman Sachs Grp., Inc.*, 2019 WL 4512774, at *2 (S.D.N.Y. Sept. 19, 2019) (Broderick, J.) ("The magnitude of the loss is the most significant factor.").[2]

Other than arguing that the Pension Fund purchased fewer shares of Canada Goose stock during the Class Period (a largely irrelevant proxy of financial interest, particularly in cases like this one with more than one corrective disclosure alleged), Mr. Hulaj has not asserted any reason why the Pension Fund should not be appointed as lead plaintiff pursuant to the PSLRA.  In contrast, Mr. Hulaj lacks the largest financial interest in the relief sought by the class and cannot make the *prima facie* showing of typicality or adequacy under Rule 23 because he is an unknown individual who

---

[1]    Movant Ricardo Cardoso filed a notice of non-opposition on November 18, 2019.  *See* ECF No. 19.

[2]    Unless otherwise noted, all emphasis is added and citations are omitted.

- 1 -

4839-5707-1021.v1

submitted a false PSLRA declaration under penalty of perjury, and ***has still not corrected it***.  The

Pension Fund's motion for appointment as lead plaintiff should be granted.

## II.    ARGUMENT

The Pension Fund is a qualified institutional investor that filed a timely motion, suffered by

far the largest loss out of any movant, is typical and adequate, selected qualified counsel, and is not

subject to any unique defenses.  *See* 15 U.S.C. §78u-4(a)(3)(B).  None of the competing movants

have raised any issues regarding the Pension Fund's ability to satisfy all of the PSLRA's

requirements for appointment as lead plaintiff, confirming that the Pension Fund is the "most

adequate plaintiff" to lead this litigation.

Mr. Hulaj acknowledges that the Pension Fund suffered three times the losses that he

suffered, and has previously acknowledged that "[t]he most critical among the Lax Factors is the

approximate loss suffered."[3]  ECF 22-1 at 7.  Mr. Hulaj also agrees that the Pension Fund expended

over half a million dollars more in net funds ($4,930,000) than Mr. Hulaj ($4,350,000) did (*see* ECF

No. 20 at 4), a factor held by Mr. Hulaj's sole in-District authority to be the second-most important

proxy of a movant's financial interest (after the approximate loss suffered).[4]  Despite these facts, Mr.

---

[3]    Importantly, 100% of the Pension Fund's claimed losses are "recoverable losses." *See Micholle*, 2018 WL 1307285, at *5 ("Courts consider only recoverable losses when calculating financial loss for the purpose of selecting lead plaintiff. . . .  In securities fraud cases, courts must consider only those losses that a plaintiff incurred ***after*** a misrepresentation is revealed to the public.") (emphasis in original).

[4]    *See Westchester Putnam Ctys. Heavy & Highway Laborers Local 60 Benefit Funds v. Brixmor Prop. Grp., Inc*., 2016 U.S. Dist. LEXIS 164682, at *4 (S.D.N.Y. Nov. 29, 2016) ("The trend among New York courts is to view the factors in ascending order of importance, such that the number of shares purchased is the least important and the losses incurred are the most important."); *see also Richman v. Goldman Sachs Grp., Inc.*, 274 F.R.D. 473, 475-76 (S.D.N.Y. 2011) ("The four factors are: (1) the number of shares purchased; (2) the number of net shares purchased; (3) total net funds expended by the plaintiffs during the class period; and (4) the approximate losses suffered by the plaintiffs. . . . [A] trend seems to be emerging that the *Lax* factors are properly ordered, so that the

- 2 -

Hulaj urges the Court to disregard the Pension Fund's triply-larger losses and greater net expenditures and look to Mr. Hulaj's narrow advantage in shares purchased (total and net) to determine which movant possesses the "largest financial interest." Aside from his obvious reversal in an attempt to now claim the largest financial interest, Mr. Hulaj's reasoning is flawed for two additional reasons.

First, the ***overwhelming*** majority of cases in this District and across the country hold that in determining lead plaintiff movants' financial interests, loss is the determinative factor that outweighs net funds expended and net shares purchased. *See McKenna*, 2018 WL 1083971, at \*4; *Micholle*, 2018 WL 1307285, at \*5; *Plaut*, 2019 WL 4512774, at \*2.[5] When selecting the movant with the

number of shares purchased (Factor 1) is the least important and the loss suffered (Factor 4) is the most important.").

[5] *See also Rosi v. Alcaris Therapeutics, Inc*., 2019 WL 5778445, at \*3 (S.D.N.Y. Nov. 6, 2019) ("The fourth factor, the largest loss, is considered by most courts to be the 'critical ingredient in determining the largest financial interest and outweighs net shares purchased and net expenditures.'") (quoting *Richman*, 274 F.R.D. at 478-79); *Rhode Island Laborers' Pension Fund v. FedEx Corp*., 2019 WL 5287997, at \*1 (S.D.N.Y. Oct. 18, 2019) (same); *Glavan v. Revolution Lighting Techs., Inc.*, 2019 WL 3406582, at \*3 (S.D.N.Y. July 29, 2019) (same); *Atanasio v. Tenaris S.A.*, 331 F.R.D. 21, 28 (E.D.N.Y. 2019) (same); *In re Gentiva Sec. Litig*., 281 F.R.D. 108, 120 (E.D.N.Y. 2012) (same) *Baughman v. Pall Corp.*, 250 F.R.D. 121, 125 (E.D.N.Y. 2008) (same); *Gutman v. Sillerman*, 2015 WL 13791788, at \*4 (S.D.N.Y. Dec. 8, 2015) (same); *Kniffin v. Micron Tech., Inc.*, 379 F. Supp. 3d 259, 263 (S.D.N.Y. 2019) ("The fourth factor – approximate losses – is the most important."); *Workman v. Namaste Techs., Inc*., 2019 WL 280948, at \*2 (S.D.N.Y. Jan. 22, 2019) (same); *Nakamura v. BRF S.A*., 2018 WL 3217412, at \*2 (S.D.N.Y. July 2, 2018) (same); *Shanawaz v. Intellipharmaceutics Int'l Inc*., 2017 WL 5633168, at \*2 (S.D.N.Y. Nov. 21, 2017) ("It is well settled that financial loss, the last factor, is the most important element of the test.'"); *Jakobsen v. Aphria, Inc*., 2019 WL 1522598, at \*4 (S.D.N.Y. Mar. 27, 2019) ("Total financial loss 'is the most important element' in determining which plaintiff has the 'largest financial interest' pursuant to the PLSRA. . . . Accordingly, Cunix has the greatest financial interest in the litigation because he has the greatest financial loss resulting from Aphria's alleged securities fraud."); *In re Cavanaugh*, 306 F.3d 726, 732 (9th Cir. 2002) ("[s]o long as the plaintiff with the largest losses satisfies the typicality and adequacy requirements, he is entitled to lead plaintiff status"); *In re Cendant Corp. Litig*., 264 F.3d 201, 264 (3d Cir. 2001) ("conducting the initial inquiry as to whether the movant with the largest losses satisfies the typicality and adequacy requirements"); *In re Bally Total Fitness Sec. Litig*., 2005 WL 627960, at \*4 (N.D. Ill. Mar. 15, 2005) ("***We believe that the best yardstick by which to judge 'largest financial interest' is the amount of loss, period. The inquiry***

4839-5707-1021.v1

largest financial interest, courts find that even marginally greater losses outweigh meaningful advantages in any other (or all three) *Lax* factors.[6] The Pension Fund is not aware of (and Mr. Hulaj does not cite) a single case since the PSLRA was passed nearly a quarter-century ago where a movant with three times greater losses and greater net funds expended was ***not*** found to possess the largest financial interest.

Despite the abundance of case law finding loss determinative of financial interest, and his own acknowledgement that "[t]he most critical among the Lax Factors is the approximate loss

---

*need not and should not be complicated by also considering the number of shares or the net expenditures involved because those statistics do not advance the ball*.").

[6]     *See, e,g.*, *Glavan*, 2019 WL 3406582, at *3 (movant with 301,286 net shares purchased and claimed losses of $830,428.82 held to have smaller financial interest than movant with 88,060 net shares purchased and claimed losses of $1,245,936); *Atanasio*, 331 F.R.D. at 27 ("Under the *Olsten* criteria, Sanders has the largest financial interest.  Although City of Warren purchased a greater number of total and net shares during the class period and expended a greater amount of net funds, Sanders has a greater loss by approximately $ 27,000.  The approximate loss is the most important factor."); *Foley v. Transocean Ltd.*, 272 F.R.D. 126, 130 (S.D.N.Y. 2011) ("While it is true that Johnson expended greater net funds and purchased more net shares, these numbers do not outweigh a difference of more than $500,000 in losses."); *Varghese v. China Shenghuo Pharm. Holdings, Inc.*, 589 F. Supp. 2d 388, 396 (S.D.N.Y. 2008) ("While the first two factors favor Maa and the third factor favors Bennett, the fourth factor in this case – the most important factor – strongly favors Bennett.  Because Bennett has suffered greater approximate losses, he has the largest financial interest in the relief sought by the Class as determined by the Lax/Olsten test."); *Richman*, 274 F.R.D. at 478-79 ("The Court rejects the Institutional Investors Group's argument that the loss factor can be ignored and that it should be selected based on their larger net shares purchased and net expenditures.  Certainly, these factors have to be considered, but they are not dispositive in themselves.  ***Most courts agree that the largest loss is the critical ingredient in determining the largest financial interest and outweighs net shares purchased and net expenditures*.**"); *Weiss v. Friedman, Billings, Ramsey Grp., Inc.*, 2006 WL 197036, at *3 (S.D.N.Y. Jan. 25, 2006) (finding that the movant with the greater approximate losses had a larger financial interest in the litigation than a movant who claimed that the three other *Lax* factors favored it); *St. Clair Cty. Emps.' Ret. Sys. v. Acadia Healthcare Co., Inc.*, 2019 WL 494129, at *3 (M.D. Tenn. Jan. 9, 2019) (appointing movant with the largest loss, despite a competing movant's larger shares purchased (both total and net) and greater net expenditure); *Horowitz v. SunEdison, Inc.*, 2016 WL 1161600, at *4 n.5 (E.D. Mo. Mar. 24, 2016) ("Although the Zecher Family Group argues that it has the largest financial interest when measured under the other *Lax* factors, it does not dispute that MERS has the greatest approximate loss, which is the primary *Lax* factor in determining which potential lead plaintiff has the largest financial interest in the outcome of this case.").

suffered," (ECF No. 21-1 at 7), Mr. Hulaj cites to seven cases (only one of which is in-District) to attempt to convince the Court to find that net shares purchased is more determinative of the "largest financial interest" than a larger loss and greater net expenditures. *See* ECF No. 20 at 2, 5-6. *Westchester Putnam* provides no support to Mr. Hulaj's argument because Judge Netburn held that losses and net funds expended are the most and second-most important *Lax* factors, respectively, for assessing a movant's financial interest. *See supra* n.3; s*ee also In re Comverse Tech., Inc. Sec. Litig.*, 2007 WL 680779, at *3 (E.D.N.Y. Mar. 2, 2007) (selecting movant with the largest losses as having the largest financial interest, finding that "[m]ost courts consider the fourth factor, the approximate loss a plaintiff suffered during the class period, to be most influential in identifying the plaintiff with the largest financial interest"). In *Westchester Putnam*, the court found that a $20,884 (16%) difference in losses among the movants should be construed as "roughly equal," and therefore looked to the other three factors which "overwhelmingly favor[ed]" the movant with the smaller losses. 2016 U.S. Dist. LEXIS 164682, at *4-*5. Here, not only are the Pension Fund's losses over 215% greater (or $795,000 in absolute terms) and are therefore not "roughly equal" to Mr. Hulaj's, but the Pension Fund also expended more net funds than Mr. Hulaj did, which simply was not the case in *Westchester Putnam*.

As illustrated above with two of the seven cases cited by Mr. Hulaj, it is simply not true that "[c]ourts routinely recognize that the number of shares retained at the end of the Class Period (*i.e.*, net shares purchased during the Class Period) is the most significant factor to be considered." ECF No. 20 at 4. In another case on which Mr. Hulaj relies, *Pio v. Gen. Motors Co.*, 2014 WL 5421230, at *5 (E.D. Mich. Oct. 24, 2014), the movants employed conflicting methodologies that evolved from brief to brief to calculate their losses, which prompted the court to look to the other *Lax* factors. A court aptly distinguished *Pio* recently on the same grounds that *Pio* should be overlooked in this

- 5 -

case:  "More importantly, the net-shares-purchased analysis in *Pio* served as a proxy for estimating total loss. . . . ***A proxy is not necessary where, as here, the parties agree on how loss is calculated under the fourth factor***."  *St. Clair Cty.*, 2019 WL 494129, at *4.  The rest of the authorities cited by Mr. Hulaj are distinguishable because, as he himself admits, this case involves multiple partial disclosures.  *See* ECF No. 10 at 3-5.  The cases that employed the "retained shares methodology" – none of which are in this Circuit – assumed that the "fraud premium" stayed constant throughout the class period because the complaint only ***alleged a single disclosure***.  *In re Critical Path, Inc. Sec. Litig.*, 156 F. Supp. 2d 1102, 1107-08 (N.D. Cal. 2001); *Ruland v. InfoSonics Corp.*, 2006 WL 3746716, at *5 (S.D. Cal. Oct. 23, 2006); *Eichenholtz v. Verifone Holdings, Inc.*, 2008 WL 3925289, at *2 (N.D. Cal. Aug. 22, 2008)*; In re Network Assocs., Inc. Sec. Litig.*, 76 F. Supp. 2d 1017, 1027 (N.D. Cal. 1999).  This is a critical distinction because these courts and others have acknowledged that using metrics other than losses "***gets into trouble . . . if the amount of the 'fraud premium' varied over the course of the class period***."  *Id.*[7]

Accordingly, because the Pension Fund indisputably suffered three times the recoverable losses that Mr. Hulaj did in a case alleging multiple corrective disclosures, the Court should decline Mr. Hulaj's request to do what no other court has done before by looking to net shares purchased as the outcome-determinative factor for financial interest under these circumstances.  The Pension Fund clearly possesses the largest financial interest in the relief sought by the class.

---

[7]    *See Gentiva*, 281 F.R.D. at 120 (recognizing that net shares purchased "'diminishes in importance upon the realization that, here, partial corrective disclosures were reaching investors on a periodic basis'") (quoting *Weiss*, 2006 WL 197036, at *4); *In re CMED Sec. Litig.*, 2012 WL 1118302, at *4 n.8 (S.D.N.Y. Apr. 2, 2012) (stating that the court "***is not aware of any case in this Circuit . . . that has calculated losses [under the net shares method] for purposes of appointing a lead plaintiff where the pleadings allege partial corrective disclosures***").

4839-5707-1021.v1

Second, Mr. Hulaj's reasoning is flawed because even assuming *arguendo* that he possessed the largest financial interest, he still fails to meet the typicality and adequacy requirements of Rule 23. *See* ECF No. 21 at 6- 13. Indeed, the sworn PSLRA Certification that Mr. Hulaj submitted under oath and subject to penalty of perjury is false. *Id*. Worse, he has still not corrected it. *See Plaut*, 2019 WL 4512774, at *5 ("certification errors in [the movant's] submissions 'militate against appointment and render [the movant] inadequate to serve as lead plaintiff under Rule 23's adequacy requirement'"); *Karp v. Diebold Nixdorf, Inc.*, 2019 WL 5587148, at *6 (S.D.N.Y. Oct. 30, 2019) (denying motion by movant with larger financial interest and concluding that "Court is disquieted by the errors contained in [movant's] original submissions" which "took the [movant] nearly two weeks [to correct]" because the certification "struck at the core of the PSLRA's lead plaintiff inquiry"). In addition, there is no other information available to the Court by which to assess Mr. Hulaj's adequacy. *See* ECF No. 21 at 11-12. Accordingly, Mr. Hulaj's lead plaintiff application can be rejected on the independent grounds that he is unable to satisfy the Rule 23 requirements.

## III.    CONCLUSION

The Pension Fund possesses the largest financial interest in the relief sought by the class according to the metrics recognized by this Court and virtually every other court in the country (and Mr. Hulaj himself) as being the most important. In addition, the Pension Fund meets the requirements of adequacy and typicality, and the presumption which lies in favor of the Pension Fund has not been rebutted. Mr. Hulaj not only fails to possess the largest financial interest in the

- 7 -

relief sought by the class, but his ability to serve as a fiduciary for the putative class is belied by his status as an unknown individual who submitted a false Certification in this case which he has still not corrected.  Accordingly, the Pension Fund's motion should be granted and the motions of Mr. Hulaj and Mr. Cardoso should be denied.

DATED:  November 25, 2019

Respectfully submitted,

ROBBINS GELLER RUDMAN
  & DOWD LLP
SAMUEL H. RUDMAN
DAVID A. ROSENFELD
ERIN W. BOARDMAN
VINCENT M. SERRA

*s/ David A. Rosenfeld*
DAVID A. ROSENFELD

58 South Service Road, Suite 200
Melville, NY  11747
Telephone:  631/367-7100
631/367-1173 (fax)
srudman@rgrdlaw.com
drosenfeld@rgrdlaw.com
eboardman@rgrdlaw.com
vserra@rgrdlaw.com

ROBBINS GELLER RUDMAN
  & DOWD LLP
SPENCER A. BURKHOLZ
DANIELLE S. MYERS
MATTHEW I. ALPERT
MICHAEL ALBERT
ALEXI H. PFEFFER-GILLETT
655 West Broadway, Suite 1900
San Diego, CA  92101
Telephone:  619/231-1058
619/231-7423 (fax)
spenceb@rgrdlaw.com
dmyers@rgrdlaw.com
malpert@rgrdlaw.com
malbert@rgrdlaw.com
agillett@rgrdlaw.com

- 8 -

4839-5707-1021.v1

[Proposed] Lead Counsel for [Proposed] Lead Plaintiff

O'DONOGHUE & O'DONOGHUE LLP
LOUIS P. MALONE III
JOHN M. McINTIRE
5301 Wisconsin Avenue, N.W., Suite 800
Washington, DC  20015
Telephone:  202/362-0041
202/362-2640 (fax)
lmalone@odonoghuelaw.com
jmcintire@odonoghuelaw.com

Additional Counsel for [Proposed] Lead Plaintiff

- 9 -

## CERTIFICATE OF SERVICE

I hereby certify under penalty of perjury that on November 25, 2019, I authorized the

electronic filing of the foregoing with the Clerk of the Court using the CM/ECF system which will

send notification of such filing to the e-mail addresses on the attached Electronic Mail Notice List,

and I hereby certify that I caused the mailing of the foregoing via the United States Postal Service to

the non-CM/ECF participants indicated on the attached Manual Notice List.

> *s/ David A. Rosenfeld*
> DAVID A. ROSENFELD
>
> ROBBINS GELLER RUDMAN
>     & DOWD LLP
> 58 South Service Road, Suite 200
> Melville, NY  11747
> Telephone:  631/367-7100
> 631/367-1173 (fax)
>
> E-mail:  drosenfeld@rgrdlaw.com

4839-5707-1021.v1

# Mailing Information for a Case 1:19-cv-08204-VSB Cheng v. Canada Goose Holdings Inc. et al

## Electronic Mail Notice List

The following are those who are currently on the list to receive e-mail notices for this case.

- **William Scott Holleman**
  holleman@bespc.com,ecf@bespc.com

- **Joseph Alexander Hood , II**
  ahood@pomlaw.com,abarbosa@pomlaw.com

- **Jeremy Alan Lieberman**
  jalieberman@pomlaw.com,ahood@pomlaw.com,disaacson@pomlaw.com,abarbosa@pomlaw.com

- **David Avi Rosenfeld**
  drosenfeld@rgrdlaw.com,e_file_ny@rgrdlaw.com,e_file_sd@rgrdlaw.com,drosenfeld@ecf.courtdrive.com

## Manual Notice List

The following is the list of attorneys who are **not** on the list to receive e-mail notices for this case (who therefore require manual noticing). You may wish to use your mouse to select and copy this list into your word processing program in order to create notices or labels for these recipients.

- (No manual recipients)