```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------X
                                                            :
LI HONG CHENG, individually and on                          :
behalf of all others similarly situated,                    :
                                                            :
                                    Plaintiff,              :    19-CV-8204 (VSB)
                                                            :
                  - against -                               :
                                                            :    **OPINION & ORDER**
                                                            :
CANADA GOOSE HOLDINGS INC., DANI                            :
REISS, JONATHAN SINCLAIR, and JOHN                          :
BLACK,                                                      :
                                                            :
                                    Defendants.             :
                                                            :
------------------------------------------------------------X
```

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 12/5/2019

Appearances:

Jeremy A. Lieberman
Joseph Alexander Hood, II
Pomerantz LLP
New York, New York
*Counsel for Plaintiff*
*Counsel for Movant Steven Hulaj*

William Scott Holleman
Johnson Fistel, LLP
New York, New York
*Counsel for Movant Ricardo Cardoso*

David Avi Rosenfeld
Robbins Geller Rudman & Dowd LLP (LI)
Melville, New York
*Counsel for Movant National Elevator Industry Pension Fund*

Martin J. Crisp
Ropes & Gray LLP
New York, New York
*Counsel for Defendants*

VERNON S. BRODERICK, United States District Judge:

  Plaintiff Li Hong Cheng ("Plaintiff") brings this securities fraud class action lawsuit

against Canada Goose Holdings Inc. and certain of its current and former senior officials. The action alleges that Canada Goose Holdings Inc. and its officers and directors violated Sections 10(b) and 20(a) of the Securities Exchange Act ("Exchange Act"), 15 U.S.C. §§ 78j(b), 78t(a), as well as U.S. Securities and Exchange Commission ("SEC") Rule 10b-5 promulgated pursuant to the Exchange Act. (Compl. ¶ 1).[1]

Before me are motions from three movants seeking: (1) appointment of lead plaintiff; and (2) approval of lead counsel. Because movant National Elevator Industry Pension Fund has the largest financial interest in the litigation, currently appears to fulfill the typicality and adequacy requirements of Federal Rule of Civil Procedure 23, and is represented by counsel with substantial experience in securities class action litigation, National Elevator Industry Pension Fund's motion to be appointed lead plaintiff and for approval of its selection of lead counsel is GRANTED. The remaining movants' motions for appointment as lead plaintiff and for approval of lead counsel are DENIED.

## I. **Factual Background and Procedural History**[2]

### A. *Complaint and Notice*

On September 3, 2019, Plaintiff filed a class action complaint against Canada Goose Holdings Inc. ("Canada Goose"), as well as its Chief Executive Officer and President Dani Reiss, Chief Financial Officer Jonathan Sinclair, and former Chief Financial Officer John Black (collectively, "Individual Defendants"), alleging that Canada Goose and the Individual Defendants (collectively, "Defendants") violated Section 10(b) of the Exchange Act, 15 U.S.C. § 78j(b), and SEC Rule 10b-5 promulgated thereunder, and 20(a) of the Exchange Act, 15 U.S.C. §

---

[1] "Compl." refers to the Class Action Complaint, filed September 3, 2019. (Doc. 1.)

[2] The facts in Section I are recited for background only, and are not intended to and should not be viewed as findings of fact.

2

78t(a).  Plaintiff alleges that, between March 16, 2017 and August 1, 2019 (the "Class Period"), Defendants made materially false and misleading statements regarding Canada Goose's "business, operational, and compliance policies."  (Compl. ¶ 4.)  Specifically, the Complaint states that "Defendants made false and/or misleading statements and/or failed to disclose that: (i) Canada Goose sourced the down and fur used in its clothing products in a way that treated animals in an unethical and inhumane manner; (ii) Canada Goose was thus non-compliant with relevant Fair Trade Commission ("FTC") regulations pertaining to false advertising with respect to its sourcing practices; (iii) accordingly, Canada Goose was the subject of an ongoing FTC investigation regarding false advertising; and (iv) as a result, the Company's public statements were materially false and misleading at all relevant times." (*Id.* ¶ 4.)  Plaintiff further alleges that a press release issued by non-profit organization People for the Ethical Treatment of Animals ("PETA") regarding Canada Goose's sourcing practices, an FTC closing letter regarding an FTC investigation into Canada Goose, and a *New York Post* article entitled "Canada Goose pulls claims about its 'ethical' treatment of animals," each separately caused the price of Canada Goose's stock to fall.  (*Id.* ¶¶ 6–9.)  These incidents, in turn, caused Plaintiff and others who purchased or otherwise acquired Canada Goose securities during the Class Period (the "Class") significant losses and damages.  (*Id.* ¶ 13.)

On September 3, 2019, the same day Plaintiff filed the Complaint, Pomerantz LLP published a notice of the complaint on *Globe Newswire* in accordance with the Private Securities Litigation Reform Act of 1995 ("PSLRA"), 15 U.S.C. § 77z-1(a)(3)(A)(i).  (*See* Lieberman Decl.

Ex. C; Holleman Decl. Ex. C; Rosenfeld Decl. Ex. A.)[3] The notice was addressed to "all persons or entities who purchased or otherwise acquired shares of publicly traded Canada Goose securities between March 16, 2017 and August 1, 2019," and detailed the claims in the complaint. (Lieberman Decl. Ex. C; Holleman Decl. Ex. C; Rosenfeld Decl. Ex. A.) The notice informed the Class members that they had until November 4, 2019 to file to seek appointment as lead plaintiff. (*See* Lieberman Decl. Ex. C; Holleman Decl. Ex. C; Rosenfeld Decl. Ex. A.)

### B. *The Motions*

On November 4, 2019, three class members filed motions seeking to be appointed lead plaintiff and for approval of lead counsel. (Docs. 8, 12, 14.) Specifically, Steven Hulaj ("Hulaj") moved to appoint himself as lead plaintiff and for approval of Pomerantz LLP as lead counsel. (Doc. 10.) National Elevator Industry Pension Fund ("National Elevator") moved to appoint itself as lead plaintiff and for approval of Robbins Geller Rudman & Dowd LLP ("Robbins Geller") to serve as lead counsel. (Doc. 16.) Ricardo Cardoso ("Cardoso") moved to appoint himself as lead plaintiff and for approval of Bragar Eagel & Squire, P.C. ("Bragar Eagel") as lead counsel. (Doc. 13.)

In response to these motions for appointment of lead plaintiff and approval of lead counsel, Cardoso filed a notice of non-opposition acknowledging that he does not possess the largest financial interest in this case, and that he does not oppose the motions of Hulaj and National Elevator. (Doc. 19.) On November 18, 2019, Hulaj filed an opposition to National Elevator's motion, (Doc. 20), and on the same day, National Elevator filed an opposition to

---

[3] "Lieberman Decl." refers to the Declaration of Jeremy A. Lieberman in Support of Motion of Steven Hulaj For Appointment as Lead Plaintiff and Approval of Lead Counsel, (Doc. 11). "Holleman Decl." refers to the Declaration of W. Scott Holleman in Support of Ricardo Cardoso's Motion for Appointment as Lead Plaintiff and Approval of Selection of Counsel, (Doc. 17). "Rosenfeld Decl." refers to the Declaration of David A. Rosenfeld in Support of Motion for Appointment as Lead Plaintiff and Approval of Selection of Lead Counsel, (Doc. 18).

Hulaj's motion, (Doc. 21). Thereafter, on November 25, 2019, National Elevator and Hulaj filed reply memoranda of law, and Hulaj also submitted a declaration with exhibits in support of his motion. (Docs. 23, 24.) Finally, on December 2, 2019, National Elevator filed a motion to strike certain arguments made in Hulaj's reply brief as improperly raised. (Doc. 25.) Defendants have not taken a position on the merits of these motions.

## II. Discussion

### A. *Appointment of Lead Plaintiff*

#### 1. Applicable Law

The PSLRA establishes a procedure for the appointment of a lead plaintiff in "each private action . . . that is brought as a plaintiff class action pursuant to the Federal Rules of Civil Procedure." 15 U.S.C. § 78u-4(a)(1). First, "[n]ot later than 20 days" after the first complaint is filed, a notice must be published "in a widely circulated national business-oriented publication or wire service" advising members of the purported class "of the pendency of the action, the claims asserted therein, and the purported class period" and "not later than 60 days after the date on which the notice is published, any member of the purported plaintiff class may move the court to serve as lead plaintiff . . . ." 15 U.S.C. § 78u-4(a)(3)(A)(i).

Second, the PSLRA provides that a district court must "appoint as lead plaintiff the member or members . . . that the court determines to be most capable of adequately representing the interests of class members." 15 U.S.C. § 78u-4(a)(3)(B)(i). Pursuant to the PSLRA, courts must adopt a presumption that the most adequate plaintiff is the person or entity who (1) "either filed the complaint or made a [timely] motion" to be appointed lead plaintiff; (2) "has the largest financial interest in the relief sought by the class"; and (3) "otherwise satisfies the requirements of Rule 23 of the Federal Rules of Civil Procedure." 15 U.S.C. § 78u–4(a)(3)(B)(iii)(I).

In making the determination of which plaintiff has the greatest financial interest, courts consider four factors: (1) the number of shares purchased during the class period; (2) the number of net shares purchased during the class period; (3) the total net funds expended during the class period; and (4) the approximate losses suffered. *See, e.g.*, *In re eSpeed, Inc. Sec. Litig.*, 232 F.R.D. 95, 100 (S.D.N.Y. 2005). The magnitude of the loss is the most significant factor. *See Kaplan v. Gelfond*, 240 F.R.D. 88, 93 (S.D.N.Y. 2007).

In making the determination of whether a movant otherwise satisfies the requirements of Rule 23, the movant must "make a preliminary showing that it satisfies the typicality and adequacy requirements of Rule 23." *In re eSpeed*, 232 F.R.D. at 102. This determination "need not be as complete as would a similar determination for the purpose of class certification," *id.*, and the movant is only required to make a prima facie showing that it meets the typicality and adequacy requirements, *Varghese v. China Shenghuo Pharm. Holdings, Inc.*, 589 F. Supp. 2d 388, 397 (S.D.N.Y. 2008); *cf. Kaplan*, 240 F.R.D. at 94. With respect to typicality, courts consider whether the claims of the proposed lead plaintiff "arise from the same conduct from which the other class members' claims and injuries arise." *In re Initial Pub. Offering Sec. Litig.*, 214 F.R.D. 117, 121 (S.D.N.Y. 2002) (citation omitted); *see also In re Oxford Health Plans, Inc., Sec. Litig.*, 182 F.R.D. 42, 49–50 (S.D.N.Y. 1998). While the claims need not be identical, they must be substantially similar to the other members' claims. *See Canson v. WebMD Health Corp.*, Nos. 11 Civ. 5382(JFK), 11 Civ. 6031(JFK), 2011 WL 5331712, at *4 (S.D.N.Y. Nov. 7, 2011). In considering the adequacy of a proposed lead plaintiff, a court must consider whether the proposed lead plaintiff: (1) maintains claims that conflict with those of the class; (2) has sufficient interest in the outcome of the case; and (3) has selected counsel that is qualified, experienced, and generally able to conduct the litigation in question. *Reitan v. China Mobile*

*Games & Entm't Grp. Ltd.*, 68 F. Supp. 3d 390, 400 (S.D.N.Y. 2014).

If a movant satisfies the three statutory factors—making a timely motion, demonstrating the largest financial interest, and otherwise satisfying Rule 23—then "the court shall adopt a presumption that" the movant is the "most adequate plaintiff." 15 U.S.C. § 78u–4(a)(3)(B)(iii)(I). "[O]ther members of the purported class may try to rebut the statutory presumption by showing that the presumptive lead plaintiff will not fairly and adequately protect the interests of the class or is incapable of adequately representing the class because of 'unique defenses.'" *In re Bank of Am. Corp. Sec., Derivative, & ERISA Litig.*, 258 F.R.D. 260, 268 (S.D.N.Y. 2009) (quoting 15 U.S.C. § 78u–4(a)(3)(B)(iii)(II)); *see also In re Flag Telecom Holdings, Ltd. Sec. Litig.*, 574 F.3d 29, 40 (2d Cir. 2009) (noting that adequacy is not met if the class representative is "subject to any 'unique defenses which threaten to become the focus of the litigation'" (quoting *Baffa v. Donaldson, Lufkin & Jenrette Sec. Corp.*, 222 F.3d 52, 59 (2d Cir. 2000))).

### 2. Application

Before me are three motions for appointment of lead plaintiff by movants Hulaj, National Elevator, and Cardoso. I find that National Elevator is the "most adequate" plaintiff under the PSLRA, 15 U.S.C. § 78u-4(a)(3)(B)(i), and that the remaining movants have failed to rebut this presumption. Therefore, National Elevator is the appropriate lead plaintiff for this class action.

    a. <u>National Elevator is the Presumptive Lead Plaintiff</u>

      i. *All Movants Filed Timely Motions*

As an initial matter, all movants timely filed for appointment as lead plaintiff. The complaint was filed on September 3, 2019. (Doc. 1.) The same day, Plaintiff published a notice on Globe Newswire, fulfilling the PSLRA requirements set forth in 15 U.S.C. § 77z–

1(a)(3)(A)(i). (*See* Lieberman Decl. Ex. C; Holleman Decl. Ex. C; Rosenfeld Decl. Ex. A.) The notice detailed the claims in the complaint and informed the Class that they had until November 4, 2019 to move for appointment as lead plaintiff. Each movant filed its motion for appointment as lead plaintiff on November 4, 2019, (Docs. 10, 12, 14), and thus timely filed within the sixty-day statutory requirement.

ii. *Comparing Financial Interests*

On November 18, 2019, Cardoso filed a notice of non-opposition acknowledging that he does not possess the largest financial interest in the action, and taking no position on Hulaj or National Elevator's motions.[4] (*See* Doc. 19.) The two remaining movants, Hulaj and National Elevator, disagree about which movant has the greatest financial interest, in large part due to their disagreement about which of the four financial interest factors I should prioritize.

In support of their respective motions, both Hulaj and National Elevator agree that the following data represents the net shares and shares purchased corresponding to each movant:[5]

| Movant | Retained Shares (Net Shares Purchased) | Shares Purchased |
|---|---|---|
| Steven Hulaj | 98,160 | 115,710 |
| National Elevator Industry Pension Fund | 93,149 | 100,004 |
| Ricardo Cardoso | 4,000 | 4,000 |

However, Hulaj and National Elevator disagree on the net funds each expended, and further

---

[4] Because movant Cardoso filed a notice of non-opposition to the competing motions for appointment of lead plaintiff and approval of selection of counsel, (Doc. 19), and because I find movant National Elevator to be the presumptive lead plaintiff who also otherwise satisfies Rule 23, I do not consider the merits of Cardoso's initial motion, (Doc. 12), and deny the motion.

[5] These figures are taken from Hulaj's Memorandum of Law: (1) In Further Support of Motion of Steven Hulaj For Appointment as Lead Plaintiff and Approval of Lead Counsel; and (2) In Opposition to Competing Motions, (Doc. 20, at 3), and National Elevator Industry Pension Fund's Opposition to Competing Motions for Appointment as Lead Plaintiff, (Doc. 21, at 9).

8

dispute the losses suffered by National Elevator. [6] Hulaj claims that he expended $4,349,857 in net funds, and suffered $369,836 in losses. (Doc. 20, at 3.) Hulaj further claims that National Elevator expended $4,936,941 in net funds, and suffered $1,165,493 in losses. (*Id.*) In contrast, National Elevator claims that it expended $4,936,883 in net funds, and suffered $1,170,469 in losses. (Doc. 21, at 9.) National Elevator further claims that Hulaj expended $4,349,842 in net funds, and suffered $369,836 in losses. (*Id.*) Although the parties do not explain the basis for their calculations or why they reach different figures, it appears that the differences could be due to the fact that National Elevator has rounded stock prices to two decimal places, and used a 90-day average share price of $40.43 to calculate losses, whereas Hulaj has not rounded stock prices, and used a 90-day average share price of $40.4991 to estimate losses. (Doc. 18, Ex. C; Doc. 11, Ex. B.) However, these discrepancies do not impact my conclusion that National Elevator has the greatest financial interest in the case, and I need not and do not make a determination as to which calculation is more accurate.

Given the above data, the movants agree that National Elevator sustained the greatest financial loss from the alleged misconduct, and expended more in net funds. The movants also agree that Hulaj purchased the greatest number of total shares and net shares. However, Hulaj maintains that net shares purchased is the best metric of financial interest, whereas National Elevator asserts that total losses and net funds expended are the two most important financial interest factors. (*Compare* Doc. 20, at 3, *with* Doc. 21, at 9.)

National Elevator has the better of the argument. As stated above, the magnitude of the loss suffered is normally the most significant factor when determining a movant's financial

---

[6] In addition, Hulaj and National Elevator agree that Cardoso expended $209,680 in net funds, but disagree on the losses suffered by Cardoso. (Doc. 21, at 9; Doc. 20, at 3.) Hulaj asserts that Cardoso suffered $47,684 in losses, while National Elevator asserts that Cardoso suffered $47,520 in losses. (Doc. 21, at 9; Doc. 20, at 3.)

interest. *See, e.g.*, *Varghese*, 589 F. Supp. 2d at 395 ("Financial loss, the last factor, is the most important element of the test."); *Reimer v. Ambac Fin. Grp., Inc.*, No. 08 CIV. 1273(NRB), 2008 WL 2073931, at *3 (S.D.N.Y. May 9, 2008) ("The fourth factor is viewed as the most important."); *Kaplan*, 240 F.R.D. at 93. I find this is particularly true where, as here, the losses suffered by one movant are more than three times the losses suffered by the other movant.

Hulaj claims that "[c]ourts routinely recognize that the number of shares retained at the end of the Class Period (*i.e.*, net shares purchased during the Class Period) is the most significant factor to be considered." (Doc. 20, at 6.) However, the cases Hulaj cites for this proposition do not support this proposition. For example, in the *Brixmor* case cited by Hulaj, the court explicitly stated that "[t]he trend among New York courts is to view the factors in ascending order of importance, such that the number of shares purchased is the least important and the losses incurred are the most important." *Westchester Putnam Counties Heavy & Highway Laborers Local 60 Benefit Funds v. Brixmor Property Group, Inc., et al.*, Case No. 16-cv-2400-AT-SN, ECF No. 58, at 2 (S.D.N.Y. Nov. 29, 2016). *Brixmor* did not appoint the movant with the greatest financial losses, however, because the court found that the movant's 16% greater loss figure was too insignificant to be outcome-determinative where all three of the remaining factors "overwhelmingly favor[e]d the [other movant]." *Id.* at 3; *see also Pio v. Gen. Motors Co.*, No. CIV. 14-11191, 2014 WL 5421230, at *4 (E.D. Mich. Oct. 24, 2014) (declining to rely solely on the fourth factor where there was "no dispute that the first three [] factors favor[ed] the appointment" of one movant, and resolution of the fourth factor was heavily dependent on the methods chosen by the movants).

Hulaj's argument that I should prioritize the retained shares factor is particularly unpersuasive given the facts of the instant case. The first three factors are roughly equal between

movants Hulaj and National Elevator, but the losses suffered by National Elevator are more than three times Hulaj's losses. *See Foley v. Transocean Ltd.*, 272 F.R.D. 126, 130 (S.D.N.Y. 2011) ("While it is true that Johnson expended greater net funds and purchased more net shares, these numbers do not outweigh a difference of more than $500,000 in losses."); *Varghese*, 589 F. Supp. 2d at 397 ("While the first two factors favor Maa and the third factor favors Bennett, the fourth factor in this case—the most important factor—strongly favors Bennett"); c*f. Cortina v. Anavex Life Sci. Corp.*, No. 15 Civ. 10162 (JMF), 2016 WL 1337305, at *2 (S.D.N.Y. Apr. 5, 2016) (holding that much higher net shares purchased and net funds expended outweighed a loss that "only slightly favor[ed]" a competing movant); *Alkhoury v. Lululemon Athletica, Inc.*, No. 13 Civ. 4596 (KBF), 2013 WL 5496171, at *1 (S.D.N.Y. Oct. 1, 2013) (holding that a "slightly higher" loss amount was "insufficient to outweigh the substantial financial interest . . . evidenced by the other factors"). In addition, the courts that have prioritized net shares purchased over the other factors each warn that such a methodology is not appropriate under circumstances that are present here. For example, the passage Hulaj quotes from *In re Network Assocs., Inc., Sec. Litig.*, 76 F. Supp. 2d 1017 (N.D. Cal. 1999), that "the candidate with the most net shares purchased will normally have the largest potential damage recovery," is misleading and Hulaj cites it out of context. *Id.* at 1027. When read in its entirety, *Network Associates* makes clear that this "approach gets into trouble" when the "'fraud premium' varie[s] over the course of the class period," such that "some transactions resulted in greater losses than others." *Id.* In this case, Plaintiff alleges that there were three separate disclosures throughout the class period that each independently contributed to a reduction in the value of Canada Goose shares. (Compl. ¶¶ 4–13.) Thus, the instant case is the type of case in which *Network Associates* counsels against relying primarily on net shares purchased. *See also In re CMED Sec. Litig.*, No. 11 Civ. 9297

(KBF), 2012 WL 1118302, at *4 (S.D.N.Y. Apr. 2, 2012) (rejecting the retained shares methodology where the pleadings alleged partial corrective disclosures); *Weiss v. Friedman, Billings, Ramsey Grp., Inc.*, No. 05-CV-04617(RJH), 2006 WL 197036, at *4 (S.D.N.Y. Jan. 25, 2006) (stating that "the second [] factor (net shares purchased) diminishes in importance upon the realization that, here, partial corrective disclosures were reaching investors on a periodic basis"). This reasoning renders Hulaj's other cited authority inapposite. *See In re Critical Path, Inc. Sec. Litig.*, 156 F. Supp. 2d 1102, 1107–08 (N.D. Cal. 2001) ("This approach assumes that the 'fraud premium,' which is the amount by which the stock is inflated because of the alleged misrepresentations, stayed constant throughout the class period."); *Eichenholtz v. Verifone Holdings, Inc.*, No. C07-06140MHP, 2008 WL 3925289, at *3 (N.D. Cal. Aug. 22, 2008) (adopting the retained share methodology where the class period was defined by only one corrective disclosure at the end of the class period).

### iii. *Otherwise Satisfying Rule 23*

Because National Elevator indisputably has the largest financial interest in the action, I next consider whether National Elevator "otherwise satisfies the requirements of Rule 23 of the Federal Rules of Civil Procedure," 15 U.S.C. § 78u–4(a)(3)(B)(iii)(I)(cc), specifically, the typicality and adequacy requirements of Rule 23. Members of the class are "all persons other than Defendants who purchased or otherwise acquired Canada Goose securities between March 16, 2017 and August 1, 2019, both dates inclusive." (Compl. ¶ 1.) As purchasers of Canada Goose securities during the Class Period, (*see* Rosenfeld Decl., Ex. C), National Elevator has claims "aris[ing] from the same conduct from which the other class members' claims and injuries arise," *In re Initial Public Offering*, 214 F.R.D. at 121, and thus satisfies the typicality requirement.

Further, National Elevator meets Rule 23's adequacy requirement. First, nothing indicates that National Elevator's claims would conflict with those of the class. Second, National Elevator alleges significant damages due to Defendants actions, and thus has "sufficient interest in the outcome of the case." *In re Initial Public Offering*, 214 F.R.D. at 121. In addition, National Elevator's proposed lead counsel, Robbins Geller, is experienced and qualified, has represented plaintiffs in multiple other securities class action litigations, and has the ability to conduct the litigation effectively. Lastly, National Elevator is an institutional investor, a fact that also weighs in its favor. *See Reitan*, 68 F. Supp. 3d at 396. Therefore, I find that National Elevator is the presumptive lead plaintiff.[7]

### b. No Other Movant Has Rebutted the Presumption

In order to rebut the statutory presumption in favor of National Elevator, another movant must provide proof that the presumptive lead plaintiff would not be able to "fairly and adequately protect the interests of the class" or "is subject to unique defenses that render such plaintiff incapable of adequately representing the class." 15 U.S.C. § 78u-4(a)(3)(B)(iii)(II). Hulaj's only attempt to rebut the statutory presumption in this case is his argument that the additional counsel designation by the O'Donoghue firm in National Elevator's moving papers, (*see e.g.*, Doc. 16, at 12), "raises the specter that [National Elevator's] counsel, rather than [National Elevator], would direct this litigation if [National Elevator] were to be appointed as

---

[7] Even if Hulaj had the largest financial interest in this action, I find that "[t]he certification errors in [Hulaj's] submissions 'militate against appointment and render [him] inadequate to serve as lead plaintiff under Rule 23's adequacy requirement.'" *Plaut v. Goldman Sachs Grp., Inc.*, No. 18-CV-12084 (VSB), 2019 WL 4512774, at *4 (S.D.N.Y. Sept. 19, 2019) (citing *Micholle v. Ophthotech Corp.*, Nos. 17-CV-210 (VSB), 17-CV-1758 (VSB), 2018 WL 1307285, at *9 (S.D.N.Y. Mar. 13, 2018)). The certification submitted by Hulaj with his original motion papers "erroneously omitt[ed] to disclose that Hulaj previously sought appointment in [a prior] action." (Doc. 23 at 3.) Although Hulaj submits that this was "due to a clerical error" in which "a different document was ultimately filed on his behalf," (*id.*), this error "nonetheless speaks to a level of carelessness," and causes me "to doubt whether [Hulaj] possesses the necessary adequacy and sophistication to be lead plaintiff," *Plaut*, 2019 WL 4512774, at *4 (internal quotation marks omitted).

Lead Plaintiff," (Doc. 23, at 7). This argument was raised for the first time in Hulaj's reply brief, and need not be considered by the Court. *See Ruggiero v. Warner-Lambert Co.*, 424 F.3d 249, 252 (2d Cir. 2005). In any case, Hulaj's argument is meritless. In support of this argument, Hulaj does not identify a single case in which a court has denied a motion to serve as lead plaintiff on similar grounds, nor does he acknowledge that courts routinely appoint lead counsel and liaison counsel in securities class action cases. *See, e.g.*, *Plaut*, 2019 WL 4512774, at *7 (appointing both lead and liaison counsel); *Foley v. Transocean Ltd.*, 272 F.R.D. 126, 134 (S.D.N.Y. 2011) (same); *Faris v. Longtop Fin. Techs. Ltd.*, No. 11 Civ. 3658(SAS), 2011 WL 4597553, at *9 (S.D.N.Y. Oct. 4, 2011) (same). Furthermore, National Elevator only requests the appointment of Robbins Geller as lead counsel in this case, and Hulaj's argument is irrelevant in light of my granting that request.

### B. *Appointment of Lead counsel*

The PSLRA provides that the "most adequate plaintiff shall, subject to the approval of the court, select and retain counsel to represent the class." 15 U.S.C. § 78u-4(a)(3)(B)(v). There is a "strong presumption in favor of approving a properly-selected lead plaintiff's decisions as to counsel selection." *Sallustro v. CannaVest Corp.*, 93 F. Supp. 3d 265, 278 (S.D.N.Y. 2015) (citations omitted).

Having reviewed National Elevator's memorandum of law, I find that Robbins Geller will adequately and effectively represent the interests of the class. As I have found on a prior occasion, Robbins Geller has substantial experience with securities class action litigation. *Micholle*, 2018 WL 1307285, at *10 ("The Pension Plan's counsel, Robbins Geller Rudman & Dowd LLP, is experienced and qualified, has represented plaintiffs in multiple other securities class action litigations, and has the ability to conduct the litigation effectively.").

### III. Conclusion

Because I find that National Elevator is the presumptive lead plaintiff and no other movants have rebutted that presumption, National Elevator's motion for appointment as lead plaintiff and for approval of lead counsel is GRANTED. The remaining motions by Hulaj and Cardoso for appointment as lead plaintiff are DENIED. Accordingly, it is hereby:

ORDERED that National Elevator is directed to file a second amended complaint no later than sixty (60) days after the date of issuance of this Opinion & Order. Defendants are directed to answer or otherwise respond to the second amended complaint no later than sixty (60) days after National Elevator serves the second amended complaint.

IT IS FURTHER ORDERED that National Elevator's motion to strike, (Doc. 25), is DENIED as moot in light of this opinion.

The Clerk of Court is respectfully directed to terminate the pending motions at Documents 8, 12, 14, and 25.

SO ORDERED.

Dated: December 5, 2019
      New York, New York

Vernon S. Broderick
United States District Judge