UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

———————————————— x

LI HONG CHENG and NATIONAL : Civil Action No. 1:19-cv-08204-VSB
ELEVATOR INDUSTRY PENSION FUND, :
Individually and on Behalf of All Others : <u>CLASS ACTION</u>
Similarly Situated, :
  :
              Plaintiff, :
  :
    vs. :
  :
  :
CANADA GOOSE HOLDINGS INC., DANI :
REISS, JONATHAN SINCLAIR, BAIN :
CAPITAL, LP, BRENT (BC) :
PARTICIPATION S.À.R.L, BRENT (BC) :
S.À.R.L, BAIN CAPITAL INTEGRAL :
INVESTORS 2008, L.P., and BAIN CAPITAL :
INVESTORS, LLC, :
  :
              Defendants. :
  :

———————————————— x

## MEMORANDUM OF LAW IN SUPPORT OF THE DEFENDANTS' <br> MOTION TO DISMISS THE AMENDED CLASS ACTION COMPLAINT

Robert G. Jones (admitted *pro hac vice*)
**ROPES & GRAY LLP**
800 Boylston Street
Boston, Massachusetts 02199
Telephone:  (617) 951-7000
Facsimile:  (617) 951-7050
Email:  robert.jones@ropesgray.com

Martin J. Crisp
Ryan M. Royce
**ROPES & GRAY LLP**
1211 Avenue of the Americas
New York, New York 10036
Telephone:  (212) 596-5000
Facsimile:  (212) 596-9090
Email:  martin.crisp@ropesgray.com
        ryan.royce@ropesgray.com

*Attorneys for Defendants Canada Goose Holdings*
*Inc., Dani Reiss, Jonathan Sinclair, Bain Capital,*

*LP, Brent (BC) Participation, S.à.r.l, Brent (BC) S.à.r.l, Bain Capital Integral Investors 2008, L.P., and Bain Capital Investors, LLC*

# TABLE OF CONTENTS

PRELIMINARY STATEMENT ........................................................................................1

ALLEGATIONS IN THE AMENDED COMPLAINT ...................................................4

    A.   The Parties .............................................................................................4

    B.   Alleged Misstatements by the Company and the Individual Defendants ......................5

    C.   Control Person Allegations Against the Individual Defendants and the Bain
        Defendants .............................................................................................11

ARGUMENT ...............................................................................................................11

I.    PLAINTIFF FAILS TO ALLEGE ANY FALSE OR MISLEADING STATEMENT
    OR OMISSION ...................................................................................................12

    A.   The Amended Complaint Does Not Allege Any False or Misleading Statements
        Regarding the Company's Inventory Levels or Future Demand ...................................13

        1.   Canada Goose Did Not State That Future Revenue Growth or Demand
             Would Be "Commensurate With Historical Trends" ................................13

        2.   Defendants' Statements About Current Inventory Levels and Future
             Demand Did Not Create Any "Misleading Impression" Regarding Future
             Revenues ....................................................................................14

        3.   Defendants' Statements Regarding Inventory Levels and Future Demand
             Were Non-Actionable Statements of Corporate Optimism or Puffery ..................17

        4.   Defendants' Statements Regarding Inventory Levels and Future Demand
             Are Non-Actionable Forward-Looking Statements ................................18

             i.   The PSLRA Safe Harbor ................................................18

             ii.   The "Bespeaks Caution" Doctrine ................................20

    B.   The Amended Complaint Does Not Allege Any False or Misleading Statements
        Regarding The So-Called "Timing Shift" – Which In Fact Was Disclosed ..................20

II.   PLAINTIFF FAILS TO PLEAD SCIENTER .......................................................23

    A.   The Amended Complaint Does Not Allege Actual Knowledge of Falsity ...................23

    B.   The Amended Complaint Otherwise Fails to Plead Scienter .........................................24

        1.   Plaintiff's Generalized Allegations Concerning Defendants' Incentives To
             Maintain a High Stock Price Do Not Show Motive ................................24

        2.   Plaintiff's Stock Sale Allegations Do Not Reveal Any Motive to Defraud ...........25

    C.   Plaintiff Has Failed to Plead Recklessness .......................................................28

III.  PLAINTIFF FAILS TO STATE A CLAIM UNDER SECTION 20(a) OF THE
    EXCHANGE ACT ...............................................................................................29

CONCLUSION.............................................................................................................30

# **TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*Acito v. IMCERA Grp., Inc.*,
    47 F.3d 47 (2d Cir. 1995).....................................................................................16, 22, 24, 25

*Al-Qadaffi v. Servs. for the Underserved (SUS)*,
    2015 WL 585801 (S.D.N.Y. Jan. 30, 2015) ...........................................................................30

*ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*,
    493 F.3d 87 (2d Cir. 2007).............................................................................................12, 29, 30

*Boca Raton Firefighters & Police Pension Fund v. Bahash*,
    506 F. App'x 32 (2d Cir. 2012) .............................................................................................12

*Bui v. Indus. Enters. of Am., Inc.*,
    594 F. Supp. 2d 364 (S.D.N.Y. 2009)....................................................................................30

*City of Monroe Emps.' Ret. Sys. v. Hartford Fin. Servs. Grp., Inc.*,
    2011 WL 4357368 (S.D.N.Y. Sept. 19, 2011).......................................................................18

*City of Omaha Police & Fire Ret. Sys. v. Evoqua Water Techs. Corp.*,
    2020 WL 1529371 (S.D.N.Y. Mar. 30, 2020) .......................................................................25

*City of Roseville Emps.' Ret. Sys. v. Nokia Corp.*,
    2011 WL 7158548 (S.D.N.Y. Sept. 6, 2011).........................................................................17

*Coronel v. Quanta Capital Holdings Ltd.*,
    2009 WL 174656 (S.D.N.Y. Jan. 26, 2009) ..........................................................................29

*ECA, Local 134 IBEW Joint Pension Trust of Chicago v. JP Morgan Chase Co.*,
    553 F.3d 187 (2d Cir. 2009)..............................................................................................24, 26

*Fait v. Regions Fin. Corp.*,
    655 F.3d 105 (2d Cir. 2011)....................................................................................................18

*Fialkov v. Microsoft Corp.*,
    72 F. Supp. 3d 1220 (W.D. Wash. 2014)...............................................................................18

*Glaser v. The9 Ltd.*,
    772 F. Supp. 2d 573 (S.D.N.Y. 2011)....................................................................................27

*Gregory v. ProNAi Therapeutics Inc.*,
    297 F. Supp. 3d 372 (S.D.N.Y. 2018)....................................................................................18

*IBEW Local Union No. 58 Pension Tr. Fund & Annuity Fund v. Royal Bank of
    Scotland Grp., PLC,*
    783 F.3d 383 (2d Cir. 2015) ...................................................................................17

*In re AFC Enters., Inc. Sec. Litig.,*
    348 F. Supp. 2d 1363 (N.D. Ga. 2004) ..................................................................26

*In re Agnico-Eagle Mines,*
    2013 WL 144041 (S.D.N.Y. Jan. 14, 2013) ...........................................................25

*In re Aratana Therapeutics Inc. Sec. Litig.,*
    315 F. Supp. 3d 737 (S.D.N.Y. 2018) ....................................................................24

*In re BHP Billiton Ltd., Sec. Litig.,*
    276 F. Supp. 3d 65 (S.D.N.Y. 2017) ......................................................................28

*In re BISYS Sec. Litig.,*
    397 F. Supp. 2d 430 (S.D.N.Y. 2005) ....................................................................27

*In re Deutsche Bank Aktiengesellschaft Sec. Litig.,*
    2017 WL 4049253 (S.D.N.Y. June 28, 2017) ........................................................12

*In re Elan Corp. Sec. Litig.,*
    543 F. Supp. 2d 187 (S.D.N.Y. 2008) ....................................................................22

*In re eSpeed Inc. Sec. Litig.,*
    457 F. Supp. 2d 266 (S.D.N.Y. 2006) ....................................................................27

*In re Gen. Electric Sec. Litig.,*
    2020 WL 2306434 (S.D.N.Y. May 7, 2020) ..........................................................14

*In re Gildan Activewear, Inc. Sec. Litig.,*
    636 F. Supp. 2d 261 (S.D.N.Y. 2009) ........................................................25, 27, 28

*In re Nokia Corp. Sec. Litig.,*
    423 F. Supp. 2d 364 (S.D.N.Y. 2006) ....................................................................15

*In re Pretium Res. Inc. Sec. Litig.,*
    256 F. Supp. 3d 459 (S.D.N.Y. 2017) ..........................................................4, 21, 29

*In re PXRE Grp., Ltd., Sec. Litig.,*
    600 F. Supp. 2d 510 (S.D.N.Y. 2009) ....................................................................28

*In re Refco, Inc. Sec. Litig.,*
    503 F. Supp. 2d 611 (S.D.N.Y. 2007) ....................................................................30

*In re Sanofi Sec. Litig.,*
    87 F. Supp. 3d 510 (S.D.N.Y. 2015) ......................................................................18

*In re Sanofi-Aventis Sec. Litig.*,
    774 F. Supp. 2d 549 (S.D.N.Y. 2011).....................................................................14

*In re Sec. Capital Assurance Ltd. Sec. Litig.*,
    729 F. Supp. 2d 569 (S.D.N.Y. 2010).....................................................................28

*In re Sierra Wireless, Inc. Sec. Litig.*,
    482 F. Supp. 2d 365 (S.D.N.Y. 2007).....................................................................15

*In re Skechers USA, Inc. Sec. Litig.*,
    2020 WL 1233759 (S.D.N.Y. Mar. 12, 2020) ...................................................14, 15

*In re Stemline Therapeutics, Inc. Sec. Litig.*,
    313 F. Supp. 3d 543 (S.D.N.Y. 2018)................................................................13, 14

*In re Take-Two Interactive Sec. Litig.*,
    551 F. Supp. 2d 247 (S.D.N.Y. 2008).....................................................................28

*In re WEBMD Health Corp. Sec. Litig.*,
    2013 WL 64511 (S.D.N.Y. Jan. 2, 2013) ..........................................................19, 20

*In re XM Satellite Radio Holdings Sec. Litig.*,
    479 F. Supp. 2d 165 (D.D.C. 2007) .......................................................................20

*Lopez v. Ctpartners Exec. Search Inc.*,
    173 F. Supp. 3d 12 (S.D.N.Y. 2016).......................................................................20

*Malin v. XL Capital Ltd.*,
    499 F. Supp. 2d 117 (D. Conn. 2007) .....................................................................27

*Micholle v. Opthotech, Corp.*,
    2019 WL 4464802 (S.D.N.Y. Sept. 18, 2019).............................................. *passim*

*Novak v. Kasaks*,
    216 F.3d 300 (2d Cir. 2000)...................................................................................16

*Oklahoma Firefighters Pension & Ret. Sys. v. Xerox Corp.*,
    300 F. Supp. 3d 551 (S.D.N.Y. 2018).....................................................................15

*Plumbers & Steamfitters Local 773 Pension Fund v. CIBC*,
    694 F. Supp. 2d 287 (S.D.N.Y. 2010).....................................................................26

*Podany v. Robertson Stephens, Inc.*,
    318 F. Supp. 2d 146 (S.D.N.Y. 2004).....................................................................18

*Ressler v. Liz Claiborne, Inc.*,
    75 F. Supp. 2d 43 (E.D.N.Y. 1998) ........................................................................18

*Iowa Pub. Emps.' Ret. Sys. v. MF Global, Ltd.*,
   620 F.3d 137 (2d Cir. 2010)............................................................................20

*Rombach v. Chang*,
   355 F.3d 164 (2d Cir. 2004)..............................................................2, 11, 12

*Rothman v. Gregor*,
   220 F.3d 81 (2d Cir. 2000)..............................................................................25

*Russo v. Bruce*,
   777 F. Supp. 2d 505 (S.D.N.Y. 2011)............................................................26

*Sachsenberg v. IRSA Inversiones y Representaciones Sociedad Anonima*,
   339 F. Supp. 3d 169 (S.D.N.Y. 2018)........................................................4, 29

*Shields v. Citytrust Bancorp, Inc.*,
   25 F.3d 1124 (2d Cir. 1994)............................................................................17

*Slayton v. Am. Express Co.*,
   604 F.3d 758 (2d Cir. 2010)..............................................................3, 18, 23

*Stratte-McClure v. Morgan Stanley*,
   776 F.3d 94 (2d Cir. 2015)..............................................................................28

*Tamar v. Mind C.T.I., Ltd.*,
   723 F. Supp. 2d 546 (S.D.N.Y. 2010)............................................................24

*Teamsters Local 445 Freight Div. Pension Fund v. Dynex Capital, Inc.*,
   531 F.3d 190 (2d Cir. 2008)............................................................................23

*Tellabs, Inc. v. Makor Issues & Rights, Ltd.*,
   551 U.S. 308 (2007)..............................................................................11, 23

*Tongue v. Sanofi*,
   816 F.3d 199 (2d Cir. 2016)............................................................................18

**Statutes**

15 U.S.C. § 77z-2(c)(1)......................................................................................20

15 U.S.C. § 78u-4(b)(1).....................................................................................11

15 U.S.C. § 78u-4(b)(2)..............................................................................3, 23

Private Securities Litigation Reform Act of 1995 ................................. *passim*

Securities and Exchange Act of 1934 Section 10(b) ..............................2, 11

Securities and Exchange Act of 1934 Section 20A ...............................30

Defendant Canada Goose Holdings Inc. ("Canada Goose" or the "Company") and defendants Dani Reiss and Jonathan Sinclair (together, the "Individual Defendants"), as well as defendants Bain Capital, LP, Brent (BC) Participation S.à.r.l, Brent (BC) S.à.r.l, Bain Capital Integral Investors 2008, L.P., and Bain Capital Investors, LLC (collectively, the "Bain Defendants" and, together with the Company and the Individual Defendants, the "Defendants") respectfully submit this memorandum of law in support of their motion to dismiss the Consolidated Amended Complaint (the "Amended Complaint" or "AC") pursuant to the Private Securities Litigation Reform Act of 1995 (the "PSLRA") and Rules 9(b) and 12(b)(6) of the Federal Rules of Civil Procedure.

## PRELIMINARY STATEMENT

In this securities class action, Plaintiff does not claim that any specific disclosure of Canada Goose's revenues, inventories, margins, or other financial results was false or misleading. Indeed, the Amended Complaint impliedly concedes that the Company's financial reporting was entirely accurate, including throughout the putative Class Period. Plaintiff instead appears to claim that Canada Goose otherwise offered vague assurances regarding its future inventory and revenues, as well as the timing of its expected sales, which Plaintiff asserts were meant to mislead investors into believing that the Company would experience future revenue growth consistent with its past results. AC ¶ 15. The Amended Complaint itself is a model of misdirection, relying on a puzzle-pleading style that requires the Court and Defendants to unravel the allegations to make sense of any possible theory of liability.

The Amended Complaint appears to premise liability for a supposed "misimpression" on a series of statements that conveyed otherwise accurate facts or which constitute non-actionable statements of puffery and opinion, many of which were also forward-looking statements protected by the PSLRA's safe harbor and the bespeaks caution doctrine. To the extent Plaintiff points to a

specific fact as being omitted from a particular statement, the Amended Complaint itself concedes that the fact was disclosed by Canada Goose, and incorporates by reference many additional disclosures confirming that disclosure in plain terms. None of this adds up to an actionable claim under the federal securities laws: Section 10(b) requires far more than perfunctory claims that concededly accurate factual statements left a "misleading impression." *See Rombach v. Chang*, 355 F.3d 164, 174 (2d Cir. 2004).

This Court should dismiss the Amended Complaint, first, because it fails to plead actionable false statements. Plaintiff's principal allegation is that Canada Goose gave investors the "misleading impression" that the Company – in ***Plaintiff's*** words – "would continue to experience increasing demand and accelerated growth commensurate with historical trends." AC ¶ 70. Plaintiff focuses on a single phrase – the Company's August 2018 statement that the opening of new stores was an example of "building demand ahead of supply" – and, lifting only the second part of the statement for examination, claims incredibly that it amounted to a projection that demand and revenues would continue to grow in keeping with "historical trends." But the Company made no such projection. Moreover, even had the Company ***promised*** investors in August 2018 that both demand and revenues would continue to increase "commensurate with historical trends" – which it emphatically did not do – the Amended Complaint offers no allegation to show that the Company could have known that the statement was misleading when (supposedly) made. The only specific information offered by Plaintiff to suggest Canada Goose ***knew*** it would not experience revenue and demand growth in line with "historical trends" comes from the Company's FY2020 revenue projections – issued well after the challenged statements. AC ¶ 110.

Plaintiff's other principal allegation focuses on the timing of Canada Goose's sales through its main sales channels. But this allegation fits the same failed pattern: while Plaintiff alleges that

Defendants failed to disclose that customers were purchasing certain products earlier in FY2019 than in prior years, the Amended Complaint concedes that the Company disclosed this very fact. AC ¶ 96. Plaintiff's allegation that the Company failed to disclose that this "timing shift" could "negatively impact" its performance in the third and fourth quarters of FY2019 also fails because (i) the Amended Complaint does not allege any negative impact to the third quarter; and (ii) it acknowledges that the Company explicitly cautioned investors that the shift in timing could cause revenue growth to slow in the fourth quarter. In any event, as explained below, the statements Plaintiff challenges are non-actionable puffery and protected forward-looking statements.

The Court should dismiss the Amended Complaint for the independent reason that it does not provide specific facts establishing a "strong inference" of scienter. *See* 15 U.S.C. § 78u-4(b)(2). Where, as here, a securities fraud claim is principally based on forward-looking statements, the PSLRA requires more than the allegations of conscious recklessness that are required in every case. Plaintiff must instead plead a strong inference that Defendants had ***actual knowledge*** that the challenged statements were false and misleading when made. *See Slayton v. Am. Express Co.*, 604 F.3d 758, 773 (2d Cir. 2010). But Plaintiff pleads no facts, let alone with sufficient particularity, that raise an inference of actual knowledge by any Defendant.  Even if Plaintiff is not required to plead actual knowledge, the Amended Complaint relies principally on a single stock sale by Mr. Reiss and the Bain Defendants in hopes of pleading the strong inference required for scienter. AC ¶¶ 124-25. But in the Second Circuit, it is well-established that insider stock sales, standing alone, do not create a compelling inference of scienter. *See Micholle v. Opthotech, Corp.*, 2019 WL 4464802, at *14 (S.D.N.Y. Sept. 18, 2019) (Broderick, J.) ("The mere fact that insider stock sales occurred does not suffice to establish scienter.").[1] Moreover, Plaintiff

---

[1] Unless otherwise noted, emphasis has been added, and internal citations and quotation marks have been omitted.

has not even attempted to allege that those sales were unusual or suspicious, nor could Plaintiff have done so: the sales occurred pursuant to a registered offering conducted early in the Class Period, and represented a relatively small portion of the selling Defendants' equity interests in the Company.

Accordingly, and for the reasons stated below, the Amended Complaint should be dismissed with prejudice.

## ALLEGATIONS IN THE AMENDED COMPLAINT[2]

### A.     The Parties

Canada Goose designs, manufactures, and sells premium outdoor apparel. AC ¶ 35. The Company sells its products through two channels: wholesale and direct-to-consumer ("DTC"). AC ¶ 38. Through its wholesale channel, the Company sells to retail partners and distributors, while the DTC channel includes the Company's brick-and-mortar stores and e-commerce sites. *Id.* The Company reports revenue by segment. Wholesale revenue is recognized when the goods are delivered to the third-party reseller, while DTC revenue is recognized only upon delivery to the customer at the point of sale. AC ¶ 39. Given the difference in revenue recognition between channels and the seasonality of the Company's products, the Company has historically realized a significant portion of its wholesale revenue during the second and third fiscal quarters, while DTC revenue has typically been realized in the third and fourth fiscal quarters.[3] *Id.*

---

[2] This background is drawn principally from the Amended Complaint, which is presumed true for purposes of this motion only, and publicly available information referenced therein or on which it necessarily relies, including the Company's public filings with the SEC. *See, e.g.*, *Sachsenberg v. IRSA Inversiones y Representaciones Sociedad Anonima*, 339 F. Supp. 3d 169, 178 (S.D.N.Y. 2018) (Broderick, J.) ("In evaluating a motion to dismiss in a securities action, a court may consider any written instrument attached to the complaint, statements or documents incorporated into the complaint by reference, legally required public disclosure documents filed with the SEC, and documents possessed by or known to the plaintiff and upon which it relied in bringing the suit."); *In re Pretium Res. Inc. Sec. Litig.*, 256 F. Supp. 3d 459, 481 (S.D.N.Y. 2017) (Broderick, J.) (same).

[3] The Company's fiscal year ends on March 31. For FY2019, the Company's first, second, and third quarters ended on June 30, 2018, September 30, 2018 and December 31, 2018, respectively.

Mr. Reiss is Canada Goose's Chairman, President, and Chief Executive Officer. AC ¶ 23. Mr. Sinclair is the Company's Chief Financial Officer. AC ¶ 24. The Bain Defendants were the Company's majority stockholders during the entirety of the putative Class Period. AC ¶¶ 30-34.

### B.   Alleged Misstatements by the Company and the Individual Defendants[4]

Since its IPO in 2017, the Company has experienced rapid growth, with its annual revenue growing by 39% year-on-year in FY2017 and 46% in FY2018. AC ¶ 41. The rising popularity of the Company's products often resulted in its products being sold out. AC ¶ 7. The Company's overall sales had also gradually shifted from its wholesale segment to the DTC segment, with the Company opening four new stores in FY2018, with five additional stores scheduled to open in FY2019. AC ¶ 40. Given the prior inventory shortages and increased sales expected from the anticipated store openings, the Company accelerated its production capacity and built inventory as it entered FY2019, which the Company expected would see annual revenue growth of "at least 20%." AC ¶¶ 7-8, 44, 58; June 15, 2018 Press Release at 2-3, attached as Ex. E to the Crisp. Decl. Throughout the putative Class Period, the Company continued to build its inventory levels, which, as Plaintiff acknowledges, were fully disclosed at the end of each fiscal quarter. AC ¶¶ 6, 9-16, 37. Plaintiff does not allege that any of those reported inventory levels were inaccurate or incomplete.

*Alleged Misstatements in First Quarter of FY2019 (August 9, 2018)*. The Company reported its financial results for Q1 2019 on August 9, 2018, and disclosed that its inventories had grown by approximately 35% y-o-y in preparation for upcoming wholesale shipments and in order to "mak[e] sure that inventory is there to meet [the] demand" generated by the increase in retail stores. AC ¶¶ 45, 66; Q1 2019 Earnings Call Tr. at 12, attached as Ex. G to the Crisp Decl.

---

[4] A complete list of the disclosures that Plaintiff claims are false and misleading, and the non-actionable and/or protected categories of statements to which they belong, is attached as Exhibit A to the Declaration of Martin J. Crisp, dated May 12, 2020 (the "Crisp Decl."), filed herewith.

Mr. Reiss also noted that the Company's recent and future new store openings were "to me . . . a direct result of how we build demand ahead of supply." Q1 2019 Earnings Call Tr. at 5; *id.* at 13 (Mr. Reiss stating that new stores were part of the Company's "strategy for future years" and "long-term planning process," and that the Company "marr[ies] our expected growth with our supply chain and our ability to produce products"). Plaintiff alleges that, taken together, these statements gave investors the "misleading impression" that the Company's inventory levels "supported increased demand and continued growth in line with historical trends." AC ¶¶ 45, 62, 70. Plaintiff also alleges that, "[i]n reality" Canada Goose expected by August 2018 that its "[FY2020] revenue was expected to grow at only half the rate that the Company's revenue had grown in prior years." AC ¶ 70.  The Amended Complaint does not allege any facts in support of that allegation. *See id.*

In the same August 9, 2018 earnings call for Q1 2019 cited at length in the Amended Complaint, Mr. Reiss disclosed that "people are buying their parkas early," though he declined to "speculate on what is going to happen in the future quarters" as to whether first and second quarter DTC revenues would continue to grow "at similar rates" in the coming years. Q1 2019 Earnings Call Tr. at 5, 14 (analyst noting that Mr. Reiss had "mentioned that people are buying parkas early" and asking Mr. Reiss if you "foresee a time where you're going to see your [DTC] business growing at similar rates in the first versus the back half [of the fiscal year]" in the next several years); *id.* at 13 (Mr. Reiss stating that "people have been buying Canada Goose products early for years"). Despite these disclosures, Plaintiff alleges that the Company failed to disclose that customers in the Company's DTC segment were purchasing parkas earlier in FY2019 compared to prior years, which negatively impacted its revenues in the third and fourth quarters of that year. AC ¶ 70.

*Alleged Misstatements in Second Quarter of FY2019 (November 14, 2018)*. The Company reported its financial results for Q2 2019 on November 14, 2018, and disclosed that its inventories had grown by approximately 46% y-o-y, while its revenue grew by over 33%. AC ¶¶ 72, 74.  Mr. Sinclair acknowledged the Company's "healthy level of inventory," but noted that this was "natural" given that the Company now had eleven stores (compared to five at the same time last year, as well as an additional website) and because "I think . . . that's consistent with the sorts of levels of revenue growth and network growth we're talking about." AC ¶ 83; Q2 2019 Earnings Call Tr. at 10, attached as Ex. I to the Crisp Decl. (analyst asking whether the increased inventory "changes your ability to chase demand at all . . . into the back half," or whether it was due to "timing shifts on store openings"). Mr. Reiss also noted that "there's more inventory available this year" in part due to new stores. AC ¶ 84; Q2 2019 Earnings Call Tr. at 13. He further stated that, "with such an outstanding first half of the fiscal year, we are in a strong position ahead of our peak selling season," and touted the success of the DTC channel. AC ¶¶ 75, 79. As the Company would inform investors throughout FY2019, it also noted that revenue continued to shift from wholesale to the DTC segment, meaning that "total revenue and profitability [were] increasingly concentrated in the third quarter." Q2 2019 6-K, attached as Ex. H to the Crisp Decl., MD&A at 22.

Plaintiff alleges that these statements – particularly Mr. Sinclair's statement that inventory levels were "consistent with the sorts of levels of revenue growth and network growth that we're talking about" – gave investors the same "misleading impression" that future growth rates would be "commensurate with historical trends," despite the Company's "expect[ation]" of lower growth in FY2020. AC ¶ 87. However, while the Company reported that it was expecting annual growth of "at least 30%'" for FY2019 (upgraded from its projection of "at least 20%'" that it announced at the start of FY2019), AC ¶ 75, it did not announce any projections regarding FY2020 revenue at

that time. Notwithstanding the Company's prior disclosure regarding early parka sales, Plaintiff again alleges that this fact (and its negative impact on the third and fourth quarters) was not disclosed. AC ¶ 87.

*Alleged Misstatements in Third Quarter of FY2019 (February 14, 2019)*. The Company reported its financial results for Q3 2019 on February 14, 2019, and disclosed that y-o-y inventory had grown by approximately 75% and its revenue by over 50%. AC ¶¶ 88-90.  The Company also reported that y-o-y gross profit increased to $257.3 million from $169.1 million, while y-o-y gross margin increased from 64.4% compared to 63.6%.[5] Q3 2019 6-K, attached as Ex. K to the Crisp Decl., MD&A at 4. The Company noted that it was building inventory "in advance of [FY2020]," and that it was "confident about next year and how [the Company will] be able to continue to deliver growth in future seasons," while again explaining that by "having more stores, by definition, we need more inventory."[6] Q3 2019 Earnings Call Tr. at 9, 12, attached as Ex. L to the Crisp Decl.; AC ¶¶ 98-100. Regarding the Company's efforts to build demand, Mr. Reiss also stated that, "by introducing newness in a[n] authentic and measured way, we excite our fans and create demand ahead of supply and we gradually have built into that over time." AC ¶ 95; Q3 2019 Earnings Call Tr. at 5.

The Company also announced its revised FY2019 outlook, reporting that it expected annual revenue growth in the mid-to-high thirties on a percentage basis, adjusted EBITDA margin expansion of at least 150 basis points compared to FY2018, and adjusted net income per diluted

---

[5] The Company's "gross profit" reflects its revenue less the "cost of sales" (*i.e.*, the cost of manufacturing products, including raw materials, labor, and overhead, as well as costs incurred in the Company's production, design, and merchandise departments). *See* Q1 2019 6-K, attached as Ex. F to the Crisp Decl., Consolidated Financials at 8. "Gross margin" reflects the Company's gross profit as a percentage of revenue. *Id.*

[6] As the Company would later disclose, the actual year-end results for FY2019 were consistent (and, in many cases, better) than the FY2019 outlook announced in Q3 2019, and the Company would announce plans to open eight new stores in FY2020. *See* Q4 2019 6-K, attached as Ex. M to the Crisp Decl., May 29, 2019 Press Release at 1-2 (reporting annual revenue growth of 40.5%, adjusted EBITDA margin expansion by 240 basis points, and adjusted net income per diluted share increase of 61.9%).

share increase in the mid-to-high forties on a percentage basis.[7] February 14, 2019 Press Release at 2-3; AC ¶ 91. In connection with this revised outlook, and consistent with its prior disclosure that "revenue and profitability [were] increasingly concentrated in the third quarter," the Company also disclosed that "a higher proportion of customers purchased product earlier in the second half of [FY2019] relative to the same period last year," meaning that the "back half of fiscal '19" "is more front-weighted to Q3 relative to last year." February 14, 2019 Press Release at 1; Q3 2019 Earnings Call Tr. at 8; AC ¶ 96. As the Amended Complaint concedes, "as a result of" these fully disclosed "timing shifts," the Company explicitly "cautioned investors to expect 'a naturally lower rate of speed in both channels through the remainder of the fiscal year.'" AC ¶ 96 (quoting Q3 2019 Earnings Call Tr. at 8). Following the announcement of its third quarter results, the Company's stock price fell nearly 13%. AC ¶ 103.

Notwithstanding the decline in the stock price after the February 14, 2019 release, Plaintiff alleges that the Company's optimistic statements in that release concerning its inventory, and Mr. Reiss's statement that "introducing newness" allowed the Company to "excite our fans and create demand ahead of supply," continued to mislead investors, because the Company was, in fact, building "inventories ahead of demand." AC ¶ 108. As a result, according to Plaintiff, these statements (and the Company's elevated inventories) continued to give the misleading impression that future demand and growth would be "commensurate with historical trends," when (it is alleged) the Company "expected" slower growth in FY2020. AC ¶ 108. Plaintiff alleges that the stock price "would have fallen further had Defendants revealed the true condition of the

---

[7] Revenue growth in the mid-to-high thirties on a percentage basis represented FY2019 revenue growth ranging from approximately $798 million (35% annual growth) to $821 million (39% annual growth). At the time of this February 14, 2019 disclosure, the Company had reported year-to-date revenue (including Q3 2019 revenue) of approximately $674 million, meaning that the Company was providing go-forward guidance to the market that Q4 2019 revenue would be between approximately $124 million (assuming 35% annual growth) and approximately $147 million (assuming 39% annual growth). *See* Q3 2019 Financials at 8. As the Amended Complaint concedes, the Company **outperformed** these projections and reported over $156 million in revenue for Q4 2019. AC ¶ 109.

Company," but again concedes that the Company "disclosed that timing shifts in the DTC could [negatively] impact the Company's [Q4 2019] financial results." AC ¶¶ 107-08.

***Disclosures for Fourth Quarter FY2019 (May 29, 2019).*** On May 29, 2019 (the close of the putative Class Period), Canada Goose announced that total revenue for FY2019 exceeded $830 million, an increase of over 40% compared to FY2018. AC ¶ 109; May 29, 2019 Press Release at 2. The Company also announced that revenue in its DTC segment – which the Company had sought to expand in FY2019 – exceeded $431 million, an increase of over 69% from FY2018. May 29, 2019 Press Release at 2. The Company reported fourth quarter revenue of $156.2 million, reflecting 25% y-o-y revenue growth. Although the Company had cautioned investors that the fourth quarter would see lower growth, the results were in line with analysts' expectations of $159 million and 27% y-o-y growth (*i.e.*, within $3 million and 2% respectively), and outperformed the upper range of the Company's projected Q4 2019 revenue of approximately $147 million (*see supra* at 9 n.7). *See* AC ¶¶ 109, 119 (quoting an analyst describing the "shortfall in revenue and inventory build in Q4" as being "modest"); FY2019 Form 20-F at 63, attached as Ex. O to the Crisp Decl.

The Company also disclosed its plans to open eight new retail stores in FY2020, and stated that it expected FY2020 annual revenue growth of "at least 20%." AC ¶ 110; May 29, 2019 Press Release at 5; Q4 2019 and FY 2019 Earnings Call Tr. at 8-9, attached as Ex. N to the Crisp Decl. While Plaintiff alleges that investors were "shocked" by this news (AC ¶ 115), the Company had, only one year earlier, projected this exact rate of growth for FY2019 (and projected FY2020 growth was higher than the "mid-to-high teens" growth that had been projected for FY2018). *See* June 15, 2018 Press Release at 2-3; June 2, 2017 Press Release at 3, attached as Ex. C to the Crisp

Decl. In any event, projected growth of "at least 20%" was in line with analyst estimates of 26% growth for FY2020. AC ¶ 115.

### C.     Control Person Allegations Against the Individual Defendants and the Bain Defendants

Plaintiff alleges that the Individual Defendants are liable as control persons given that their high-level positions as officers, directors, and/or their substantial ownership of Canada Goose stock allowed them to exert influence and control over the decision-making of the Company. AC ¶¶ 156-57. Plaintiff further alleges that the Bain Defendants controlled the Company by virtue of their share ownership, power to elect and remove directors, and ability to approve corporate transactions. AC ¶ 157. Plaintiff also alleges that the Individual Defendants and the Bain Defendants "were provided with, or had unlimited access" to the Company's reports and other materials, though it fails to identify any such documents, and otherwise fails to plead any facts showing that the Bain Defendants "culpably participated" in the alleged underlying fraud. AC ¶ 156.

## ARGUMENT

To state a viable claim under Section 10(b) of the Securities and Exchange Act of 1934 and Rule 10b-5, a complaint alleging material misstatements must "(1) specify the statements that the plaintiff contends were fraudulent, (2) identify the speaker, (3) state where and when the statements were made, and (4) explain why the statements were fraudulent." *Rombach*, 355 F.3d at 170. Rule 9(b) demands that "a party must state with particularity the circumstances constituting fraud." Fed. R. Civ. P. 9(b). Congress added further pleading burdens when it passed the PSLRA in 1995 to curtail meritless securities litigation. *See Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 315 (2007). The PSLRA requires plaintiffs to "specify each statement alleged to have been misleading, the reason or reasons why the statement is misleading, and, if an allegation

regarding the statement or omission is made on information and belief, the complaint shall state with particularity all facts on which that belief is formed." 15 U.S.C. § 78u-4(b)(1). Allegations that are conclusory or unsupported by factual assertions do not satisfy this heightened pleading standard. *ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 99 (2d Cir. 2007).

# I.   PLAINTIFF FAILS TO ALLEGE ANY FALSE OR MISLEADING STATEMENT OR OMISSION

Plaintiff's claims rest on two core allegations: (1) that Defendants' purported statements that the Company was "building demand ahead of supply," along with its "inflated inventories and ramp in the production of finished goods," gave investors "the misleading impression that the Company would continue to experience increasing demand and accelerated growth commensurate with historical trends"; and (2) the Company failed to disclose that customers in the Company's DTC segment were purchasing higher-margin, heavy weight parkas earlier in FY2019, which negatively impacted its revenues in the third and fourth quarters of that year. *See* AC ¶¶ 70, 87, 108. The Amended Complaint does not plausibly allege that any of Defendants' statements were false or misleading, nor does it comply with the heightened pleading requirements imposed on plaintiffs in federal securities actions, which required Plaintiff to identify particular, actionable statements and provide the specific reason why each statement is alleged to have been false or misleading.[8]

---

[8] Plaintiff was also required to "specify each statement alleged to have been misleading [and] the reason or reasons why the statement is misleading" *Rombach*, 355 F.3d at 170. The Amended Complaint does not specify each statement alleged to have been false, but instead cites numerous statements contained in various earnings announcements, many concededly accurate, and then quotes at length from a public statement, claiming that the statements in their entirety "were materially false or misleading and/or omitted material facts" for reasons that are virtually identical with regard to each challenged statement. AC ¶¶ 70, 87, 108. The Amended Complaint does not explain how those supposedly adverse "facts" relate to each cited statement, making it virtually impossible to determine the specifics of Plaintiff's allegations and warranting dismissal. *See In re Deutsche Bank Aktiengesellschaft Sec. Litig.*, 2017 WL 4049253, at *5 (S.D.N.Y. June 28, 2017) (rejecting "conclusory formula" of repeating same "adverse facts" to cover "all of the allegedly material misrepresentations," warranting dismissal "on this basis alone"); *Boca Raton Firefighters & Police Pension Fund v. Bahash*, 506 F. App'x 32, 38–39 (2d Cir. 2012) (affirming dismissal where plaintiffs followed allegations that statements were "materially false and misleading," with "a bullet-point list . . . of true facts, which were then known to or recklessly disregarded by each of the Defendants").

**A.     The Amended Complaint Does Not Allege Any False or Misleading Statements Regarding the Company's Inventory Levels or Future Demand**

> **1.   *Canada Goose Did Not State That Future Revenue Growth or Demand Would Be "Commensurate With Historical Trends"***

Plaintiff insists that Canada Goose provided investors with what the Amended Complaint describes as a "misleading impression" that the Company would "continue to experience increasing demand and accelerated growth commensurate with historic trends" – an impression created, according to the Amended Complaint, based on statements regarding current inventory levels. AC ¶ 70. But the Company did not state (and the Amended Complaint nowhere claims that the Company stated) that it would "continue to experience increasing demand and accelerated growth commensurate with historic trends" – rather, this is language conjured by Plaintiff to characterize other factual statements. Needless to say, Plaintiff cannot predicate liability on alleged misstatements that were not, in fact, made. *See In re Stemline Therapeutics, Inc. Sec. Litig.*, 313 F. Supp. 3d 543, 549 (S.D.N.Y. 2018) (dismissing complaint because, "[w]hile Plaintiffs' primary argument for their . . . claim is that [the company] falsely claimed it had eliminated the risk of [an adverse side effect in a clinical drug trial] . . . it is clear that [the company] never claimed that it had eliminated [such] risks.").

Plaintiff also suggests that Canada Goose's disclosures of "inflated inventories" combined with statements regarding the Company's ability to build or create "demand ahead of supply" to give investors a "misleading impression" that the Company would "continue to experience increasing demand and accelerated growth commensurate with historical trends." AC ¶¶ 87, 108. The Amended Complaint does ***not*** claim that Canada Goose's disclosures of its inventories were "inflated" in the sense that those disclosures were wrong or false. Rather, Plaintiff deploys the phrase "inflated inventories" to suggest that Canada Goose – by ***accurately*** reporting its growing inventory position – was conditioning the public to expect that its sales would similarly grow to

13

soak up that growing inventory. In any event, the Company said no such thing. *See Stemline Therapeutics*, 313 F. Supp. 3d at 549.

> ### 2. Defendants' Statements About Current Inventory Levels and Future Demand Did Not Create Any "Misleading Impression" Regarding Future Revenues

Throughout the relevant period, Canada Goose disclosed a series of projections regarding its anticipated revenue growth. *See e.g.,* AC ¶¶ 75, 91; November 14, 2018 Press Release at 2-3. **Plaintiff does not challenge these disclosures**, which provided investors with the Company's unvarnished view regarding forward-looking revenue growth. Even in the unlikely event that the Company's statements regarding its *current* inventory levels could have reasonably created a "misleading impression" concerning its anticipated *future* revenue growth, the Company's actual disclosure of its concededly-accurate revenue projections would have removed any misimpression. *See In re Skechers USA, Inc. Sec. Litig.,* 2020 WL 1233759, at *9 (S.D.N.Y. Mar. 12, 2020).

"The key question in considering the misleading nature of a statement is whether defendants' representations, taken together and in context, would have misle[d] a reasonable investor," and "not whether it is susceptible to any interpretation that could generate misleading impressions when read in isolation." *Id.* at *9. The Amended Complaint repeatedly suggests that the mere disclosure of "inflated inventory" and a "ramp in the production of finished goods" created the alleged misleading impression (AC ¶¶ 70, 87, 108), yet Plaintiff does not plead any facts showing that these statements were false in any way. *See Opthotech*, 2019 WL 4464802, at *27. Put simply, the *accurate* disclosure of increased inventory growth rates could not reasonably create a "misleading impression" (or, for that matter, promise investors in any way) that the Company would meet certain milestones regarding future revenue growth. *See In re Sanofi-Aventis Sec. Litig.*, 774 F. Supp. 2d 549, 569 (S.D.N.Y. 2011) (reasonable investors would not be misled by a "statement conveying a clear and accurate historical fact"); *In re Gen. Electric Sec. Litig.*,

14

2020 WL 2306434, at *9 (S.D.N.Y. May 7, 2020) ("A reasonable investor would not understand these factual statements to be broader than they were or to constitute a guarantee of success.").

Indeed, Plaintiff's failure to "adequately explain the reason(s) why the alleged misstatements were false when made" dooms these claims. *In re Nokia Corp. Sec. Litig.*, 423 F. Supp. 2d 364, 392 (S.D.N.Y. 2006); *see also Opthotech*, 2019 WL 4464802, at *27. For example, the Amended Complaint cites the following disclosures, each of which is plainly inactionable:

- Mr. Reiss stated that new store openings and increased tourist traffic were "to [him] … a direct result of how we build demand ahead of supply." AC ¶ 62; Q1 2019 Earnings Call Tr. at 5;

- Mr. Reiss stated that "by introducing newness in a[n] authentic and measured way, we excite our fans and create demand ahead of supply and we gradually have built that over time." AC ¶ 95; Q3 2019 Earnings Call Tr. at 5; and

- Mr. Sinclair stated that the Company's "healthy level of inventory" was "natural" given that the Company now had eleven stores (compared to five at the same time last year, as well as an additional website) and that "[he thought] … that's consistent with the sorts of levels of revenue growth and network growth we're talking about." AC ¶ 83; Q2 2019 Earnings Call Tr. at 10.

These statements include no specific predictions or guarantees regarding "levels of revenue growth." *See Skechers USA*, 2020 WL 1233759, at *9. Plaintiff does not explain whether or how each statement is false. Such statements could not have given reasonable stockholders a false and misleading impression regarding the Company's anticipated revenue growth.

Crucially, the Amended Complaint also contains no particular allegation that Defendants knew any of these purported "misleading impressions" were false at the time they were made. "In order for a statement to be false or misleading, a plaintiff must allege that the speaker was aware of adverse information at the time he spoke." *In re Sierra Wireless, Inc. Sec. Litig.*, 482 F. Supp. 2d 365, 378 (S.D.N.Y. 2007); *see also Oklahoma Firefighters Pension & Ret. Sys. v. Xerox Corp.*, 300 F. Supp. 3d 551, 577 (S.D.N.Y. 2018), *aff'd sub nom. Arkansas Pub. Emps.' Ret. Sys. v. Xerox Corp.*, 771 F. App'x 51 (2d Cir. 2019) (plaintiff failed to allege statement was misleading when it

did not "adduce particular facts supporting the claim that [defendants] knew of any fact—indeed, that any fact existed—that would call into question" the challenged statement). This fundamental failure alone warrants dismissal of this aspect of Plaintiff's claim.

The only information that, according to the Amended Complaint, renders the purported misstatements false or misleading in any way is the Company's projection for FY2020 revenue, disclosed on May 29, 2019, the last day of the Class Period. It is this projection that, according to Plaintiff, finally confirmed that revenues might not grow in line with historical rates. AC ¶ 110. But these projections (along with the disclosure that Canada Goose would now be building inventory in advance of demand) were made months after the challenged statements. Plaintiff cannot simply allege in conclusory terms that this corrective information ***must have*** existed months earlier when Defendants made the challenged statements; nor does it suffice under applicable pleading standards to insist without more that the Company should have disclosed its FY2020 revenue projections earlier than it did. *See, e.g.*, *Novak v. Kasaks*, 216 F.3d 300, 309 (2d Cir. 2000) ("allegations that defendants should have anticipated future events and made certain disclosures earlier do not suffice to make out a claim of securities fraud"); *Acito v. IMCERA Grp., Inc.,* 47 F.3d 47, 53 (2d Cir. 1995) ("defendants' lack of clairvoyance simply does not constitute securities fraud").

In any event, the Amended Complaint misconstrues even the supposed ***corrective*** disclosure in an effort to manufacture a claim where there is none. In May 2019, Canada Goose did not, as Plaintiff alleges, project that FY2020 revenue would grow "***at only half the rate*** that the Company's revenue had grown in prior years" (*i.e.*, growth of only 20% compared to 39% and 45% in FY2017 and FY2018, respectively). It projected growth of "***at least*** 20%," meaning

expected growth of 20% **or more** (up to and including the growth rates observed in prior years).[9]

That Plaintiff felt compelled to mischaracterize in this obvious way an otherwise plain-meaning

projection, in hopes of conjuring an actionable "misleading impression," speaks volumes.

> 3. *Defendants' Statements Regarding Inventory Levels and Future Demand Were Non-Actionable Statements of Corporate Optimism or Puffery*

Other challenged disclosures in the Amended Complaint are merely vague and optimistic

statements regarding the Company's inventory levels and anticipated future demand (*see* AC ¶¶

62, 64, 67, 79, 81, 84, 95, 102), including, for example, Mr. Reiss's comment on the Q1 2019

earnings call that he was "confident" that the Company had "the production capacity to make the

units that we're going to need to meet the demand" (AC ¶ 67), and his comment on the Q2 2019

earnings call that the Company's "execution in the first half of fiscal 2019 was exceptional,"

putting Canada Goose in "an amazing position going into our peak selling season." AC ¶ 79.

Courts have routinely rejected similar attempts to assert liability based on statements that are

unaccompanied by assurances or "definite indicia of performance." *See Opthotech*, 2019 WL

4464802, at *9 n.12 (rejecting claims premised on defendants' descriptions of a clinical trial as

"well conducted" and "robust"); *IBEW Local Union No. 58 Pension Tr. Fund & Annuity Fund v.

Royal Bank of Scotland Grp., PLC*, 783 F.3d 383, 392 (2d Cir. 2015) (statements of corporate

optimism are actionable only if "they are worded as guarantees or are supported by specific

statements of fact"). Canada Goose "was not required to take a gloomy, fearful or defeatist view

of the future." *Shields v. Citytrust Bancorp, Inc.*, 25 F.3d 1124, 1129-30 (2d Cir. 1994); *City of

Roseville Emps.' Ret. Sys. v. Nokia Corp.*, 2011 WL 7158548, at *6 (S.D.N.Y. Sept. 6, 2011)

(statements of corporate optimism are non-actionable "regardless of whether that optimism was,

---

[9] Nor would investors have been "shocked" by this announced growth rate. AC ¶ 115. The Company had projected revenue growth "in the mid-to-high teens" for FY2018 and revenue growth of "at least 20%" for FY2019. *See* June 2, 2017 Press Release at 3; June 15, 2018 Press Release at 2.

by hindsight, unwarranted"). To show otherwise, Plaintiff would be required to plead specific facts showing that Defendants knew of adverse facts that would call into question their general optimism – something the Amended Complaint makes no attempt to do. *See Ressler v. Liz Claiborne, Inc.*, 75 F. Supp. 2d 43, 55 (E.D.N.Y. 1998), *aff'd sub nom. Fishbaum v. Liz Claiborne, Inc.*, 189 F.3d 460 (2d Cir. 1999) (plaintiff's "generalized claims regarding the existence of [adverse facts]" "at the time defendants made their optimistic predictions … fail to comport with the particularity requirements of Rule 9(b)").[10]

### 4. Defendants' Statements Regarding Inventory Levels and Future Demand Are Non-Actionable Forward-Looking Statements

#### i. The PSLRA Safe Harbor

Many of the statements regarding inventory levels and anticipated demand upon which Plaintiff appears to base its claim (AC ¶¶ 58, 60, 66, 75, 76, 79, 81, 93, 96) are also forward-looking statements, and thus protected by the PSLRA's safe harbor provision from liability, so long as they were (1) identified and accompanied by meaningful cautionary language, (2) immaterial, or (3) not made with actual knowledge that they were false or misleading. *Slayton*, 604

---

[10] Several of the statements challenged in the Amended Complaint cannot support a claim under the federal securities laws because they are statements of opinion. *See* AC ¶¶ 75, 76, 79, 83, 84, 93, 99. These statements "us[e] phrases classically indicative of opinion such as 'I believe' and 'I think.'" *Gregory v. ProNai Therapeutics Inc.*, 297 F. Supp. 3d 372, 406 (S.D.N.Y. 2018), *aff'd*, 757 F. App'x 35 (2d Cir. 2018). Several challenged statements concerning inventory and demand – *e.g.,* Mr. Reiss's statement that new store openings were "*to me* . . . a direct result of how we build demand ahead of supply," and Mr. Sinclair's statement that inventory levels were "healthy" and "consistent" with anticipated revenue growth – necessarily involve subjective conclusions about "how to analyze data and interpret results, and neither lends itself to objective conclusions." *In re Sanofi Sec. Litig.*, 87 F. Supp. 3d 510, 543, 547 (S.D.N.Y. 2015); *see also Fialkov v. Microsoft Corp.*, 72 F. Supp. 3d 1220, 1231 (W.D. Wash. 2014), *aff'd.* 692 F. App'x 491 (9th Cir. 2017) (defendant's "characterization of [its] inventory levels as being 'in a healthy range'" is "the sort of vague statement of opinion that is insufficient to support a claim of securities fraud"). In any event, for a statement of opinion to be actionable, Plaintiff must "allege that [the] defendant's opinions were both false and not honestly believed at the time they were made." *Fait v. Regions Fin. Corp.*, 655 F.3d 105, 113 (2d Cir. 2011). But the Amended Complaint offers nothing at all – let alone particularized allegations – to suggest that these opinions were false or not honestly believed when expressed. *See Podany v. Robertson Stephens, Inc.*, 318 F. Supp. 2d 146, 154 (S.D.N.Y. 2004) (plaintiff must allege "provable facts to demonstrate that the statement of opinion is both objectively and subjectively false"). Nor has Plaintiff pleaded facts showing that Canada Goose withheld information "that would have potentially undermined [its] optimistic projections." *Tongue v. Sanofi*, 816 F.3d 199, 212 (2d Cir. 2016). Plaintiff must do more than "merely assert that the opinion reached by defendant[] was unreasonable." *City of Monroe Emps.' Ret. Sys. v. Hartford Fin. Servs. Grp., Inc.,* 2011 WL 4357368, at *13 (S.D.N.Y. Sept. 19, 2011).

F.3d at 766. For example, the Company's statements regarding the amount of inventory necessary to meet future demand are quintessentially forward-looking statements. AC ¶¶ 58, 76, 79; *see also* Q1 2019 6-K, MD&A at 1 (using terms such as "expect" and "continue," and noting that such disclosures "include statements regarding our intentions, beliefs or current expectations" concerning the Company's financial condition, growth, strategies, and business plan); Q2 2019 6-K, MD&A at 1 (same); February 14, 2019 Press Release at 5 (same). These forward-looking statements were accompanied by robust cautionary language, including a clear warning that the Company's future performance included risks relating to its "ability to forecast [its] inventory needs" and "to accurately forecast demand for its products." *See e.g.,* Q1 2019 6-K, MD&A at 2; August 9, 2018 Press Release at 4; Q1 2019 Earnings Call Tr. at 4; *see also* FY2018 Form 20-F at 9, 11, 14, attached as Ex. D to the Crisp Decl.[11]

When the Company announced its revised outlook for FY2019 at the end of the second and third quarters, it explicitly warned that, despite those estimates, "[a]ctual results could vary materially as a result of numerous factors," including those risk factors listed above. *See* November 14, 2018 Press Release, at 3; February 14, 2019 Press Release, at 3. This cautionary language (and other, similar, language) adequately cautioned investors about the risks involved in assessing the appropriate amount of inventory needed to meet future demand for the Company's products, as well as the risk that the Company's expected future results might not align with analyst expectations. *See, e.g.*, *In re WEBMD Health Corp. Sec. Litig.,* 2013 WL 64511, at *8 (S.D.N.Y. Jan. 2, 2013) (cautionary language regarding unpredictability of revenue was sufficient to protect defendant's statements regarding its revenue projections under the safe harbor); *In re XM Satellite*

---

[11] Each of the Company's quarterly MD&As, Press Releases, and Earnings Calls filed during the Class Period also incorporated by reference the "Risk Factors" disclosed in the FY2018 Annual Report. *See* FY2018 Form 20-F at 9-30 (containing the same risk factors).

*Radio Holdings Sec. Litig.*, 479 F. Supp. 2d 165, 185 (D.D.C. 2007) (defendants' statements regarding future demand protected when the company warned that its forecasts may differ from actual results "due to a number of factors," including "future demand for the [c]ompany's service"). Separately, these statements satisfy the PSLRA safe harbor because, as explained below, Plaintiff has further failed to allege the "actual knowledge" required to avoid the safe harbor's protection. 15 U.S.C. § 77z-2(c)(1); *see WEBMD Health Corp.*, 2013 WL 64511, at *8.

## ii. The "Bespeaks Caution" Doctrine

The statements regarding inventory levels and demand were similarly protected under the "bespeaks caution" doctrine. *Iowa Pub. Emps.' Ret. Sys. v. MF Global, Ltd.*, 620 F.3d 137, 142 (2d Cir. 2010). As explained above, such statements were expressly identified as forward-looking statements and were accompanied by meaningful cautionary language. *See Lopez v. Ctpartners Exec. Search Inc.*, 173 F. Supp. 3d 12, 39 (S.D.N.Y. 2016) (the bespeaks caution doctrine protected statements regarding defendants' preliminary earnings when cautionary language identified various risks that could cause the actual earnings results to vary).

## B. The Amended Complaint Does Not Allege Any False or Misleading Statements Regarding The So-Called "Timing Shift" – Which In Fact Was Disclosed

As a second category of alleged misstatements, Plaintiff claims that Canada Goose failed to adequately disclose during the first three quarters of FY2019 that customers "were purchasing higher-margin, heavy weight parkas" earlier in the year, which, Plaintiff also claims, would "negatively impact[]" the Company's performance in the third and fourth quarters. AC ¶¶ 70, 87, 108. As discussed above, the Amended Complaint does not specify which of the Company's statements omitted this information, or was required to include it; instead, it merely lists dozens of statements made in connection with the Company's quarterly financial reporting and leaves it to the Court and Defendants to connect a particular statement with the alleged omission.

This claim fails because the disclosures on which Plaintiff relies in the Amended Complaint, when read in full, informed investors in plain terms about the very timing shift that Plaintiff nonetheless insists was hidden. The Company told investors in Q1 2019 that "people are buying their parkas early." Q1 2019 Earnings Call Tr. at 5; *see also id.* at 14 (analyst noting that Mr. Reiss had "mentioned that people are buying parkas early"). Plaintiff's insistence that the Company "failed to disclose" this information (AC ¶¶ 70, 87) is therefore demonstrably false and not well-pleaded. It goes without saying that Plaintiff cannot claim that reasonable investors were misled when the Company disclosed the very information Plaintiff claims was omitted. *See In re Pretium Res.*, 256 F. Supp. 3d at 476 ("[Defendant's] disclosure of the very information Plaintiffs contend [defendant] omitted therefore renders these purported omissions immaterial as a matter of law.").

Plaintiff even concedes that Canada Goose disclosed the timing shift of DTC purchases in connection with its Q3 2019 earnings, and instead seeks to nitpick that disclosure, insisting that the Company did not disclose the "full, negative" impact of that shift. AC ¶ 108. This quibble falls flat, as the Company informed investors of precisely the shift that Plaintiff now complains was not disclosed when it told investors that "customers purchased product earlier in the second half of [FY2019] relative to the same period last year," and thus the "back half" of the fiscal year "is more front-weighted to Q3 relative to last year." Q3 2019 Earnings Call Tr. at 8; February 14, 2019 Press Release at 1; AC ¶ 96. For good measure, the Company also cautioned investors that this earlier purchasing "implies a naturally lower rate of speed in both channels through the remainder of the fiscal year" – in other words, it told investors that revenue growth would likely slow in Q4 2019. AC ¶¶ 49, 96. Common sense dictates that Plaintiff's claim premised on the ***omission*** of

precisely that information cannot survive dismissal. In any event, Q4 2019 revenue outperformed the Company's projected revenue for that quarter. *See supra* at 9 n.7.

Plaintiff's claim should be dismissed for the independent reason that the Amended Complaint does not plead specific facts showing that Defendants knew, during the first half of FY2019, that this "timing shift" would have a negative impact on the last two quarters.[12] *In re Elan Corp. Sec. Litig.*, 543 F. Supp. 2d 187, 213 (S.D.N.Y. 2008) (plaintiffs failed to plead actionable omission when they "allege[d] no facts indicating that Defendants were aware of any of the [alleged undisclosed adverse facts]").

Plaintiff cannot rely only on Defendants' knowledge of this "timing shift" to support a claim that Defendants ***knew*** it would negatively impact future revenue. Indeed, Plaintiff concedes that Defendants "would not speculate" when asked about the potential future impact of these fully disclosed early-year sales. AC ¶ 63; Q1 2019 Earnings Call Tr. at 14. Defendants were also under no obligation to assume (let alone publicly speculate) that these early sales would "negatively impact" revenue in Q3 and Q4 2019. *See IMCERA Grp.*, 47 F.3d at 53 ("defendants' lack of clairvoyance simply does not constitute securities fraud"). Given the Company's repeated disclosure that "total revenue and profitability [were] increasingly concentrated in the third quarter," it would have made no sense for the Company to expect slower growth in the third quarter, in which y-o-y revenue ultimately increased by over 50%. Q1 2019 6-K, MD&A at 16.

---

[12] Indeed, Plaintiff has pleaded no facts to show that the Company's Q3 2019 financial results were adversely affected by this timing shift. To the contrary, as the Amended Complaint acknowledges, y-o-y revenues for Q3 2019 ***increased by over 50%***. AC ¶ 89. Plaintiff attempts to cast the Q3 2019 results in a negative light by noting that gross margins in that quarter "increased [by] ***only 1%*** y-o-y." *Id.* But Plaintiff pleads no facts showing the relevance of this apples-to-oranges comparison.

## II.      PLAINTIFF FAILS TO PLEAD SCIENTER

The Amended Complaint also fails to satisfy the PSLRA's requirement that it "state with particularity facts giving rise to a strong inference that the defendant acted with the requisite state of mind." 15 U.S.C. § 78u-4(b)(2). In *Tellabs*, the Supreme Court held that to qualify as "strong," an inference in support of scienter "must be more than merely plausible or reasonable—it must be cogent and at least as compelling as any opposing inference of nonfraudulent intent." 551 U.S. at 314. Such an inference must be established for *each* defendant; also, to establish that Canada Goose acted with scienter, Plaintiff must plead facts showing that at least one of the Individual Defendants acted with scienter. *See Teamsters Local 445 Freight Div. Pension Fund v. Dynex Capital, Inc.*, 531 F.3d 190, 195 (2d Cir. 2008). The Amended Complaint flunks these requirements.

### A.      The Amended Complaint Does Not Allege Actual Knowledge of Falsity

The Amended Complaint principally challenges forward-looking statements (*see supra* at Section I.A.4), and so Plaintiff must plead facts sufficient to show that they were "made or approved by [an executive officer] with *actual knowledge* by that officer that the statement was false or misleading." *Slayton*, 604 F.3d at 762.  The Court must "assess all of the allegations holistically" to make a "practical judgment" as to whether it is "at least as likely as not" that Defendants acted with "actual subjective knowledge" as to the alleged falsity of the challenged forward-looking statements. *Id*. at 776 & n.9.

The Amended Complaint pleads no facts, let alone with sufficient particularity, that raise a credible inference of actual knowledge by any Defendant. It cites to no confidential witnesses, and references no Company documents, to demonstrate the state of any Defendant's knowledge at a relevant time. Instead, Plaintiff baldly asserts that "it is reasonable to infer that Defendants" were aware of changes in demand for the Company's products given supposed (and in any event un-

pleaded) "insight" by the Company into future demand trends. AC ¶¶ 127-28. Such generalized allegations do not establish actual knowledge of falsity at the pleading stage. *See In re Aratana Therapeutics Inc. Sec. Litig.*, 315 F. Supp. 3d 737, 765 (S.D.N.Y. 2018) (scienter not properly pleaded when complaint "[did] not cite any internal documents or confidential witness statements tending to suggest that defendants knowingly deceived shareholders" and "lack[ed] any concrete allegations whatsoever regarding defendants' knowledge").

**B.      The Amended Complaint Otherwise Fails to Plead Scienter**

Even if Plaintiff is not required to show actual knowledge for one or more challenged statements, it still was required to allege facts sufficient to "show either (1) that defendants had the motive and opportunity to commit fraud, or (2) strong circumstantial evidence of conscious misbehavior or recklessness." *ECA, Local 134 IBEW Joint Pension Trust of Chicago v. JP Morgan Chase Co.*, 553 F.3d 187, 198 (2d Cir. 2009). Here, Plaintiff has done neither.

*1.    Plaintiff's Generalized Allegations Concerning Defendants' Incentives To Maintain a High Stock Price Do Not Show Motive*

Plaintiff cannot properly allege that one or more Defendants were "motivated to maintain the market's perception that Canada Goose was a 'hyper growth' company" (*see* AC ¶ 122) in order to maintain an elevated stock price; courts have long held that a plaintiff cannot establish scienter at the pleading stage by alleging "that defendants were motivated to defraud the public because an inflated stock price would increase their compensation." *IMCERA Grp.*, 47 F.3d at 54. Nor can Plaintiff rely on its bare allegation that Mr. Reiss was incentivized to inflate the Company's stock price in order to increase his personal net worth. *See, e.g.*, *Tamar v. Mind C.T.I., Ltd.*, 723 F. Supp. 2d 546, 556 (S.D.N.Y. 2010) ("Generally, the bare allegation of a shareholder's incentive to maximize the corporation's stock price is insufficient to satisfy the scienter element of a securities fraud claim … [b]ecause this incentive is common to all shareholders."); *In re*

*Agnico-Eagle Mines*, 2013 WL 144041, at *16 (S.D.N.Y. Jan. 14, 2013) (scienter not properly pleaded when based on allegation that defendants "were awarded tens of millions in incentive compensation which was directly tied to the Agnico's stock price" and "set unreasonably aggressive goals [for growth] and tied them to compensation").

2.   *Plaintiff's Stock Sale Allegations Do Not Reveal Any Motive to Defraud*

Plaintiff's scienter allegations rely mainly on a single stock sale by the Bain Defendants and Mr. Reiss (the "Stock Sales"). Yet the Amended Complaint pleads no facts to show that those sales were "unusual or suspicious" so as to raise any inferences of scienter. *In re Gildan Activewear, Inc. Sec. Litig.*, 636 F. Supp. 2d 261, 270 (S.D.N.Y. 2009). In determining whether insider stock sales are "unusual or suspicious," courts consider factors such as the amount of net profit from the sales, the portion of holdings sold, the change in volume of insider sales, and the number of insiders selling. *Rothman v. Gregor*, 220 F.3d 81, 94-95 (2d Cir. 2000). Conspicuously, Plaintiff has alleged no such "unusual or suspicious" facts here.

Plaintiff's trading allegations do not establish a credible inference of scienter. First, the Stock Sales occurred on the same day, in a pre-planned secondary equity offering. *See* AC ¶¶ 124-25; November 26, 2018 Prospectus Supplement, attached as Ex. J to the Crisp Decl. Share sales conducted through large registered offerings are, of course, common, and the manner in which the Stock Sales occurred undermines any inference that they were done improperly or while the selling Defendants had knowledge of undisclosed adverse information. *See City of Omaha Police & Fire Ret. Sys. v. Evoqua Water Techs. Corp.*, 2020 WL 1529371, at *25 (S.D.N.Y. Mar. 30, 2020) ("[T]he fact that the Individual Defendants sold only in public offerings cuts against an inference of scienter, because it suggests a motive that is generally possessed by most corporate directors and officers."); *In re AFC Enters., Inc. Sec. Litig.*, 348 F. Supp. 2d 1363, 1373 (N.D. Ga. 2004) ("Although the amount of stock sold during the Class Period is substantial, the timing of these

sales was quite ordinary. It is not uncommon or otherwise suspicious to sell stock in association with a public offering; indeed, the sale of stock is often the point of the offering."), *aff'd sub nom.*, *Exec. Risk Indem., Inc. v. AFC Enters.*, 279 F. App'x 793 (11th Cir. 2008).[13] Second, the Bain Defendants, which Plaintiff does not allege had any involvement in the purported misstatements, sold the vast majority of the shares in the Stock Sales. *See* AC ¶¶ 124-25; *Russo v. Bruce*, 777 F. Supp. 2d 505, 517-18 (S.D.N.Y. 2011) (concluding that it was "problematic for plaintiffs' theory" of scienter that the individual defendant who allegedly engaged in insider trading was not alleged to have "participated in the fraud").[14] Third, the losses suffered by Mr. Reiss (over $458 million) and the Bain Defendants (over $703 million) when the Company's stock declined in February and May 2019 far exceeded their sales proceeds. It is "nonsensical" to ascribe a dishonest motive where the seller "suffered significant losses in their holdings." *Plumbers & Steamfitters Local 773 Pension Fund v. CIBC*, 694 F. Supp. 2d, 287, 299 (S.D.N.Y. 2010). Those combined losses of approximately $1.16 billion far exceed the approximately $574 million in proceeds those Defendants realized in the Stock Sales, and dwarf any profit on those sales (which the Amended Complaint does not plead). The circumstances surrounding the alleged Stock Sales therefore fail to establish that Defendants "benefited in some concrete and personal way from the purported fraud." *ECA*, 553 F.3d at 198.

Likewise, Plaintiff has not alleged facts showing that the Stock Sales were suspicious in amount. Mr. Reiss's sale of 1.5 million shares of stock represented only 7% of his holdings of Company stock, while the Bain Defendants' sale of approximately 7.5 million shares represented

---

[13] Indeed, Mr. Reiss and the Bain Defendants have only ever sold shares of the Company's stock in connection with public offerings, as they each sold shares in connection with the Company's IPO.  March 16, 2017 Final Prospectus at 117, attached as Ex. B to the Crisp Decl.

[14] In addition, one of the two Individual Defendants (Mr. Sinclair) did not sell any shares during the Class Period. AC ¶ 24 & n.4.

only 19.5% of their holdings.[15] AC ¶ 124; November 26, 2018 Prospectus Supplement at S-10. Neither amount is sufficient to show motive. *See, e.g.*, *Gildan*, 636 F. Supp. 2d at 271 (no scienter pleaded when sales represented "only 22.5%" of defendant's holdings); *Malin v. XL Capital Ltd.*, 499 F. Supp. 2d 117, 153 (D. Conn. 2007) (sales of 14.42% and 30.84% of total holdings not unusual); *In re eSpeed Inc. Sec. Litig.*, 457 F. Supp. 2d 266, 291 (S.D.N.Y. 2006) (sales of 10.9% and 17.4% of holdings not suspicious). Moreover, the Amended Complaint alleges only the ***proceeds*** from the Stock Sales, and does not allege facts showing any corresponding ***profit***. This further discredits Plaintiff's stock sale scienter allegations. *See Gildan*, 636 F. Supp. 2d at 270-71 (scienter claims insufficient when, among other things, plaintiff "fail[ed] to allege any facts relating to the amount of profit the Individual Defendants garnered from their sales"); *In re BISYS Sec. Litig.*, 397 F. Supp. 2d 430, 445 (S.D.N.Y. 2005) ("[G]ross proceeds, standing alone, tell us very little."). Finally, Plaintiff has made no attempt to allege that the Stock Sales were unusual relative to other of Defendants' sales. *See Opthotech*, 2019 WL 4464802, at *16 ("Most importantly, the [complaint] fail[s] to plead any facts that would suggest that defendants' sales during the Class Period" were unusual). In any event, Defendants' trading during the Class Period did not meaningfully depart from their historic trading practices.[16]

The timing of the Stock Sales further refutes any credible inference of scienter. Those sales occurred early in the Class Period. Plaintiff claims that those sales are inherently suspicious because they occurred "only a few months before the Company's partial disclosure on February 14, 2019." AC ¶¶ 124-25. Yet the Stock Sales occurred over two-and-half months before that

---

[15] Where, as here, "a complaint alleges only 'incomplete information' concerning insider sales, the court is free to consider defendants' SEC filings to fill gaps on a motion to dismiss." *Glaser v. The9 Ltd.*, 772 F. Supp. 2d 573, 587 (S.D.N.Y. 2011).

[16] For example, the Bain Defendants sold approximately 10% of their holdings in the Company's March 2017 IPO, while Mr. Reiss sold approximately 13.6% of his holdings at that time. *See* March 16, 2017 Final Prospectus at 117.

disclosure, and over six months before Plaintiff claims that the "truth emerge[d]" on May 29, 2019. AC ¶ 109. Plaintiff has therefore failed to plead facts showing that the sales were suspiciously timed. *See, e.g.*, *Gildan*, 636 F. Supp. 2d at 271 (sales not suspicious because they occurred "far in advance" of disclosures made one and four months later); *In re Take-Two Interactive Sec. Litig.*, 551 F. Supp. 2d 247, 279 (S.D.N.Y. 2008) (lapse of "approximately four months between these substantial sales and the revelation of the alleged falsity inescapably attenuates any inference of scienter").

### C.   Plaintiff Has Failed to Plead Recklessness

The case law requires that Plaintiff – because it has failed to allege a cognizable motive to commit fraud – must allege facts demonstrating "strong circumstantial evidence" of "conscious misbehavior or recklessness" – *i.e.*, "a state of mind approximating actual intent, and not merely a heightened form of negligence." *Stratte-McClure v. Morgan Stanley*, 776 F.3d 94, 106 (2d Cir. 2015). The strength of the circumstantial allegations under this theory must be "correspondingly greater" than those required under a motive theory. *In re PXRE Grp., Ltd., Sec. Litig.*, 600 F. Supp. 2d 510, 535 (S.D.N.Y. 2009).

To meet this requirement, Plaintiff relies on an approach to pleading recklessness that courts have consistently rejected: Plaintiff claims that Defendants had access to non-public information regarding the Company's future performance and, for that reason, should have known better. AC ¶¶ 127-29. But merely alleging that "[d]efendants received and were aware of information contradicting their public statements because they held management roles is not enough to allege scienter." *In re Sec. Capital Assurance Ltd. Sec. Litig.*, 729 F. Supp. 2d 569, 594– 95 (S.D.N.Y. 2010). Plaintiff was required to plead facts showing that "***specific*** contradictory information was available to the defendants." *PXRE*, 600 F. Supp. 2d at 536. The Amended Complaint identifies no such information. *See In re BHP Billiton Ltd., Sec. Litig.*, 276 F. Supp. 3d

65, 93 (S.D.N.Y. 2017). It fails to cite, let alone specify, any Company projections supporting the so-called "truth" that the Company knew its FY2020 growth would be "half the rate" of prior years (*see supra* Sections I.A.2 & II.A), and it fails to identify any statements, reports, or other documents containing adverse information regarding the Company's anticipated future performance. This absence of any particular information through which the omitted "truth" can be attributed to any Defendant confirms that Plaintiff has failed to plead facts sufficient to establish a strong inference of scienter on the basis of recklessness. *See, e.g.*, *Coronel v. Quanta Capital Holdings Ltd.*, 2009 WL 174656, at *27 (S.D.N.Y. Jan. 26, 2009) ("Simply put, because the Complaint alleges no specific facts demonstrating that Defendants possessed—at the time they made the allegedly false statements concerning the reserve amounts—information contradicting their statements, fraud has not been shown."); *Pretium Res.*, 256 F. Supp. 3d at 481 (plaintiffs failed to plead scienter when "nowhere in [the complaint] do Plaintiffs identify with specificity the documents or way in which this contrary information was communicated to Defendants").[17]

## III.    PLAINTIFF FAILS TO STATE A CLAIM UNDER SECTION 20(A) OF THE EXCHANGE ACT

To establish a prima facie case of control person liability under Section 20(a), Plaintiff must show (1) a primary violation by the controlled person, (2) the defendant's control of the primary violator, and (3) that the defendant was, in some meaningful sense, a culpable participant in the

---

[17] Under the PSLRA's heightened pleading standards for securities fraud claims, "[a] complaint will survive ... only if a reasonable person would deem the inference of scienter cogent and at least as compelling as any opposing inference one could draw from the facts alleged." *Sachsenberg*, 339 F. Supp. 3d at 184. The Amended Complaint claims that Canada Goose invested significant capital to increase its production capacity in order to build up excess inventory, even when it did not expect that there would be sufficient demand for that inventory, merely to maintain the pretense that it remained a "hyper-growth" company. But the Amended Complaint never bothers to explain why the Company would need to do that, when it had achieved that status while carrying lower inventory. The far more compelling inference is precisely in line with what the Company actually disclosed: that, given new store openings, continued growth, and frequently sold out products, the Company increased its production capacity and inventory to keep pace with the demand expected for FY2019 and anticipated for FY2020 and beyond. Plaintiff's litigation-inspired theory is nowhere near as compelling. *See Pretium Res.*, 256 F. Supp. 3d at 482.

underlying fraud. *See ATSI Commc'ns*, 493 F.3d at 108. For the reasons described above, Plaintiff's Section 20(a) claim necessarily fails because there has been no primary violation by any controlled person. *See id.* ("[Plaintiff] fails to allege any primary violation; thus, it cannot establish control person liability.").

Plaintiff has also failed to plead facts showing that the Bain Defendants were culpable participants in the alleged fraud. Indeed, Plaintiff pleads no actual facts regarding the Bain Defendants' conduct, instead relying on boilerplate allegations that they had access to and otherwise participated in the allegedly false and misleading statements. AC ¶ 156. Such non-factual claims do not establish culpable participation. *See In re Refco, Inc. Sec. Litig.*, 503 F. Supp. 2d 611, 663 (S.D.N.Y. 2007) (plaintiffs failed to plead culpable participation because they "made no allegations whatsoever as to how the [defendants'] unfettered access would have led them across particular documents in which the red flags would have been apparent"). For this reason, Plaintiff's Section 20(a) claims should be dismissed.

## CONCLUSION

For the reasons stated herein, the Amended Complaint should be dismissed in its entirety, with prejudice.[18]

---

[18] Despite having many months to file this 53-page Amended Complaint, Plaintiff has failed to identify a single misleading statement or omission, and its allegations of scienter fail on every conceivable ground. Thus, the Amended Complaint should be dismissed with prejudice. *See e.g., Al-Qadaffi v. Servs. for the Underserved (SUS)*, 2015 WL 585801, at *8 (S.D.N.Y. Jan. 30, 2015), *aff'd* 632 F. App'x 31 (2d Cir. 2016) (dismissing amended complaint with prejudice where plaintiff "already had one chance to amend his Complaint, and there [was] still no indication that a valid claim might be stated if given a second chance"); *Bui v. Indus. Enters. of Am., Inc*., 594 F. Supp. 2d 364, 373 (S.D.N.Y. 2009) (dismissing amended complaint with prejudice where plaintiff failed to "specify even a single allegedly fraudulent statement after being given ample opportunity to do so").

Dated: May 12, 2020
New York, New York

Respectfully submitted,


By:  */s/ Robert G. Jones*
Robert G. Jones (admitted *pro hac vice*)
ROPES & GRAY LLP
Prudential Tower
800 Boylston Street
Boston, Massachusetts 02199
Telephone:  (617) 951-7000
Email: robert.jones@ropesgray.com

Martin J. Crisp
Ryan M. Royce
ROPES & GRAY LLP
1211 Avenue of the Americas
New York, New York 10036
Telephone: (212) 596-9193
Email: martin.crisp@ropesgray.com
          ryan.royce@ropesgray.com

*Attorneys for Defendants Canada Goose
Holdings Inc., Dani Reiss, Jonathan Sinclair,
Bain Capital, LP, Brent (BC) Participation
S.à.r.l, Brent (BC) S.à.r.l, Bain Capital Integral
Investors 2008, L.P., and Bain Capital
Investors, LLC*

31