UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

———————————————————— x

LI HONG CHENG and NATIONAL          :    Civil Action No. 1:19-cv-08204-VSB
ELEVATOR INDUSTRY PENSION FUND,     :
Individually and on Behalf of All Others    :    CLASS ACTION
Similarly Situated,                 :
                                    :
                                    :
               Plaintiff,           :
                                    :
                                    :
    vs.                             :
                                    :
                                    :
                                    :
CANADA GOOSE HOLDINGS INC., DANI    :
REISS, JONATHAN SINCLAIR, BAIN      :
CAPITAL, LP, BRENT (BC)             :
PARTICIPATION S.À.R.L, BRENT (BC)   :
S.À.R.L, BAIN CAPITAL INTEGRAL      :
INVESTORS 2008, L.P., and BAIN CAPITAL    :
INVESTORS, LLC,                     :
                                    :
               Defendants.          :
                                    :

———————————————————— x

**REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF
THE DEFENDANTS' MOTION TO DISMISS
THE AMENDED CLASS ACTION COMPLAINT**

Robert G. Jones (admitted *pro hac vice*)
**ROPES & GRAY LLP**
800 Boylston Street
Boston, Massachusetts  02199
Telephone:  (617) 951-7000
Facsimile:  (617) 951-7050
Email:  robert.jones@ropesgray.com

Martin J. Crisp
Ryan M. Royce
**ROPES & GRAY LLP**
1211 Avenue of the Americas
New York, New York  10036
Telephone:  (212) 596-5000
Facsimile:  (212) 596-9090
Email:  martin.crisp@ropesgray.com
        ryan.royce@ropesgray.com

*Attorneys for Defendants Canada Goose Holdings Inc., Dani Reiss, Jonathan Sinclair, Bain Capital, LP, Brent (BC) Participation, S.à.r.l, Brent (BC) S.à.r.l, Bain Capital Integral Investors 2008, L.P., and Bain Capital Investors, LLC*

## TABLE OF CONTENTS

PRELIMINARY STATEMENT .................................................................................................... 1

ARGUMENT.............................................................................................................................. 2

I.    PLAINTIFF HAS NOT PLEADED ANY FACTS SHOWING THAT CANADA
      GOOSE MADE FALSE OR MISLEADING STATEMENTS CONCERNING ITS
      INVENTORY LEVELS OR FUTURE DEMAND .................................................... 2

      A.    Plaintiff Has Pleaded No Facts Showing That The Company Misled Investors
            Regarding Its Inventory ................................................................................ 2

      B.    Defendants' Statements Concerning Inventory Levels And Future Demand Did
            Not Create Any "Misleading Impression" Regarding Future Revenues ........................ 3

      C.    Defendants' Statements Regarding Inventory Levels And Future Demand Are
            Non-Actionable Statements Of Puffery .......................................................... 4

      D.    Defendants' Statements Regarding Inventory Levels And Future Demand Are
            Non-Actionable Forward-Looking Statements ................................................. 5

II.   PLAINTIFF DOES NOT ALLEGE ANY FALSE OR MISLEADING
      STATEMENTS REGARDING THE SO-CALLED "TIMING SHIFT" .............................. 6

III.  PLAINTIFF HAS FAILED TO PLEAD SCIENTER............................................................ 7

      A.    Plaintiff Has Failed To Plead Motive Based On The Stock Sales ................................. 7

      B.    Plaintiff Cannot Show Recklessness By Relying On Discredited Theories Of
            Liability ...................................................................................................... 9

IV.   PLAINTIFF HAS FAILED TO STATE A SECTION 20(A) CLAIM ................................ 10

CONCLUSION.......................................................................................................................... 10

i

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*In re Alstom SA*,
  406 F. Supp. 2d 433 (S.D.N.Y. 2005)..........................................................................................10

*ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*,
  493 F.3d 87 (2d Cir. 2007)............................................................................................................10

*Batwin v. Occam Networks, Inc.*,
  2008 WL 2676364 (C.D. Cal. July 1, 2008)..................................................................................8

*In re BHP Billiton Ltd. Sec. Litig.*,
  276 F. Supp. 3d 65 (S.D.N.Y. 2017)..............................................................................................5

*In re Chicago Bridge & Iron Co. N.V. Sec. Litig.*,
  2018 WL 2382600 (S.D.N.Y. May 24, 2018) ...............................................................................5

*City of Monroe Emps.' Ret. Sys. v. Hartford Fin. Servs. Grp., Inc.*,
  2011 WL 4357368 (S.D.N.Y. Sept. 19, 2011)...............................................................................5

*City of Omaha Police & Fire Ret. Sys. v. Evoqua Water Techs. Corp.*,
  2020 WL 1529371 (S.D.N.Y. Mar. 30, 2020) ...............................................................................8

*In re Elan Corp. Sec. Litig.*,
  543 F. Supp. 2d 187 (S.D.N.Y. 2008)............................................................................................7

*Emerson v. Mut. Fund Series Tr.*,
  393 F. Supp. 3d. 220 (E.D.N.Y. 2019) ..........................................................................................4

*In re Express Scripts Holding Co. Sec. Litig.*,
  2017 WL 3278930 (S.D.N.Y. Aug. 8, 2017)..................................................................................6

*Fla. State Bd. of Admin. v. Green Tree Fin. Corp.*,
  270 F.3d 645 (8th Cir. 2001) .........................................................................................................8

*In re Gildan Activewear, Inc. Sec. Litig.*,
  636 F. Supp. 2d 261 (S.D.N.Y. 2009)............................................................................................9

*Ind. Pub. Ret. Sys. v. SAIC, Inc.*,
  818 F.3d 85 (2d Cir. 2016).............................................................................................................8

*In re Magnum Hunter Res. Corp. Sec. Litig.*,
  26 F. Supp. 3d 278 (S.D.N.Y. 2014)..............................................................................................3

*Medis Inv'r Grp. v. Medis Techs., Ltd.*,
   586 F. Supp. 2d 136 (S.D.N.Y. 2008)..................................................................................7

*Micholle v. Opthotech, Corp.*,
   2019 WL 4464802 (S.D.N.Y. Sept. 18, 2019)................................................................4, 8, 9

*In re Mylan N.V. Sec. Litig.*,
   2018 WL 1595985 (S.D.N.Y. Mar. 28, 2018) ......................................................................10

*In re Nokia Corp. Sec. Litig.*,
   423 F. Supp. 2d 364 (S.D.N.Y. 2006)...................................................................................4

*Novak v. Kasaks*,
   216 F.3d 300 (2d Cir. 2000)..................................................................................................2

*Okla. Firefighters Pension & Ret. Sys. v. Xerox Corp.*,
   300 F. Supp. 3d 551 (S.D.N.Y. 2018)...................................................................................2

*In re Oxford Health Plans*,
   187 F.R.D. 133 (S.D.N.Y. 1999) ..........................................................................................9

*Plumbers & Steamfitters Local 773 Pension Fund v. CIBC*,
   694 F. Supp. 2d (S.D.N.Y. 2010).......................................................................................8, 9

*Podany v. Robertson Stephens, Inc.*,
   318 F. Supp. 2d 146 (S.D.N.Y. 2004)...................................................................................5

*In re Pretium Res. Inc. Sec. Litig.*,
   256 F. Supp. 3d 459 (S.D.N.Y. 2017)................................................................................6, 7

*In re PXRE Grp., Ltd., Sec. Litig.*,
   600 F. Supp. 2d 510 (S.D.N.Y. 2009)...............................................................................9, 10

*Ressler v. Liz Claiborne, Inc.*,
   75 F. Supp. 2d 43 (E.D.N.Y. 1998) ......................................................................................4

*Russo v. Bruce*,
   777 F. Supp. 2d 505 (S.D.N.Y. 2011)...................................................................................7

*Sachsenberg v. IRSA Inversiones y Representaciones Sociedad Anonima*,
   339 F. Supp. 3d 169 (S.D.N.Y. 2018)...................................................................................9

*In re Salix Pharmaceuticals*,
    2016 WL 1629341 (S.D.N.Y. Apr. 22, 2016).......................................................................5

*San Leandro Emerg. Med. Grp. v. Philip Morris Co.*,
   75 F.3d 801 (2d Cir. 1996)....................................................................................................3

iii

*In re Sanofi-Aventis Sec. Litig.*,
    774 F. Supp. 2d 549 (S.D.N.Y. 2011)................................................................................3

*Shields v. Citytrust Bancorp, Inc.*,
    25 F.3d 1124 (2d Cir. 1994)...............................................................................................7

*In re Sierra Wireless, Inc. Sec. Litig.*,
    482 F. Supp. 2d 365 (S.D.N.Y. 2007)...........................................................................2, 3

*In re Skechers USA, Inc. Sec. Litig.*,
    2020 WL 1233759 (S.D.N.Y. Mar. 12, 2020) ...................................................................6

*Skiadas v. Acer Therapeutics Inc.*,
    2020 WL 3268495 (S.D.N.Y. June 16, 2020) ...................................................................8

*Slayton v. Am. Express Co.*,
    604 F.3d 758 (2d Cir. 2010)...............................................................................................9

*In re Supercom Inc. Sec. Litig.*,
    2018 WL 4926442 (S.D.N.Y. Oct. 10, 2018)..................................................................10

*In re Take-Two Interactive Sec. Litig.*,
    551 F. Supp. 2d 247 (S.D.N.Y. 2008)...............................................................................8

*Teamsters Local 445 Freight Div. Pension Fund v. Dynex Capital Inc.*,
    531 F.3d 190 (2d Cir. 2008).............................................................................................10

*Zheng v. Pingtan Marine Enter. Ltd.*,
    379 F. Supp. 3d 164 (E.D.N.Y. 2019) .............................................................................10

iv

## PRELIMINARY STATEMENT

Plaintiff's Opposition Brief ("Opp.") confirms that the Amended Complaint alleges securities fraud based not on false or misleading statements relating to Canada Goose's revenues, inventories, or other financial results, but on (i) vague assurances regarding the Company's inventory and future demand that were purportedly misleading because of contrary "facts" Plaintiff never identifies and "misleading impressions" that are never explained; and (ii) "omissions" of information that was concededly disclosed.[1] Unsurprisingly, these allegations do not state a claim.

Plaintiff fails to cite a single fact showing that the Company's statements regarding its strategy of "building demand ahead of supply" were false when made, or that Defendants were aware of contrary facts. Nor has Plaintiff shown (or even explained) how these statements, most of which are non-actionable puffery and opinion or otherwise protected forward-looking statements, created the "misleading impression" that future growth would be consistent with historical trends. Plaintiff's other principal allegation – that Canada Goose failed to disclose that customers were purchasing certain products earlier in FY2019 than in prior years – fails because the Company disclosed this very fact and warned investors of slower growth in the next quarter (*i.e*., the precise "negative impact" about which Plaintiff complains).

Plaintiff also fails to plead a strong inference of scienter. Plaintiff relies on the one-time Stock Sales that Mr. Reiss and the Bain Defendants made in a pre-planned offering that (i) occurred months before the alleged misstatements; (ii) represented a small portion of their holdings; and (iii) are not alleged to have produced any profit. Left with nothing else, Plaintiff relies on the discredited "core operations" theory, which cannot support a credible inference of scienter.

---

[1] Capitalized terms not defined herein have the same meaning as in Defendants' Opening Brief ("Brief" or "Br.") (Dkt. No. 61). "Ex." refers to the exhibits attached to the Crisp Declaration (Dkt. No. 62) submitted in support of the Brief. Unless otherwise noted, emphasis has been added, and internal citations and quotations have been omitted.

## ARGUMENT

### I. PLAINTIFF HAS NOT PLEADED ANY FACTS SHOWING THAT CANADA GOOSE MADE FALSE OR MISLEADING STATEMENTS CONCERNING ITS INVENTORY LEVELS OR FUTURE DEMAND

#### A. Plaintiff Has Pleaded No Facts Showing That The Company Misled Investors Regarding Its Inventory

Plaintiff concedes that Canada Goose accurately reported its financials and inventory levels at all relevant times. Unable to attack those disclosures, Plaintiff concocts a theory that the Company created an "impression" that it was "building customer demand ahead of supply" when it "was actually building inventories ahead of demand." Opp. 8-9. That flimsy allegation is based solely on Mr. Reiss's statement in *Q4 2019* that, *at that time*, the Company was "building inventory ahead of demand" (given the expanding DTC channel and "planned growth"). Q4 2019 Earnings Call Tr. at 11 (Ex. N); AC ¶ 111. Plaintiff insists that the Company should have, but did not, disclose the same thing during earlier quarters. But alleging that purported "corrective information" made known later in time must have been true (and should have been disclosed) earlier is classic fraud-by-hindsight. *See, e.g.*, *Novak v. Kasaks*, 216 F.3d 300, 309 (2d Cir. 2000).

At the time of his Q4 2019 statement, Mr. Reiss noted that the approach he described "[i]n a way . . . reflects [a] change in our model of building demand ahead of supply." Q4 2019 Earnings Call Tr. at 11 (Ex. N). However, Plaintiff has not, as it must, alleged facts showing that any Defendant "was aware of adverse information" – for example, that any Defendant knew of an undisclosed strategy shift or falling demand – when they made a challenged statement (or allegedly omitted to disclose that information) during the prior three quarters of 2019. *In re Sierra Wireless, Inc. Sec. Litig.*, 482 F. Supp. 2d 365, 378 (S.D.N.Y. 2007). Indeed, there is no allegation that any Defendant knew during the quarters leading up to Q4 2019, but did not disclose, that the Company was seeking to build inventory ahead of demand. This failure is fatal. *See Okla. Firefighters*

*Pension & Ret. Sys. v. Xerox Corp.*, 300 F. Supp. 3d 551, 577 (S.D.N.Y. 2018) (statement not misleading when plaintiff failed to "adduce particular facts supporting the claim that [defendants] knew of any [contradictory] fact"). Nor has Plaintiff alleged that the Company promised to maintain any particular strategy. *See San Leandro Emerg. Med. Grp. v. Philip Morris Co.,* 75 F.3d 801, 811 (2d Cir. 1996) (statements regarding strategy "were not promises to maintain that [strategy] in the future").[2]

### B. Defendants' Statements Concerning Inventory Levels And Future Demand Did Not Create Any "Misleading Impression" Regarding Future Revenues

Plaintiff argues that these same statements gave the "misleading impression" that the Company would continue to experience "increasing demand and accelerated growth consistent with historic trends."[3] Opp. 9-10.  The Brief explains at length how these disclosures come nowhere close to creating such an impression. *See* Br. § I(A)(1)-(2). Plaintiff never explains how these concededly accurate statements created a "misleading impression," offering only the half-hearted response that "[i]n the quarter *before* the start of the Class Period," the Company saw "impressive" y-o-y growth after increasing its inventory. Opp. 9. This is not enough to support an actionable securities fraud claim; courts have long held that accurate pre-Class Period statements regarding historic inventory and revenue growth do not promise future revenue growth. *See In re Sanofi-Aventis Sec. Litig.*, 774 F. Supp. 2d 549, 569 (S.D.N.Y. 2011) (investors are not misled by "statement[s] convey[ing] [] clear and accurate historical fact[s]").[4] Plaintiff cannot simply claim

---

[2] Plaintiff also suggests that the Company "gave shifting explanations" for its inventory because Mr. Sinclair stated at the end of Q2 2019 that inventory growth was necessary given the Company's new stores and expanding online presence, and then stated months later (as FY2019 closed) that increased inventory was necessary for the same reasons, and *also* to prepare for FY2020. Opp. 9; *see* Q3 2019 Earnings Call Tr. at 9, 12 (Ex. L). Again, however, Plaintiff fails to plead any facts showing that Mr. Sinclair's statement, which is consistent with the later "corrective disclosure," was false when made. *See In re Magnum Hunter Res. Corp. Sec. Litig.*, 26 F. Supp. 3d 278, 290 (S.D.N.Y. 2014).

[3] Of course, and as Plaintiff concedes, the Company never stated that it would "continue to experience increasing demand and accelerated growth commensurate with historic trends." *See* Br. 13.

[4] Dismissal is also warranted because, as Defendants discuss *supra*, Plaintiff has failed to allege facts showing that Defendants knew that the statements creating the purportedly "misleading impression" were false when made. *Sierra*

falsity. It must support these bare allegations with facts, and its failure to do so requires dismissal. *See In re Nokia Corp. Sec. Litig.*, 423 F. Supp. 2d 364, 392-93 (S.D.N.Y. 2006).

In any event, the Company disclosed its inventory growth rates, as well as its projections regarding its revenue growth. *See* Br. § I(B). Plaintiff offers no credible explanation for how a "misleading impression" regarding the Company's inventory and future revenues could exist given these unchallenged disclosures. This further compels dismissal. *See Emerson v. Mut. Fund Series Tr.*, 393 F. Supp. 3d. 220, 241 (E.D.N.Y. 2019) (a plaintiff cannot "base [its] claim . . . on unreasonable interpretations" of challenged statements).

**C.      Defendants' Statements Regarding Inventory Levels And Future Demand Are Non-Actionable Statements Of Puffery**

Plaintiff does not challenge the majority of the statements Defendants correctly classify as non-actionable puffery. *See* Br. § I(A)(3).[5] Instead, it argues that statements that the Company was "making sure that inventory is there to meet demand," that "introducing newness" allowed it to "create demand ahead of supply," and that it "ha[d] ample inventory to meet the demand both in wholesale and DTC," are actionable because they misrepresented "existing facts." Opp. 16-17; *see also* Br. § I(B)(2). But Plaintiff fails to identify the "existing facts" that were allegedly misrepresented by these otherwise general statements.[6] *See Ressler v. Liz Claiborne, Inc.*, 75 F.

---

*Wireless*, 482 F. Supp. 2d at 378. Here, the Amended Complaint alleges, without any factual support, that Defendants were aware that these statements created a false impression regarding future growth because the Company "expected" lower FY2020 revenue growth when those statements were made in the second and third quarter. AC ¶ 110. But Plaintiff's Opposition does not reference that unadorned allegation, thus conceding the arguments stated in the Brief that it cannot support a claim. *See* Br. § I(A)(2).

[5] As the Brief makes clear, the Amended Complaint largely fails to link its vague allegations to the approximately 50 statements (made over a nine-month period) that it challenges. *See* Br. 12 n.8. The Opposition amplifies this failure, primarily relying on only three of the originally identified statements, all of which are true or otherwise non-actionable.

[6] Plaintiff argues that the decisions cited in the Brief to support Defendants' argument that the challenged statements are non-actionable puffery are irrelevant because they involved "rosy projections for the future without the kind of benchmarks or quantification present here." Opp. 17 n.6. To the contrary, those decisions show that dismissal is required when, as here, vague and optimistic statements are unaccompanied by assurances or "definite indicia of performance." *Micholle v. Opthotech, Corp.*, 2019 WL 4464802, at *9 n.12 (S.D.N.Y. Sept. 18, 2019). Plaintiff cites no contrary authority and does not, because it cannot, identify where the Amended Complaint alleges any such "benchmarks" or "quantification." *Id*. Indeed, the decisions Plaintiff cites discuss precisely the specific factual

Supp. 2d 43, 55 (E.D.N.Y. 1998), *aff'd sub nom. Fishbaum v. Liz Claiborne, Inc.*, 189 F.3d 460

(2d Cir. 1999) ("[G]eneralized claims regarding the existence of [adverse facts]" do not render

puffery statements actionable).[7]

### D. Defendants' Statements Regarding Inventory Levels And Future Demand Are Non-Actionable Forward-Looking Statements

Plaintiff argues that the Company's statements that it was "building demand ahead of

supply" are not protected forward-looking statements because they misrepresented "then-present

inventory buildup and practices." Opp. 12. Yet Plaintiff concedes that the Company fully and

accurately disclosed its "then-present inventory buildup," and pleads no facts showing that the

Company's statements concerning inventory "practices" were false. Opp. 12-13.[8] Nor can Plaintiff

avoid the cautionary language that accompanied these statements. *Compare* Opp. 13 *with* Q1 2019

6-K MD&A at 2 (Ex. F); FY2019 Form 20-F at 14 (Ex. O) (warning of risks regarding the

Company's "ability to forecast [its] inventory needs" and "to accurately forecast demand for [its]

products"). These statements, which Plaintiff does not dispute were identified as forward-looking,

are protected by the PSLRA's safe harbor and the "bespeaks caution" doctrine. *See* Br. § II(B).

---

allegations missing from the Amended Complaint. Opp. 16-17 (citing *In re Chicago Bridge & Iron Co. N.V. Sec. Litig.*, 2018 WL 2382600, at *8 (S.D.N.Y. May 24, 2018) (puffery statements actionable when they "definitively claimed that CBI continue[s] to make progress . . . on [nuclear projects] despite reports of delays [and] investigations"); *In re BHP Billiton Ltd. Sec. Litig.*, 276 F. Supp. 3d 65, 79-80 (S.D.N.Y. 2017) (puffery statements actionable when defendant touted its "commitment to safety" despite knowledge of "several serious risks" to a dam it operated)).

[7] Plaintiff argues that these statements are actionable statements of opinion because they misrepresented "existing facts." Opp. 17-19. But Plaintiff fails to identify any facts stating that these opinions were false or not honestly believed when they were expressed. *See Podany v. Robertson Stephens, Inc.*, 318 F. Supp. 2d 146, 154 (S.D.N.Y. 2004) (plaintiff must allege "provable facts to demonstrate that the statement of opinion is both objectively and subjectively false"). Plaintiff only cites to the "then-existing inventories," **which it does not allege to be false**. Opp. 17-18. Plaintiff's disagreement with the Company's opinion of those concededly-accurate inventories does not create a claim. *See City of Monroe Emps.' Ret. Sys. v. Hartford Fin. Servs. Grp., Inc.*, 2011 WL 4357368, at *13 (S.D.N.Y. Sept. 19, 2011) (plaintiff must do more than merely assert that "the opinion reached by defendant[] was unreasonable").

[8] The cases cited by Plaintiff further confirm this failure. The defendants in the *In re Salix Pharmaceuticals* decision, which concerned a massive channel-stuffing scheme that precipitated a financial restatement, made statements regarding then-present inventory levels that were rendered misleading because, unlike here, they "never mentioned current [inventory] levels" contradicting those same statements. 2016 WL 1629341, at *10 (S.D.N.Y. Apr. 22, 2016). In addition, the plaintiffs in *Salix* pleaded the existence of specific documents showing that the defendants were aware that their statements regarding inventory were false. *Id.* at *6-8.

## II.   PLAINTIFF DOES NOT ALLEGE ANY FALSE OR MISLEADING STATEMENTS REGARDING THE SO-CALLED "TIMING SHIFT"

Plaintiff contends that Canada Goose failed to adequately disclose that customers were purchasing higher-margin, heavy weight parkas in the DTC channel during the first three quarters of FY2019. Opp. 10. Plaintiff insists that this fact was not disclosed "until Canada Goose reported its 3Q19 results." *Id.* 11. This is wrong. As Plaintiff concedes, the Company explicitly told investors ***in Q1 2019*** that "***people are buying their parkas early***." *Id.* 10. This disclosure was not, as Plaintiff implies (*id.*), limited to the wholesale channel. Q1 2019 Earnings Call Tr. at 5 (Ex. G); *see also id.* at 14 (analyst noting that Mr. Reiss had "mentioned that people are buying parkas early"). Nor was the Company obliged to speculate as to "the full extent of DTC timing shifts" (Opp. 11) in connection with that first quarter disclosure. *See In re Pretium Res. Inc. Sec. Litig.*, 256 F. Supp. 3d, 459, 479 (S.D.N.Y. 2017) ("Prudent managers conduct inquiries rather than jump the gun with half-formed stories as soon as a problem comes to their attention[.]"); *In re Express Scripts Holding Co. Sec. Litig.*, 2017 WL 3278930, at *11 (S.D.N.Y. Aug. 8, 2017) ("Where an outcome is merely speculative, the duty to disclose does not attach.").

Plaintiff acknowledges this timing shift was disclosed in the third quarter, but argues that the Company did not disclose its "full, negative" impact on Q4 2019. Opp. 11. This is nonsense, because the Company disclosed that impact. The Company cautioned investors that this earlier purchasing meant that growth would likely slow in Q4 since it "implies a naturally lower rate of speed in both channels through the remainder of the fiscal year."[9] Q3 2019 Earnings Call Tr. at 8 (Ex. L); 2/14/19 Press Release at 1 (Ex. K); AC ¶¶ 49, 96. Plaintiff cannot plead securities fraud

---

[9] Contrary to Plaintiff's suggestion (Opp. 11), the Company's disclosure that "cash inflows" were due, in part, to "an increase in funds used to acquire inventory . . . in anticipation of growing customer demand in the fourth quarter of fiscal 2019" (Q3 2019 MD&A, at 31 (Ex. K)) does not negate the Company's warning of slower growth in Q4 2019. *See In re Skechers USA, Inc. Sec. Litig.,* 2020 WL 1233759, at *9 (S.D.N.Y. Mar. 12, 2020) ("The key question in considering the misleading nature of a statement is whether defendants' representations, taken together and in context, would have misle[d] a reasonable investor," and not whether they do so "when read in isolation.").

premised on the supposed omission of information that was fully disclosed to investors. *See Pretium Res.*, 256 F. Supp. 3d at 476.[10]

Plaintiff argues that it "strains credulity" that Defendants would be unaware of the negative impact on third and fourth quarter revenue given the importance of the DTC channel and third quarter revenues, and in light of the "detailed data" the Company collects on customers. Opp. 12. Such conclusory allegations that Defendants "must have known" (but failed to disclose) information do not satisfy Rule 9(b). *See Shields v. Citytrust Bancorp, Inc.*, 25 F.3d 1124, 1129 (2d Cir. 1994) (conclusory allegations that "Defendants 'knew but concealed' some things" do not satisfy Rule 9(b)); *In re Elan Corp. Sec. Litig.*, 543 F. Supp. 2d 187, 213 (S.D.N.Y. 2008) (omission not actionable when plaintiff failed to allege "that Defendants were aware of any of the [alleged undisclosed adverse facts]").

## III.     PLAINTIFF HAS FAILED TO PLEAD SCIENTER

Scienter allegations must be considered "collectively" and account for any "supporting or opposing" inferences. *Medis Inv'r Grp. v. Medis Techs., Ltd.*, 586 F. Supp. 2d 136, 141 (S.D.N.Y. 2008). Plaintiff's Opposition does the opposite. Relying principally on stock sales that are not alleged to be "unusual or suspicious," and which occurred in circumstances that undermine, rather than support, an inference of scienter (Br. § II(B)), Plaintiff seeks to isolate each allegation and overstate the inferences that they can reasonably support.[11] Nor can Plaintiff salvage its claim by invoking the discredited "core operations" doctrine, which cannot independently show scienter.

### A.     Plaintiff Has Failed To Plead Motive Based On The Stock Sales

Plaintiff argues that the timing of the Stock Sales and "the enormous gross proceeds"

---

[10] In any event, as Plaintiff concedes, the Company's reported revenue for Q4 2019 **outperformed** the Company's guidance for that quarter. *See* Br. 9 n.7; AC ¶ 109.

[11] While Plaintiff suggests that the Bain Defendants' status as controlling stockholders also raises an inference of scienter, it concedes that they "did not make or prepare the alleged material misrepresentations," Opp. 24-25, which further undercuts any such inference. *See Russo v. Bruce*, 777 F. Supp. 2d 505, 517-18 (S.D.N.Y. 2011).

derived from those sales shows that they were "unusual or suspicious." Opp. 23. However, courts have repeatedly held that similarly timed sales do not raise an inference of scienter.[12] Br. § II(B)(2); *see, e.g., In re Take-Two Interactive Sec. Litig.*, 551 F. Supp. 2d 247, 279 (S.D.N.Y. 2008) (lapse of "approximately four months" between stock sales and corrective disclosure "inescapably attenuates any inference of scienter"). Moreover, while not dispositive, that the Stock Sales occurred in a pre-planned equity offering further weakens any inference that could be drawn from their timing. *See City of Omaha Police & Fire Ret. Sys. v. Evoqua Water Techs. Corp.*, 2020 WL 1529371, at *25 (S.D.N.Y. Mar. 30, 2020).

Nor can Plaintiff show that these sales were suspicious in amount based on conclusory allegations of "gross proceeds" when it concedes it has not alleged any ***profit*** from those sales. Opp. 26-27. While Plaintiff downplays the importance of pleading profits (*id.*), this Court has granted dismissal where, as here, "Plaintiff fail[ed] to allege any facts relating to the amount of profit . . . garnered from [defendants'] sales." *Opthotech*, 2019 WL 4464802, at *15. Moreover, there are no profits to be pleaded because, as Plaintiff acknowledges, the Defendants ***lost*** money in the Stock Sales. Opp. 24. This further cuts against any credible inference of scienter, and Plaintiff cites nothing to the contrary.[13] *See Plumbers & Steamfitters Local 773 Pension Fund v. CIBC*, 694 F. Supp. 2d, 287, 299 (S.D.N.Y. 2010).

Further, while there is no "bright line rule" regarding what portion of stock an insider must sell to raise an inference of scienter, courts frequently reject allegations concerning percentages

---

[12] The lone decision Plaintiff cites in support of its timing argument demonstrates Plaintiff must allege far more to show suspicious timing. Opp. 27 (citing *Batwin v. Occam Networks, Inc*., 2008 WL 2676364, at *14 (C.D. Cal. July 1, 2008) (plaintiffs alleged stock sales suspicious when defendants sold ***all*** of their stock two months before the corrective disclosure and neither defendant had sold ***any*** stock in the preceding four years)).

[13] Plaintiff contends that Defendants "confuse[] expected with realized benefits," but cites to decisions that do not involve insider stock sales, let alone losses from such sales. Opp. 25 (citing *Ind. Pub. Ret. Sys. v. SAIC, In*c., 818 F.3d 85, 97 (2d Cir. 2016) (no alleged stock sales); *Skiadas v. Acer Therapeutics Inc.*, 2020 WL 3268495, at *11 (S.D.N.Y. June 16, 2020) (same); *Fla. State Bd. of Admin. v. Green Tree Fin. Corp*., 270 F.3d 645, 657 (8th Cir. 2001) (same)).

higher than those alleged here.[14] *See In re Gildan Activewear, Inc. Sec. Litig.*, 636 F. Supp. 2d 261, 271 (S.D.N.Y. 2009) (no scienter pleaded when sales represented "only 22.5%" of defendant's holdings). Plaintiff also cannot show the Stock Sales were "unusual or suspicious" in timing or amount, especially when it has not pleaded that they were unusual in comparison to Defendants' prior sales. *See Opthotech*, 2019 WL 4464802, at *16. In short, the Stock Sales do not raise a credible inference of scienter.

### B. Plaintiff Cannot Show Recklessness By Relying On Discredited Theories Of Liability

Plaintiff's failure to plead motive means it has a "correspondingly greater" burden to establish scienter on a recklessness theory. *In re PXRE Grp., Ltd., Sec. Litig.*, 600 F. Supp. 2d 510, 535 (S.D.N.Y. 2009). Plaintiff has not satisfied this burden. Rather than citing facts showing the required actual knowledge of Defendants,[15] Plaintiff relies on the "core operations" theory. Opp. 20. Of course, recent decisions by this Court have questioned the theory's continued viability. *See, e.g.*, *Sachsenberg v. IRSA Inversiones y Representaciones Sociedad Anonima*, 339 F. Supp. 3d 169, 183 (S.D.N.Y. 2018) (the Second Circuit and "[d]istrict courts in this Circuit have questioned [the theory's] continued viability"). In any event, it is undisputed that Plaintiff cannot rely on the core operations theory alone to plead scienter. *Id*. Yet Plaintiff does just that by failing to allege anything more than Defendants' "high-ranking positions" and access to data (Opp. 20-21), while failing to identify, as it must, that any "*specific* contradictory information was available to the defendants." *PXRE*, 600 F. Supp. 2d at 536; *CIBC*, 694 F. Supp. 2d at 300 (allegations that CEO

---

[14] Plaintiff's reliance on the *In re Oxford Health Plans* decision is misplaced. Opp. 26. Unlike here, the plaintiffs in that case alleged both the amount of profit from the stock sales and specific knowledge of adverse facts. 187 F.R.D. 133, 140 (S.D.N.Y. 1999) (stock sales of 11% and 67%, with a corresponding $78 million profit, established scienter where defendants were also alleged to have been explicitly informed that their internal controls were deficient).

[15] As explained in the Brief, because the Amended Complaint principally challenges forward-looking statements, Plaintiff must plead facts sufficient to show that these statements were "made or approved by [an executive officer] with **actual knowledge**" of their falsity. Br. § I(A)(4) (citing *Slayton v. Am. Express Co.*, 604 F.3d 758, 773 (2d Cir. 2010)). Plaintiff has not done so. *See supra* § I(D).

received contradictory information because he was "in charge of all [defendants'] activities related" to the alleged fraud was "too general" and "entitled to no weight.").[16] Nor has Plaintiff "specifically identified any reports or statements" demonstrating the falsity of the challenged statements. *Teamsters Local 445 Freight Div. Pension Fund v. Dynex Capital Inc.*, 531 F.3d 190, 196 (2d Cir. 2008) (noting plaintiff's "broad reference to raw data lacks even an allegation that these data" demonstrated a falsity).[17] These allegations do not satisfy the heightened standard required in the absence of motive. *PXRE*, 600 F. Supp. 2d at 535.[18]

## IV. PLAINTIFF HAS FAILED TO STATE A SECTION 20(A) CLAIM

Plaintiff's Section 20(a) claim necessarily fails because there has been no primary violation by any controlled person. *See ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 108 (2d Cir. 2007). Even if Plaintiff had pleaded a primary violation (and it has not), its attempt to show control person liability based on the Bain Defendants' status as controlling stockholders (Opp. 29) erroneously conflates control with culpable participation. *See In re Alstom SA*, 406 F. Supp. 2d 433, 493 (S.D.N.Y. 2005) (allegation of control "not enough to plead culpable participation"). In all events, therefore, Plaintiff's Section 20(a) should be dismissed.

**CONCLUSION**

For the reasons stated herein, the Amended Complaint should be dismissed, with prejudice.

---

[16] Indeed, the cases cited by Plaintiff involve far more specific allegations than those articulated in the Amended Complaint. *See, e.g.,* Opp. 20-21 (citing *In re Mylan N.V. Sec. Litig.*, 2018 WL 1595985, at *13 (S.D.N.Y. Mar. 28, 2018) ("CMS repeatedly informed [defendant] that [it] was misclassifying the EpiPen.")).

[17] Thus, "even assuming" the validity of the core operations doctrine, "it [is] far from sufficient" because "Plaintiff fails to plead particularized facts suggesting Defendants . . . actually possessed information contradicting their public statements." *Zheng v. Pingtan Marine Enter. Ltd.*, 379 F. Supp. 3d 164, 181 (E.D.N.Y. 2019).

[18] Plaintiff makes a weak attempt to show recklessness based on the purported close proximity between the alleged misstatements in February 2019 and the alleged corrective disclosure in May 2019. Opp. 27-28. This argument does not move the needle in the slightest. *See In re Supercom Inc. Sec. Litig.*, 2018 WL 4926442, at *32 (S.D.N.Y. Oct. 10, 2018) (noting that temporal proximity alone does not raise a circumstantial inference of fraud, and refusing to find scienter even when considered with the plaintiff's other allegations).

Dated: August 14, 2020
New York, New York

Respectfully submitted,


By: */s/ Robert G. Jones*

Robert G. Jones (admitted *pro hac vice*)
**ROPES & GRAY LLP**
Prudential Tower
800 Boylston Street
Boston, Massachusetts  02199
Telephone:  (617) 951-7000
Facsimile:   (617) 951-7050
Email: robert.jones@ropesgray.com

Martin J. Crisp
Ryan M. Royce
**ROPES & GRAY LLP**
1211 Avenue of the Americas
New York, New York  10036
Telephone: (212) 596-9193
Facsimile:  (212) 596-9090
Email: martin.crisp@ropesgray.com
         ryan.royce@ropesgray.com

*Attorneys for Defendants Canada Goose
Holdings Inc., Dani Reiss, Jonathan Sinclair,
Bain Capital, LP, Brent (BC) Participation
S.à.r.l, Brent (BC) S.à.r.l, Bain Capital Integral
Investors 2008, L.P., and Bain Capital
Investors, LLC*

-11-